UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

# 14 CV 0079

Rosanna Mayo-Coleman

_____

_____

*(In the space above enter the full name(s) of the plaintiff(s).)*

-against-

American Sugars Holdings Inc

_____

_____

*(In the space above enter the full name(s) of the defendant(s).
If you cannot fit the names of all of the defendants in the space
provided, please write "see attached" in the space above and
attach an additional sheet of paper with the full list of names.
Typically, the company or organization named in your charge
to the Equal Employment Opportunity Commission should be
named as a defendant.  Addresses should not be included here.)*

**COMPLAINT
FOR EMPLOYMENT
DISCRIMINATION**

Jury Trial:  ☐ Yes  ☐ No

*(check one)*



RECEIVED
JAN 06 2014
PRO SE OFFICE

This action is brought for discrimination in employment pursuant to: *(check only those that apply)*

_____  Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e
to 2000e-17 (race, color, gender, religion, national origin).
***NOTE:*** *In order to bring suit in federal district court under Title VII, you must first obtain a
Notice of Right to Sue Letter from the Equal Employment Opportunity Commission.*

_____  Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§
621 - 634.
***NOTE:*** *In order to bring suit in federal district court under the Age Discrimination in
Employment Act, you must first file a charge with the Equal Employment Opportunity
Commission.*

_____  Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 -
12117.
***NOTE:*** *In order to bring suit in federal district court under the Americans with Disabilities Act,
you must first obtain a Notice of Right to Sue Letter from the Equal Employment Opportunity
Commission.*

✓  New York State Human Rights Law, N.Y. Exec. Law §§ 290 to 297 (age,
race, creed, color, national origin, sexual orientation, military status, sex,
disability, predisposing genetic chacteristics, marital status).

✓  New York City Human Rights Law, N.Y. City Admin. Code §§ 8-101 to
131 (actual or perceived age, race, creed, color, national origin, gender,
disability, marital status, partnership status, sexual orientation, alienage,
citizenship status).

## I.     Parties in this complaint:

A.     List your name, address and telephone number.  Do the same for any additional plaintiffs named.
Attach additional sheets of paper as necessary.

Plaintiff     Name **Rosanna Mayo-Coleman**

Street Address **1029 Broadway #4K**

County, City **Bronx**

State & Zip Code **N.Y 10471**

Telephone Number **347 583-0920**

B.     List all defendants' names and the address where each defendant may be served.  Make sure that the
defendant(s) listed below are identical to those contained in the above caption.  Attach additional sheets
of paper as necessary.

Defendant     Name **Bob Jandovitz**

Street Address **1 Federal Street**

County, City

State & Zip Code

Telephone Number

C.     The address at which I sought employment or was employed by the defendant(s) is:

Employer     **American Sugars Holdings Inc**

Street Address **1 Federal Street**

County, City **Yonkers**

State & Zip Code **10702**

Telephone Number **(914) 709-8014**

## II.     Statement of Claim:

State as briefly as possible the facts of your case, including relevant dates and events.  Describe how you were
discriminated against.  If you are pursuing claims under other federal or state statutes, you should include facts
to support those claims.  You may wish to include further details such as the names of other persons involved
in the events giving rise to your claims.  Do not cite any cases.  If you intend to allege a number of related
claims, number and set forth each claim in a separate paragraph.  Attach additional sheets of paper as
necessary.

A. The discriminatory conduct of which I complain in this action includes: *(check only those that apply)*

_____     Failure to hire me.

_____     Termination of my employment.

_____     Failure to promote me.

_____     Failure to accommodate my disability.

✓     Unequal terms and conditions of my employment.

✓      Retaliation.

_____      Other acts *(specify)*: The Pipe Shop Supervisor was Trying to get me in trouble with Lies.

*Note:*    Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.

B.     It is my best recollection that the alleged discriminatory acts occurred on: The Year of 2012 2013 2014
*(Date(s))*

C.     I believe that defendant(s) *(check one)*:

✓      is still committing these acts against me.

_____      is not still committing these acts against me.

D.     Defendant(s) discriminated against me based on my *(check only those that apply and explain)*:

☐   race _____       ☐   color _____

☑   gender/sex   Female       ☐   religion_____

☐   national origin _____

☐   age.   My date of birth is _____ *(Give your date of birth only if you are asserting a claim of age discrimination.)*

☐   disability or perceived disability, _____ *(specify)*

E.     The facts of my case are as follow *(attach additional sheets as necessary)*:

American Sugars discriminated against me Buy Not Letting Me work on the weekend With the pipe Shop Told Me Because I was a women I Couldn't Do The work on Streight Time I have to go and get 2", 3", 3, 2", 3/4 of pipe for the pipe Shop I do It on Streight Time I Shoud do It

*Note:*    As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, the New York State Division of Human Rights or the New York City Commission on Human Rights.

## III.   Exhaustion of Federal Administrative Remedies:

A.     It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding defendant's alleged discriminatory conduct on: Sept 2013 _____ *(Date)*.

*Rev. 05/2010*             3

B.   The Equal Employment Opportunity Commission *(check one)*:

_____   has not issued a Notice of Right to Sue letter.

_____✓_____   issued a Notice of Right to Sue letter, which I received on **12-21-13** *(Date)*.

> *Note: Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.*

C.   Only litigants alleging age discrimination must answer this Question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding defendant's alleged discriminatory conduct *(check one)*:

_____   60 days or more have elapsed.

_____   less than 60 days have elapsed.

## IV.   Relief:

**WHEREFORE**, plaintiff prays that the Court grant such relief as may be appropriate, including injunctive orders, damages, and costs, as follows: I want 500,000.00 for years of discrimation and for Sexual Harassment + Not More and I want to Retire with full Pension

*(Describe relief sought, including amount of damages, if any, and the basis for such relief.)*

**I declare under penalty of perjury that the foregoing is true and correct.**

Signed this ____ day of **12-7** _____, 20**14**

Signature of Plaintiff   Rosanna Mayo-Coleman

Address   6629 Broadway #4K
Bronx N.Y. 10471

_____

Telephone Number   (347) 583-0920

Fax Number *(if you have one)* _____

on over time. The Company still haven't let Me work with the pipe Shop after I file Charges against the Company. The ~~Compan~~ 'American Sugar was Told about them discriminate against Me and file a grievance on May 4 2012 It Took Bob Jandowitz until June To address My grievance which he Stated he don't like Grievance and to go Talk to My Supervisor, which is the Person who was Sexually harassing Me which I also Reported on may 4th It was So Bad that I went out of Work for Two months and when I went Back to work in Aug 2013 I was still discriminate against But the Sexual harassment did stop as of To day Jan 7 2014 the Company have yet ask me to work with the pipe Shop for fire watch or Repairs. My Coworkes are still working with the pipe Shop they are all men

EEOC Form 161-B (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE (*ISSUED ON REQUEST*)

| | |
|---|---|
| To:   Rosanna Mayo-Coleman<br>6629 Broadway, Apt. 4-K<br>Bronx, NY 10471 | From:   **New York District Office**<br>**33 Whitehall Street, 5th Floor**<br>**New York, NY 10004** |

☐  *On behalf of person(s) aggrieved whose identity is*
*CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **520-2012-03285** | **John B. Douglass, Investigator** | **(212) 336-3765** |

(*See also the additional information enclosed with this form.*)

NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge.  It has been issued at your request.  Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

☒  More than 180 days have passed since the filing of this charge.

☐  Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒  The EEOC is terminating its processing of this charge.

☐  The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge.  In this regard, **the paragraph marked below applies to your case:**

☐  The EEOC is closing your case.  Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice.  Otherwise, your right to sue based on the above-numbered charge will be lost.

☐  The EEOC is continuing its handling of your ADEA case.  However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):**  You already have the right to sue under the EPA (filing an EEOC charge is not required.)  EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

_____           11-27-2013
**Kevin J. Berry,**                                            (*Date Mailed*)
**District Director**

Enclosures(s)

cc:    **AMERICAN SUGAR HOLDINGS INC.**

**c/o Peter M. Stein**
**EPSTEIN BECKER & GREEN, P.C.**
**One Landmark Square, Suite 1800**
**Stamford, CT 06901**

EPSTEIN
BECKER
GREEN

PETER M. STEIN                                              October 30, 2013
TEL: 203 326.7420
FAX: 203.326.7580
PSTEIN@EBGLAW.COM

John B. Douglass
Investigator
Equal Employment Opportunity Commission
New York District Office
33 Whitehall Street, 5th Floor
New York, NY 10004-2112

            Re:  Mayo-Coleman v. American Sugar Holdings Inc.
                 EEOC Charge No. 520-2012-03285

Dear Mr. Douglass:

       Epstein Becker & Green, P.C. represents Respondent, American Sugar Refining, Inc.
(Domino Sugar, Domino Brands) ("Respondent," "Company," or "American Sugar"), in the
above-referenced matter.   American Sugar respectfully submits this Position Statement in
response to the sworn allegations filed by Rosanna Mayo-Coleman ("Claimant" or "Mayo-
Coleman"), with the EEOC on September 7, 2012.  In her Charge of Discrimination ("Charge"),
Mayo-Coleman, a current employee, alleges that the Company violated Title VII and the New
York State Human Rights Law ("NYSHRL"), by subjecting her to unlawful sex discrimination,
sexual harassment, and retaliation.[1]  American Sugar emphatically denies that it has engaged in
any unlawful discriminatory or retaliatory conduct against Mayo-Coleman, and provides its
detailed response to her claims below.

       **I.     Background**

              As a preliminary matter, and to provide some historical context for Mayo-Coleman's
current factually unsupported Charge, it is relevant to call attention to her long history of
complaints against American Sugar.  For example, Mayo-Coleman has filed at least fourteen
(14) grievances in which she alleged that she was entitled to, but had been improperly denied,
overtime pay or other compensation.  With the exception of one sustained grievance, all of those
grievances were determined to be unfounded, and contrary to Mayo-Coleman's ill-conceived
contentions, the Company had not violated the Collective Bargaining Agreement ("CBA").[2]
Additionally, in 1999, Mayo-Coleman pursued a race discrimination Complaint, dual filed with

---

       [1]      A copy of Mayo-Coleman's sworn allegations, dated September 7, 2012, is annexed
hereto as Exhibit A.

       [2]      A copy of Mayo-Coleman's Union grievances are attached hereto as Exhibit B.

ATLANTA • BOSTON • CHICAGO • HOUSTON • INDIANAPOLIS • LOS ANGELES
NEWARK • NEW YORK • SAN FRANCISCO • STAMFORD • WASHINGTON, DC

FIRM:23800729v1

John B. Douglass
EEOC Investigator
October 30, 2013
Page 2

the New York State Division on Human Rights ("NYSDHR") and the EEOC. There too, among other allegations, Mayo-Coleman claimed that she had been improperly denied overtime pay. In 2002, however, the NYSDHR dismissed her Complaint in accordance with a no probable cause determination, and the EEOC adopted that determination.

More recently, on May 4, 2012, Mayo-Coleman submitted a complaint to Human Resources asserting that, despite her greater seniority, she had been improperly bypassed for overtime opportunities in favor of employees in her Department (Engineering Department) with less seniority ("May 4, 2012 complaint").[3] That complaint was disposed of through informal discussions between the Union and Management, and the Union's agreement that Mayo-Coleman's complaint was unfounded because the CBA requires overtime assignments to be shared among employees in the Engineering Department, rather than distributed in accordance with seniority.[4]

Fast forward to now, and here, Mayo-Coleman's Charge presents more of the same. While Respondent cannot profess to have an understanding of Mayo-Coleman's motivation for pursuing yet another unfounded complaint against American Sugar, it appears that her Charge is based, in large part, on her continued misguided contentions about her entitlement to overtime assignments pursuant to the CBA. Despite the fact that the May 4, 2012 complaint had already been resolved against Mayo-Coleman, her Charge asserts allegations that virtually replicate the allegations of that complaint. Specifically, Mayo-Coleman regurgitates her misconceptions that: (1) the terms of the CBA entitle her to preferential treatment for overtime opportunities based on her seniority status; and (2) the Company violated the CBA when Management allegedly disregarded her seniority and bypassed her for overtime opportunities in favor of employees in her Department with less seniority, and who happen to be male.

What's new, however, is that Mayo-Coleman's Charge asserts a discrimination claim alleging that she was denied overtime assignments based on her sex. First, that claim fails because it is inextricably tied to her meritless allegations concerning her contractual entitlement to overtime assignments. Further, that claim also fails because it is based on nothing more than conclusory, self-serving, and factually unsupported allegations.[5]

---

[3]    Although Mayo-Coleman's complaint was not deemed an official grievance by the Company or the Union because she had not followed the grievance procedure required by the CBA, her complaint was nevertheless addressed by the Company and her Union. (Affidavit of Bob Jandovitz, Human Resources Regional Manager ("Jandovitz Aff.") ¶¶ 3-10, Ex. 2, CBA, Art. 9 (Grievance Procedure); Ex. 3, Mayo-Coleman's May 4, 2012 Grievance Form.)

[4]    See Jandovitz Aff. ¶¶ 3-10 ; Affidavit of Nicole Copeland, Regional Human Resources Manager ("Copeland Aff."), at ¶¶ 12-13. See also CBA, Art. 6 (Overtime), attached as Exhibit 2 to the Jandovitz Aff.

[5]    Mayo-Coleman also asserts that she was discriminated against based on her sex because "constant mistakes" were made concerning her pay "that did not get fixed for weeks" and her overtime payments were allegedly held for weeks. However, Mayo-Coleman specifies that her allegations concern adjustments to her pay in 2006, 2007 and 2008. Consequently, those allegations are time-barred by the applicable 300 day statute of limitations.

John B. Douglass
EEOC Investigator
October 30, 2013
Page 3

Further, Mayo-Coleman's Charge also asserts a sexual harassment claim based on allegations that her then-supervisor, Tyrone Smith, subjected her to isolated, non-continuous, non-threatening sexually offensive conduct.[6] Mayo-Coleman's sexual harassment claim fails as a matter of law because: (a) she suffered no tangible adverse job action; (b) the alleged sexually harassing conduct was not severe, continuous or pervasive enough, as a matter of law, to create a hostile working environment; (c) American Sugar maintained a reasonable, effective policy and procedure designed to prevent and correct any alleged discrimination or harassment, and (d) Mayo-Coleman unreasonably failed to take advantage of that policy and procedure, and she impeded American Sugar's internal investigation of her claims by refusing to fully cooperate in its investigation.

Finally, Mayo-Coleman's retaliation claim fails as a matter of law because: (a) her allegations are conclusory; and, (b) she can offer no evidence to support her retaliation claim (because none exists).

## II.   <u>SUMMARY OF RELEVANT FACTS</u> [7]

### A. <u>The Parties</u>

#### 1. <u>American Sugar</u>

American Sugar operates as a cane sugar refining company. It produces refined and specialty sugar products in the United States. The Company was founded over one hundred and twenty years ago, in 1891, and is headquartered in Yonkers, New York, which is also Mayo-Coleman's work location.

**American Sugar's Policies Against Discrimination,**
**Harassment And Retaliation; Its Complaint Procedure**

American Sugar is dedicated to conducting business in a lawful and ethical manner in all of its operations. The Company's Code of Ethics and Business Conduct ("Code") contains a summary of Company policies that set forth the legal and ethical conduct expected of all employees. The Company's policies prohibiting discrimination, harassment, and retaliation are detailed in the Code.

The Code also contains the Company's complaint procedure, which specifically charges employees with the responsibility of reporting any real or potential violation of the Code as follows:

---

[6]     Tyrone Smith separated employment from the Company on May 13, 2013.

[7]     This Position Statement is not intended as an exhaustive statement of all facts and arguments supporting American Sugar's position in this matter. American Sugar reserves the right to provide such other information in the future as may be warranted.

John B. Douglass
EEOC Investigator
October 30, 2013
Page 4

> If you know of or suspect a real or potential violation, you must report it. If you are comfortable doing so, report the matter to your supervisor. If you feel that you cannot discuss a particular situation with your supervisor, discuss it with any of the following resources:
>
> > Another supervisor with whom you feel comfortable
> >
> > A member of our Human Resources Department
> >
> > A member of our Legal Department
> >
> > Any Company executive officer
> >
> > The Ethics Hotline "Domino Direct," at (877) 874-4891.

(Copeland Aff. at ¶ 2, Ex. 1, Code, at 5.)[8]

### 2.  Mayo-Coleman

Mayo-Coleman began employment with American Sugar as a Consumer Packaging Operator in July 1988. Currently, she holds the position of Storeroom Assistant in the Engineering Department. In that role, she assists in the operation of the Mechanical Storeroom, and has responsibility for, among other things, unloading receiving material from trucks for delivery to the Store Room; maintaining a running inventory of material on hand, received and issued; issuing tools and other equipment for use by work crews; and placing material in appropriate storage spaces. Mayo-Coleman is a member of Local 74 of the United Service Workers Union, and served as a Union Delegate in the past. (Affidavit of Debbie Troche, Human Resources Representative ("Troche Aff."), at ¶ 2, Ex. 1, Storeroom Assistant job description); (Jandovitz Aff. at ¶ 2, Ex. 1, June 24, 2002 letter to Company from Local 1814's Secretary Treasurer announcing Mayo-Coleman's election to Union Delegate position.)

### Mayo Coleman's Agreement To Comply With The Code's Requirements, Including To Report Any Actual Or Apparent Code Violations

On February 16, 2010, Mayo-Coleman signed an acknowledgment that she read and understood the Code, agreed to observe the policies it sets forth, and to report actual or apparent violations of the Code in accordance with the Company's complaint procedure. (Copeland Aff., Ex. 2, Mayo-Coleman's signed acknowledgement.) As explained in more detail below, however, despite the fact that Mayo-Coleman was aware of the Company's policies against discrimination, harassment and retaliation, and the numerous avenues available for her to report a real or potential violation of those policies, Mayo-Coleman unreasonably delayed until August

---

[8]     The Code provides that employees may confidentially report a concern about a Code violation by calling the Company's toll-free phone number, known as "Domino Direct." (Copeland Aff., Ex. 1, Code, at 3, 5, 17.)

John B. Douglass
EEOC Investigator
October 30, 2013
Page 5

13, 2012, to notify Human Resources about her discrimination and harassment allegations
against her then-supervisor, Tyrone Smith. Additionally, Mayo-Coleman unreasonably withheld
pertinent information about her allegations from the Company during its internal investigation.
(Troche Aff. at ¶ 7); (Jandovitz Aff. at ¶ 13); (Copeland Aff. at ¶ 10.)

### B.  Response To Mayo-Coleman's September 7, 2012 Sworn Allegations

As detailed below, there is simply no evidence to support Mayo-Coleman's allegations of
sex discrimination, sexual harassment and retaliation. American Sugar responds to each of the
allegations asserted by Mayo-Coleman in her sworn EEOC statement, dated September 7, 2012,
as follows:

### ALLEGATION #1:

**I am female and because of this I am being sexually
harassment and retaliated by my Supervisor, Tyrone
Smith.**

### RESPONSE:

American Sugar admits, upon information and belief, that Mayo-Coleman is female;
however, the Company vehemently denies that she was subject to unlawful discrimination,
harassment or retaliation based on her sex or any protected status. After conducting a
comprehensive investigation concerning Mayo-Coleman's discrimination and sexual harassment
allegations against her then-supervisor, Tyrone Smith, the Company determined that her
allegations were unsubstantiated. As set forth below, the evidence supports that determination,
and shows the following:

Mayo-Coleman took a leave of absence from June 6, 2012, until she returned to work on
August 13, 2012. Before she returned, she sent a letter to Human Resources Regional Manager
Bob Jandovitz, dated, August 9, 2012, stating only generally, that she wanted to "return to a
work environment free of stress, sexual harassment and discrimination." As a result of receiving
that letter, Human Resources Representatives Bob Jandovitz and Debbie Troche scheduled a
meeting with Mayo-Coleman, and met with her, on her first day back to work, August 13, 2012.
(Jandovitz Aff., ¶ 12, Ex.6, August 9, 2012 letter from Mayo-Coleman to Jandovitz); (Troche
Aff. ¶ 6.)

At the August 13, 2012 meeting, Jandovitz asked Mayo-Coleman to explain, as
referenced in her August 9, 2012 letter, what creates stress on her job, and to explain her claims
of harassment and discrimination, and whether there were any accommodations that the
Company could provide her. In response, Mayo-Coleman notified Jandovitz and Troche that she

John B. Douglass
EEOC Investigator
October 30, 2013
Page 6

believed that her then-supervisor, Tyrone Smith, had subjected her to sexual harassment and sex discrimination.[9]  (Jandovitz Aff. ¶¶ 11-17); (Troche Aff. ¶¶ 7-11.)

Mayo-Coleman provided Jandovitz and Troche the following information concerning her allegations about Smith:

> He would call her into his office to yell and scream at her when she didn't get her work done, even though she was under a lot of stress at work to accurately complete a lot of work in a short amount of time;
>
> He spoke to her with contempt and disrespect;
>
> He made inappropriate comments to her about her butt and boobs, called her an "old coon," and commented about what he would do to her if she wasn't so old;
>
> He "nags her," but not the guys in her Department;
>
> He complained about her playing her radio low during inventory, but allowed someone else to play loud and inappropriate rap music; and,
>
> He discriminated against her because he wouldn't assign her overtime work performing Fire Watch duties with the Pipefitters.

(Jandovitz Aff. ¶ 14.)

In response to Mayo-Coleman's complaint about Smith, Jandovitz asked her if she would like to be transferred to a different shift or position.  Mayo-Coleman declined that offer, however, explaining that she could avoid Smith most of the time by going into the back room.[10]

---

[9] Smith began employment with American Sugar, and his supervision over Mayo-Coleman, on January 21, 2008.  While employed by the Company, Smith held the position, MRP Controller ("MRP" stands for Material Replenishment Planning), and he supervised four (4) Storeroom Assistants (Mayo-Coleman and three (3) male employees), in the Engineering Department at the Company's plant in Yonkers.  On May 13, 2013, Smith separated employment from the Company.

[10] Although she did not report any additional incidents of alleged harassment or discrimination, on October 18, 2012, Mayo-Coleman expressed to Jandovitz that she wanted a break from working with Smith, and she requested a temporary two-week transfer to the Sanitation Department.  The Company granted her request.  During the time that she worked in the Sanitation Department, the Company further accommodated her by maintaining her level of pay, despite the fact that the position she transferred into paid less.  On October 22, 2012, however, Mayo-Coleman complained that her transfer to the Sanitation Department negatively affected her ability to earn overtime compensation, since the overtime assignment in that Department required the ability to operate a forklift, and she was unable to perform that duty.  Consequently, Mayo-Coleman asked to return to her position in the Store Room.  The Company also

John B. Douglass
EEOC Investigator
October 30, 2013
Page 7

Jandovitz also asked Mayo-Coleman why she didn't complain to Human Resources about Smith sooner. In response, she explained that she tried to avoid making a complaint to Human Resources, and that she wanted to try to resolve the issue through her Union, but her Union representative didn't help her. (Jandovitz Aff. ¶¶ 15-16.)

At the end of their meeting, Jandovitz and Troche thanked Mayo-Coleman for her time and told her that the Company would conduct an investigation and would have additional contact with her concerning her allegations. Jandovitz and Troche also asked Mayo-Coleman to notify them if she had any additional concerns. (Jandovitz Aff. ¶ 17, Ex. 7, Notes of meeting with R. Coleman on August 13, meeting to discuss letter dated August 9, 2012); (Troche Aff. ¶ 11.)

After the August 13, 2012 meeting, Mayo-Coleman did not report any other concern or alleged incidents of sexual harassment, sex discrimination or retaliation to Jandovitz or Troche. (Jandovitz Aff. at ¶ 18); (Troche Aff. at ¶ 12.)

Moreover, in between August 13, 2012 and August 20, 2012 (when Human Resources Regional Manager Nicole Copeland began her investigation of Mayo-Coleman's allegations), Jandovitz saw Mayo-Coleman at least three (3) times in the parking lot at work, and, each time, he stopped to speak with her and inquire how she was doing in her work environment. Mayo-Coleman's response was the same each time, in that she told Jandovitz that she was focusing on doing her job and trying to avoid Smith. During those conversations, she never reported any additional concerns or alleged incidents of sexual harassment, sex discrimination, or retaliation. (Jandovitz Aff. at ¶ 19.)

### The Company's Investigation Concerning Mayo-Coleman's Claims

A prompt and thorough investigation was conducted by the Company's Regional Manager of Human Resources, Nicole Copeland. During the course of the investigation, Copeland met with several individuals, including, Mayo-Coleman and her Union Representative, Assistant Chief Steward Adolph McBean, Jandovitz, Smith, Troche, two of Mayo-Coleman's Storeroom Assistant co-workers, Reagan Shepherd and Clark Simpson, and two Maintenance Supervisors, Juan Vizcaino and Liz Mendonca. (Copeland Aff. at ¶ 4.)

### Copeland's Interviews With Mayo-Coleman;
### And Mayo-Coleman's Refusal To Fully Cooperate

Copeland met with Mayo-Coleman on August 20 and 21, 2012. During those meetings, Mayo-Coleman complained that Smith had subjected her to sexual harassment; and that she had been denied overtime work based on her sex. (Copeland Aff. at ¶ 5.)

---

granted that request. (Jandovitz Aff. at ¶ 20, Ex. 8 (Mayo-Coleman's written request for a two-week transfer to the Sanitation Department, dated October 18, 2012).)

John B. Douglass
EEOC Investigator
October 30, 2013
Page 8

With respect to the overtime issue, Mayo-Coleman explained two bases for her claim: (1) comments allegedly made on June 9, 2011, by former Maintenance Supervisor Fred Panicci and Human Resources Representative Debbie Troche, to the effect that Mayo-Coleman could not perform overtime Fire Watch duties assisting the Pipefitters because she was a woman[11]; and (2) she was denied overtime Fire Watch assignments in favor of male co-workers in her Department, despite the fact that they had less seniority than her. (Copeland Aff. at ¶ 6.)

Additionally, the information that Mayo-Coleman disclosed to Copeland concerning her sexual harassment claim was substantially the same as what she had disclosed to Jandovitz and Troche on August 13, 2012. Mayo-Coleman complained to Copeland that Smith made inappropriate comments to her during the month of February 2012, including telling her that: (1) she has a "fat juicy ass," (2) her "boobs were getting big," (3) "[y]ou're nothing but an old coon;" and, (4) "[y]ou have a big ass. I would tap that ass if you weren't so old." Mayo-Coleman also complained that Smith stared at her private areas. (Copeland Aff. ¶ at 7.)

Further, Mayo-Coleman claimed that Smith sent her a "derogatory" email on October 21, 2011, and she provided a copy of it to Copeland. That email, however, was not sexual or discriminatory in nature. Consequently, Copeland determined that the email did not support Mayo-Coleman's allegations. (Copeland Aff. at ¶ 8, Ex. 3, Smith's October 21, 2011 email to Mayo-Coleman.)

Notably, Mayo-Coleman told Copeland that Smith's sexually harassing conduct seemed to have stopped as of May 4, 2012, when she complained to Human Resources that she had been improperly passed over for overtime opportunities. (Copeland Aff. at ¶ 9.)

Moreover, while Mayo-Coleman provided Copeland some details about her sexual harassment allegations, she refused to disclose certain information that she claimed supported her allegations. Specifically, although Mayo-Coleman claimed that her allegations could be corroborated by a female contractor who allegedly overheard Smith making a rude comment to her, Mayo-Coleman refused to provide Copeland with information concerning the witness' name, the comment overheard, and the date of the incident. Mayo-Coleman claimed that she could not disclose that information because the witness was unwilling to speak with the Company, and would only talk with Mayo-Coleman's attorney. (Copeland Aff. at ¶ 10.)

Further, Mayo-Coleman told Copeland that her attorney specifically instructed her not to disclose to the Company all the relevant details of her sexual harassment complaint, including, the substance and timing of certain comments allegedly made by Smith. (Copeland Aff. at ¶ 10.)

---

[11] Mayo-Coleman's claim concerning comments allegedly made on June 9, 2011, is time-barred by the 300 day statute of limitations.

John B. Douglass
EEOC Investigator
October 30, 2013
Page 9

**Copeland's Interview With Mayo-Coleman's Union Representative;**
**And His Explanation To Mayo-Coleman In May 2012**
**That Her Discriminatory Overtime Claims Were Unfounded**

On August 21, 2012, Copeland met with Mayo-Coleman's Union Representative, Adolph McBean. He explained that, in May 2012, Mayo-Coleman complained to him that the Company had improperly bypassed her for overtime opportunities in favor of male employees with less seniority. At that time, McBean explained to Mayo-Coleman that the CBA required overtime opportunities in the Engineering Department to be shared among the employees of that Department regardless of seniority. However, because Mayo-Coleman apparently would not accept McBean's explanation concerning the procedure for overtime distribution, she requested to meet with Human Resources Regional Manager Bob Jandovitz. (Copeland Aff. at ¶ 12.)

McBean told Copeland that, in the beginning of June 2012, he and Mayo-Coleman met with Jandovitz to discuss her overtime concerns. During that meeting, Jandovitz confirmed for Mayo-Coleman what McBean had already explained to her--- that the CBA required overtime opportunities in her Department to be shared. Further, McBean explained to Copeland that, as a result of Jandovitz' explanation, it appeared to McBean as though Mayo-Coleman had gained an understanding of the proper procedure for the distribution of overtime assignments in her Department, and that, consequently, she understood that her complaint about overtime distribution was unfounded. (Copeland Aff. at ¶ 13.)

Further, McBean provided Copeland with additional insight and information concerning Mayo-Coleman's sex discrimination complaint premised on her allegations that she was denied opportunities for overtime Fire Watch work. McBean told Copeland that Mayo-Coleman admitted to him and others that she was not able to perform the heavy lifting required by the Fire Watch assignment, and she did not want that assignment. McBean further explained to Copeland that, Mayo-Coleman made it well known to him and others that, what she really wanted, was for the Company to respect her seniority by going through the futile exercise of offering her the overtime assignments, regardless of her lack of ability or desire to do the overtime work offered. (Copeland Aff. at ¶ 14.)

With respect to Mayo-Coleman's sexual harassment claim, McBean told Copeland that, he had a conversation with Mayo-Coleman in early June 2012, during which he had suggested to her that she should speak with Jandovitz about any concerns that she may have had about working with Smith. According to McBean, however, Mayo-Coleman told him, in words or substance, that she did not want to speak with Jandovitz at that time because she was "building up a file on Smith." (Copeland Aff. at ¶ 15.)

**Copeland's Interview With Debbie Troche**

On August 23, 2012, Copeland met with Troche to discuss Mayo-Coleman's allegations. Troche unequivocally denied that she had ever made any implicit or explicit comment to, or about, Mayo-Coleman to the effect that she could not perform overtime Fire Watch duties because she was a woman. Troche explained to Copeland that she had met with Mayo-Coleman

John B. Douglass
EEOC Investigator
October 30, 2013
Page 10

and Fred Panicci approximately two (2) years prior (August 2010), to address a complaint that she had then that she had been denied overtime Fire Watch work. During that meeting, Troche and Panicci reviewed the requirements of the overtime Fire Watch assignment, which involve, among other things, heavy lifting of pipe. Mayo-Coleman acknowledged that she was unable to do the assignment because of the heavy lifting, but insisted that the Company was nevertheless required to ask her whether she wanted the overtime assignment before other employees with less seniority were offered that work. (Copeland Aff. at ¶ 16); (Troche Aff. ¶¶ 14-16, Ex.2, Fire Watch Job Description.)

Additionally, with respect to Mayo-Coleman's sexual harassment allegations, Troche informed Copeland that, prior to August 13, 2012, Mayo-Coleman had never brought her sexual harassment complaint about Smith to the attention of Human Resources. (Copeland Aff. at ¶ 17) (Troche Aff. at ¶16 ); (Jandovitz Aff. at ¶ 13.)

## Copeland's Interview With Tyrone Smith

On August 23, 2012, Copeland interviewed Tyrone Smith. With respect to Mayo-Coleman's sexual harassment claim, Smith emphatically and categorically denied every allegation she made against him. (Copeland Aff. at ¶ 18.)[12]

Moreover, during the course of discussing Mayo-Coleman's sexual harassment allegations and the work environment in Smith's Department, Smith requested Copeland's assistance in addressing a situation involving an employee he supervised, Reagan Shepherd, who had posted inappropriate pictures of women around the workplace.[13] In a somewhat ironic development, Smith learned that Mayo-Coleman was the source of the inappropriate pictures, having cut them out of magazines and given them to Shepherd for display at work. (Copeland Aff. at ¶ 18.)[14]

Additionally, with respect to Mayo-Coleman's claim that she had been passed over for overtime opportunities in favor of employees with less seniority, Smith explained (consistent with the explanations provided by McBean and Jandovitz), that, according to the CBA, overtime in the Engineering Department must be assigned on a shared basis, and not based on seniority, as Mayo-Coleman incorrectly claimed. Moreover, Smith confirmed that it was well known that

---

[12]     Later on too, in April 2013, during a conversation with Troche, Smith remained unequivocal in his emphatic denial of Mayo-Coleman's allegations of sexual harassment, sex discrimination and retaliation. (Troche Aff. at ¶ 17.)

[13]     Some of the postings were of pictures of scantily clad celebrity women. (Copeland Aff. at ¶¶ 19-20, Ex. 4, copy of confiscated pictures.)

[14]     That same day, Copeland and Troche addressed the situation by removing the pictures and counseling Reagan Shepherd that the pictures were inappropriate for display in the workplace. Copeland did not confront Mayo-Coleman to confirm whether she was, in fact, the source of the inappropriate pictures. Copeland determined that Smith's allegations were outside the scope of her investigation concerning Mayo-Coleman's sexual harassment and discrimination allegations. (Copeland Aff. at ¶¶ 19-20, Ex. 4, copies of confiscated pictures.)

John B. Douglass
EEOC Investigator
October 30, 2013
Page 11

Mayo-Coleman could not perform the physically demanding aspects of the overtime Fire Watch assignment, and therefore, she could not be selected for that work. (Copeland Aff. at ¶ 21.)

Smith also explained that, prior to the time that former Maintenance Superintendent Fred Panicci retired, he frequently, and without Smith's knowledge, offered Mayo-Coleman overtime assignments based on her seniority. Once Panicci retired, however, Mayo-Coleman was no longer given preference for overtime assignments based on her seniority. Rather, overtime in the Department was properly distributed on a shared basis. (Copeland Aff. at ¶ 22.)

**Copeland's Review Of Payroll Records Conclusively**
**Refuting Mayo-Coleman's Claim That She Was**
**Denied Overtime Assignments Based On Her Sex**

As part of her investigation, Copeland also reviewed payroll records showing the amount of overtime worked by each of the four employees in Mayo-Coleman's Department. Those records demonstrate that Mayo-Coleman ranked second in her Department for the highest amount of overtime hours worked in the years 2011 (863.75) and 2012 (559.50), and that, for the year 2013, overtime hours were being shared in the Department, as required by the CBA. (Copeland Aff. ¶ 23, Exs. 5, 6, 7, 8 (payroll records concerning Mayo-Coleman, Reagan Shepherd, Clark Simpson, and Michael Cronin, respectively).)

Furthermore, while Company payroll records show that Mayo-Coleman's male co-worker, Reagan Shepherd, worked more overtime than her in years 2011 (1,024) and 2012 (853), that evidence does not substantiate her discrimination claim, where the record also reveals that, during the same years, she was assigned more overtime than her two other male co-workers, Clark Simpson and Michael Cronin. (Copeland Aff., Exs. 5, 6, 7, 8 (payroll records concerning Mayo-Coleman, Reagan Shepherd, Clark Simpson, and Michael Cronin, respectively).)[15]

---

[15]    Because Mayo-Coleman is unable to provide specific evidence of disparate treatment in the assignment of overtime work, the EEOC should dismiss her sex discrimination claim. See Aiello v. Stamford Hosp., 09 Civ. 1161(VLB), 2011 WL 3439459, at *12-*13 (D. Conn. Aug. 08, 2011) (dismissing plaintiff's claim alleging disparate treatment in the assignment of overtime work because he did, in fact, receive a significant amount of overtime in comparison with other employees) (affirmed, 487 Fed. Appx. 677 (2d Cir. Nov. 8, 2012).) See also Turley v. ISG Lackawanna, Inc., No.06 Civ. 794S, 2011 WL 1104270, at *9 (W.D.N.Y. March 23, 2011) (plaintiff failed to demonstrate that he was treated unfavorably in the distribution of overtime work, where he received overtime assignments continuously from 2003 through 2008, and he often placed among the top half of employees for overtime hours worked.) See also Ramsey v. New York City Health & Hospitals Corp., No. 98 Civ. 1594, 2000 WL 713045, at *7 (S.D.N.Y. June 2, 2000) ("Considering that there is evidence that plaintiff made more money from over-time work than most other maintenance workers, the fact that an overtime job may have on various occasions been taken away from plaintiff and given to another maintenance worker is not evidence of a discriminatory employment practice adverse to plaintiff for purposes of his disparate treatment claim.")

John B. Douglass
EEOC Investigator
October 30, 2013
Page 12

**Investigation Outcome: No Evidence Found**
**To Substantiate Mayo-Coleman's Allegations**

Copeland's investigation resulted in her determination that Mayo-Coleman's sexual harassment allegations against Smith could not be substantiated. First, Smith vehemently and unequivocally denied Mayo-Coleman's allegations. Second, while Mayo-Coleman claimed that someone witnessed Smith making an inappropriate comment to her, she refused to disclose the witness' identity to Copeland. Thus, Mayo-Coleman obstructed Copeland from contacting the alleged witness in order to verify the truth of her allegation. Third, contrary to Mayo-Coleman's belief, Smith's October 21, 2011 email did not constitute evidence of sexual harassment. Finally, Mayo-Coleman offered no additional support for her allegations -- and Copeland's investigation revealed none. (Copeland Aff. at ¶ 24.)

Furthermore, Copeland determined that Mayo-Coleman's sex discrimination claim, based on her complaints concerning overtime assignments, was unsubstantiated. First, contrary to Mayo-Coleman's belief, the CBA requires overtime work to be shared among the employees in the Engineering Department, rather than assigned based on seniority. Second, the Company's payroll records conclusively refuted Mayo-Coleman's discrimination claim. (Copeland Aff. at ¶ 25.)

On November 9, 2012, Copeland and Human Resources Representative Jason Graham met with Mayo-Coleman to inform her about the investigation results. Copeland explained to Mayo-Coleman that she was unable to verify her allegations. Copeland also explained to Mayo-Coleman that it would have been helpful to the investigation if Mayo-Coleman had revealed the identity of the person whom she claimed had witnessed Smith making an inappropriate comment to her. Coleman told Mayo-Coleman that she could still provide her with that information. However, Mayo-Coleman refused the invitation and claimed, once more, that the alleged witness was unwilling to speak with Copeland. (Copeland Aff. at ¶ 26.)

Additionally, Copeland informed Mayo-Coleman that she had met with Smith earlier that day (November 9, 2012), and, although Mayo-Coleman's allegations were unsubstantiated, Copeland reminded Smith about the Company's Anti-Harassment and EEO Policy, the Code of Ethics, and the CBA. Copeland also explained to Mayo-Coleman that, in order to ensure that assignments of overtime work to the Store Room employees would continue on a shared basis, as required by the CBA, the overtime distribution procedure had been updated to match the relevant CBA language. (Copeland Aff. at ¶ 27, Ex. 9 (undated draft letter from Copeland to Mayo-Coleman, memorializing their November 9, 2012 discussion.)

At the end of their November 9, 2012 meeting, Mayo-Coleman appeared visibly agitated, presumably because the investigation had not gone her way, and she blurted out her baseless, outrageous opinion that, if Smith had raped and beat her, but no tape recording existed to prove it happened, the Company would claim that it never happened. Mayo-Coleman then commented to Copeland, in words or substance that, "men can do anything to women and get away with it." Then, as she walked out of the meeting, Mayo-Coleman said that she was "disgusted." (Copeland Aff. at ¶ 28.)

John B. Douglass
EEOC Investigator
October 30, 2013
Page 13

### ALLEGATION #2:

> I have been with the Respondent since 1988. In 2005 I was assigned to the Store Room as an attendant. My Maintenance Foreman was Freddie Pinichi who retired in October of 2011. The Maintenance Manager I worked with was Liz Madonco, but she transferred in Aug 2011.

### RESPONSE:

For the limited purpose of responding to the Charge, American Sugar does not dispute the facts alleged.

### ALLEGATION #3:

> My supervisor, Tyrone Smith told me after Pinichi's departure that you will not have him to protect you now and give you your way. He immediately started being more disrespectful.

### RESPONSE:

American Sugar denies these allegations. On April 16, 2013, in connection with the Company's investigation concerning Mayo-Coleman's Charge, Human Resources Representative Debbie Troche met with Smith in order to review the Charge allegations with him and ascertain his response. During that April 16, 2013 meeting, Smith categorically denied that he had engaged in any conduct towards Mayo-Coleman that was sexually inappropriate, discriminatory, or retaliatory. Additionally, Smith specifically denied Mayo-Coleman's allegations, as follows:

- He denied that he was ever disrespectful to Mayo-Coleman, and he denied that he told her after Pinicci's departure that, "you will not have [Pinicci] to protect you now and give you your way."

- He denied ever telling Mayo-Coleman that, "Your boobs are getting big"

- He denied ever telling Mayo-Coleman that, "I would hit you up if you weren't so old".

- He denied ever telling Mayo-Coleman that, "You have a fat juicy ass".

- He denied that he ever leered at Mayo-Coleman.

John B. Douglass
EEOC Investigator
October 30, 2013
Page 14

- He denied that he ever touched Mayo-Coleman in any inappropriate way.

- He denied that he ever touched Mayo-Coleman's buttocks.

Further, with respect to Mayo-Coleman's allegations concerning payroll mistakes in 2006, 2007 and 2008, Smith represented to Troche that "[a]ny mistakes [he] was aware of [he] corrected immediately." (Troche Aff. ¶ 17.)

Additionally, American Sugar respectfully refers the EEOC to its Response to Allegation #1.

### ALLEGATION #4:

> **I submitted a grievance on May 4, 2012 that was not responded to until June when I had a meeting with HR Director, Bob Jandowitz. Mr. Jandowitz told me he did not like grievances and I was not following the proper procedures and needed to meet with my supervisor first. I was not comfortable talking to the supervisor who was harassing me.**

### RESPONSE:

American Sugar denies these allegations. While Respondent acknowledges that Mayo-Coleman submitted a "Grievance Form" to Human Resources that was dated May 4, 2012, that correspondence was not considered as an official grievance by the Company or the Union because it was not submitted by Mayo-Coleman in accordance with the grievance procedure set forth in the CBA. (Jandovitz Aff. ¶¶ 3-4, Ex. 2, CBA, Art. 9 (Grievance Procedure); Ex. 3, Mayo-Coleman's May 4, 2012 Grievance Form.)

As a former Union Delegate, Mayo-Coleman was well aware of the steps she had to follow to submit an official grievance. The grievance procedure first requires the employee and her Union Representative to meet with the employee's supervisor in an attempt to resolve the employee's concern before an unresolved issue is to be documented as a grievance to be addressed by a Company Human Resources Representative. Here, Mayo-Coleman failed to meet with her supervisor prior to documenting her complaint on a Local 74, USWU Grievance Form, and submitting it directly to Human Resources. Consequently, the Grievance Form could not be accepted as an official grievance. (Jandovitz Aff. at ¶¶ 2-5.)

Furthermore, American Sugar denies that the Company did not respond to her May 4, 2012 Grievance Form until June 2012. That Grievance Form asserts Mayo-Coleman's allegation that, despite her greater seniority, she had been improperly passed over for overtime opportunities in favor of employees in her Department with less seniority. Upon receipt of the Grievance Form, Human Resources Regional Manager Bob Jandovitz confirmed with Smith and

John B. Douglass
EEOC Investigator
October 30, 2013
Page 15

Mayo-Coleman's Union Representative, Assistant Chief Steward Adolph McBean, that the overtime complaint had never been raised with Smith. Jandovitz advised McBean that, in light of the fact that the grievance procedure had not been followed, Mayo-Coleman's May 4, 2012 "Grievance Form" would not be considered a grievance. McBean agreed with Jandovitz' position. (Jandovitz Aff. at ¶¶ 3-10.)

Additionally, in order to facilitate the proper grievance procedure, so that the Company could properly respond to Mayo-Coleman's complaint, on May 22, 2012, Jandovitz wrote an email to Smith advising him to meet with Mayo-Coleman and McBean. (Jandovitz Aff. ¶ 8, Ex. 4, May 22, 2012 email to Smith.) Thereafter, Smith met with Mayo-Coleman and McBean about Mayo-Coleman's overtime complaint. At that meeting, McBean agreed with Smith's conclusion that there was no basis for Mayo-Coleman's complaint because the CBA requires overtime in the Engineering Department to be distributed equally, regardless of seniority. (Copeland Aff. at ¶ 12.)

Mayo-Coleman, however, unreasonably refused to accept her own Union Representative's explanation that she had not been denied overtime opportunities, and she demanded to pursue the issue with Human Resources. Consequently, in June 2012, Jandovitz met with Mayo-Coleman and McBean, to discuss Mayo-Coleman's overtime complaint. (Copeland Aff. at ¶ 12); (Jandovitz Aff. at ¶¶ 9-10.)

Notably, at the June 2012 meeting, Mayo-Coleman did not make a complaint about sexual harassment against Smith. Rather, she only discussed her incorrect belief that she had been improperly passed over for overtime opportunities in favor of employees in her Department with less seniority. It was clear that Mayo-Coleman was operating under the misconception that the CBA required overtime opportunities to be given in accordance with employee seniority. Jandovitz and McBean resolved Mayo-Coleman's complaint by explaining to her that the CBA requires overtime to be shared among the employees in her Department, regardless of seniority. As a result, and contrary to Mayo-Coleman's misconception, the terms of the CBA do not entitle her to more overtime opportunities than the employees in her Department with less Company seniority. The June 2012 meeting concluded after Mayo-Coleman expressed her understanding that, in accordance with the CBA, overtime opportunities were to be shared among the employees in her Department. (Jandovitz Aff. ¶ 10); (Copeland Aff. at ¶ 13.)

Additionally, American Sugar respectfully refers the EEOC to its Response to Allegation #1.

**ALLEGATION #5:**

> **I was having such a problem being in this environment that I became physically sick and had to go out on a Medical leave on June 6, 2012. I returned back to work on August 13, 2012. Before I came back to work I sent a letter to HR stating that I want to return to a harassment free environment. HR stated they would conduct and investigation and get back to me. I do**

John B. Douglass
EEOC Investigator
October 30, 2013
Page 16

> **not feel comfortable at work and am getting no support from**
> **management.**

**RESPONSE:**

American Sugar denies information and knowledge sufficient to form a belief as to the truth of Mayo-Coleman's allegation that, "[she] was having such a problem being in this environment that [she] became physically sick and had to go out on a Medical leave on June 6, 2012," except admits that Mayo-Coleman submitted to the Company what purported to be a doctor's note, dated, June 6, 2012, stating that she required a leave of absence until June 25, 2012.  (Jandovitz Aff. ¶ 11, Ex. 5, Mayo-Coleman's June 6, 2012 doctor's note.)

Additionally, Respondent admits that Mayo-Coleman returned to work on August 13, 2012, and that, before she returned, she sent a letter to Human Resources Regional Manager Bob Jandovitz, dated, August 9, 2012, stating only generally, that she wanted to "return to a work environment free of stress, sexual harassment and discrimination." As a result of receiving that letter, Human Resources Representatives Bob Jandovitz and Debbie Troche scheduled a meeting with Mayo-Coleman, and met with her, on August 13, 2012, her first day back to work. (Jandovitz Aff. at ¶ 12, Ex. 6, August 9, 2012 letter from Mayo-Coleman to Jandovitz); (Troche Aff. ¶¶ 6-11.)

For further discussion about that August 13, 2012 meeting and the Company's internal investigation concerning Mayo-Coleman's allegations, American Sugar respectfully refers the EEOC to its Response to Allegation #1.

Additionally, given the Company's immediate response to the general concerns raised by Mayo-Coleman's August 9, 2012 letter; the fact that Jandovitz and Troche met with Mayo-Coleman about those concerns on her first day back to work (August 13, 2012), and they inquired whether any accommodations could be provided to her, including a change in schedule or shift (which she declined); and that Jandovitz made a good faith representation to her that the Company would conduct an investigation concerning her sexual harassment and discrimination allegations, it is unclear how Mayo-Coleman could possibly allege, with a straight face, that she was "getting no support from management."

**ALLEGATION #6:**

> **Prior events that transpired before my leave was, constant**
> **mistakes with my paycheck that did not get fixed for weeks,**
> **and my overtime payments that were held for weeks. I was also**
> **not given many opportunities for overtime because I was told**
> **women could not handle this type of work. By being denied**
> **this overtime it caused me to lose out on 5-6K. The two (2)**
> **male employees with less seniority that work with me in the**

John B. Douglass
EEOC Investigator
October 30, 2013
Page 17

> **Store Room are always given overtime. The overtime is allotted according to seniority per the CBA.**
>
> **My supervisor, Tyrone Smith stated these things to me, while at work, "your boobs are getting big," "I would hit you up if you weren't so old," and "you have a fat juicy ass." He also leers at me and I've asked him to stop but to no avail. He once smacked my butt while at work.**

**RESPONSE:**

American Sugar denies these allegations and respectfully refers the EEOC to its Responses above.


**ALLEGATION #7:**

> **Adjustments have had to be made to my paychecks in 2006, 2007, and 2008. I feel that Mr. Smith is the reason I have had so many mistakes to my paycheck.**

**RESPONSE:**

American Sugar affirmatively states that Mayo-Coleman's allegations concerning adjustments to her paychecks in 2006, 2007 and 2008 are time-barred by a 300 day statute of limitations. In New York, Title VII claims must be filed with the EEOC or dual-filed with the NYSDHR within 300 days of the alleged discriminatory act. See 42 U.S.C. § 2000e-5(e)(1). If a plaintiff fails to file a timely charge with the EEOC, the claim is time-barred. See Butts v. The City of New York Department of Hous. Preservation and Development, 990 F.2d 1397, 1401 (2d Cir.1993).

Here, Mayo-Coleman specifically alleges that the paycheck errors/adjustments she complains about occurred in 2006, 2007, and 2008. Additionally, in August 2012, when Mayo-Coleman met with Human Resources Regional Manager Nicole Copeland in connection with the Company's internal investigation, Mayo-Coleman's only complaint about an adjustment to her paycheck concerned a mistake allegedly made by Smith in 2008, which necessitated an upward adjustment to her pay to compensate her for fifteen (15) hours of overtime worked. (Copeland Aff. at ¶ 11.) Since Mayo-Coleman's paycheck claims concern events alleged to have occurred beyond the 300 day statute of limitations, those claims are time-barred and should be dismissed.

Moreover, Mayo-Coleman's paycheck claims otherwise fail on the merits. First, Mayo-Coleman's claim that Tyrone Smith was responsible for mistakes to her paychecks before he even commenced his employment with American Sugar on January 21, 2008, is implausible. Furthermore, to the extent that Mayo-Coleman's conclusory allegation about paycheck mistakes/adjustments can be construed as a claim of disparate treatment based on sex, the

John B. Douglass
EEOC Investigator
October 30, 2013
Page 18

evidence does not prove that men in her Department fared better than her with respect to paycheck errors.  Specifically, Company records demonstrate that, during the time period, October 20, 2011 to May 13, 2013 (when Smith separated employment), Mayo-Coleman's male co-worker, Reagan Shepherd, had thirteen (13) adjustments made to his paychecks, while Mayo-Coleman only had nine (9) paycheck adjustments.  (Troche Aff. ¶¶ 18-19, Ex.3, Historical Edit Report showing paycheck edits for Smith's Department during the relevant time period.)

**ALLEGATION #8:**

> **For reasons I have listed above I believe I have been discriminated against due to my sex (female) in violation of the Title VII Civil Rights Act of 1964, as amended and other Federal, state and local anti-discrimination statutes.**

**RESPONSE:**

American Sugar denies these allegations and respectfully refers the EEOC to its Responses above.

**III.    CONCLUSION**

The evidence does not support Mayo-Coleman's claims, and her Charge should be dismissed for lack of probable cause for the following reasons:

(1) A number of Mayo-Coleman's allegations are time-barred.

(2) Mayo-Coleman's sexual discrimination claim fails as a matter of law because:

(a) Contrary to Mayo-Coleman's belief, the CBA requires overtime work to be shared among the employees in her Department, rather than assigned based on seniority;

(b) There is no evidence to support Mayo-Colman's self-serving conclusory allegation that she was "not given many opportunities for overtime because [she] was told women could not handle this type of work."  What's more, the Company's payroll records conclusively refute Mayo-Coleman's discrimination claim by demonstrating that she ranked second in her Department, consisting of four employees, for the highest amount of overtime hours worked during the relevant time period; and,

(c) American Sugar unequivocally denies that Mayo-Coleman was excluded from overtime work based on her sex.  To the extent that Mayo-Coleman's allegation relates to the overtime Fire Watch assignment, the evidence demonstrates that Mayo-Coleman was unable to

John B. Douglass
EEOC Investigator
October 30, 2013
Page 19

perform the heavy lifting required by the assignment, and that, in any event, she did not actually want that assignment.

(3) Mayo-Coleman's sexual harassment claim fails as a matter of law because:

(a) She suffered no tangible adverse job action. Mayo-Coleman is currently employed, and there is no evidence that she suffered any loss of pay attributable to any alleged unlawful discriminatory or retaliatory act;

(b) The alleged sexually harassing conduct was not severe, continuous or pervasive enough, as a matter of law, to create a hostile working environment.

In order to establish a hostile work environment claim, a plaintiff must show the following: (1) the alleged harassment was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment; and (2) a specific basis exists for imputing the objectionable conduct to the employer. See Augustin v. The Yale Club of N.Y. City, 274 Fed. App'x 76, 77 (2d Cir. 2008) (citing, Alfano v. Costello, 294 F.3d 365, 373-4 (2d Cir. 2002) ("[I]ncidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.") When determining severity and pervasiveness, the Court considers the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, whether it was physically threatening and humiliating rather than merely offensive, and whether the conduct unreasonably interfered with Plaintiff's work performance. See Patane v. Clark, 508 F.3d 106, 113 (2d Cir. 2007) (citation omitted). A plaintiff must demonstrate that "the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of her employment were thereby altered." Augustin, 274 Fed. App'x at 77 (citing, Alfano, 294 F.3d at 373). Episodic incidents are generally insufficient to constitute a hostile work environment; the incidents "must be sufficiently continuous and concerted in order to be deemed pervasive." Id. Moreover, a plaintiff must show that the hostility occurred because of her membership in a protected class. See Cunningham v. N.Y. State Dep't of Labor, 326 Fed. App'x 617, 620 (2d Cir. 2009); Brennan v. Metro. Opera Ass'n, 192 F.3d 310, 318 (2d Cir.1999).

"Title VII . . . does not set forth "a general civility code for the American workplace." Burlington Northern v. White, 548 U.S. 53 (2006) (internal citations omitted). "[T]he ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing" are not considered unlawful harassment. Faragher v. City of Boca Raton, 524 U.S. 775 (1998). See also Christoforou v. Ryder Truck Rental, Inc., 668 F.Supp. 294, 303 (S.D.N.Y. 1987) ("The law does not require an employer to like his employees, or to conduct himself in a mature or professional manner, or unfortunately, even to behave reasonably and justly when he is peeved.")

Here, Mayo-Coleman is unable to present sufficient evidence to demonstrate that she was subjected to conduct severe enough to constitute a hostile work environment. For starters, Mayo-Coleman does not allege, and she cannot reasonably establish, that her work environment was physically threatening. Mayo-Coleman's sexual harassment claim is based on a handful of

John B. Douglass
EEOC Investigator
October 30, 2013
Page 20

incidents, the vast majority of which concern Smith's alleged inappropriate comments to her.[16] See Litchhult v. USTRIVE2, Inc., 2011 WL 3877084, at *4 (E.D.N.Y. Sept. 1, 2011) (concluding team member's offensive comment insufficiently severe for purposes of hostile work environment claim and drawing distinction between physically threatening or humiliating conduct from that which is simply an offensive utterance); Faison v. Leonard St., LLC, No. 08–2192, 2009 WL 636724, at *4 (S.D.N.Y. Mar. 9, 2009) (dismissing a hostile work environment claim because "allegations of persistent shouting and a display of poor temperament are insufficient to state a plausible hostile-environment claim.")

Additionally, Mayo-Coleman cannot demonstrate that Smith's alleged conduct was continuous or pervasive, since she admitted that the inappropriate comments allegedly occurred during the **single one month time period of February 2012**.[17] Furthermore, Mayo-Coleman admitted to Copeland that Smith's alleged sexually harassing conduct had stopped as of May 4, 2012, and Mayo-Coleman's Charge states that the last date that any alleged discriminatory conduct took place was May 31, 2012. Consequently, Mayo-Coleman cannot demonstrate the requisite severe, continuous and pervasive sexually harassing conduct necessary for a legally actionable hostile work environment claim. (See attached Exhibit A (copy of Mayo-Coleman's sworn allegations, dated September 7, 2012)); (Copeland Aff. at ¶¶ 7, 9.)

(c) American Sugar maintained a reasonable, effective policy and procedure designed to prevent and correct any alleged discrimination or harassment, and Mayo-Coleman unreasonably failed to take advantage of that policy, and impeded American Sugar's internal investigation of her claims by refusing to fully cooperate in its investigation.

Pursuant to the Supreme Court's decisions in Faragher and Burlington Indus., an employer can avoid liability for actionable sexual harassment by a supervisor where, as here, the Claimant suffers no tangible job detriment and the employer can show: (1) that it exercised reasonable care to prevent and promptly correct any unlawful conduct, and (2) the employee unreasonably failed to avail herself of any corrective or preventative opportunities provided by the employer. See See Faragher v. City of Boca Raton, 524 U.S. 775, 807 (1998); Burlington Indus. v. Ellerth, 524 U.S. 742, 765 (1998).

Here, the evidence demonstrates that American Sugar exercised reasonable care to prevent and correct unlawful discrimination, harassment, and retaliation because, among other reasons: (1) the Company's policies and procedures prohibiting discrimination, sexual harassment and retaliation are published in the Code and distributed to all employees; (2) on August 13, 2013, upon learning of Mayo-Coleman's allegations of sexual harassment against

---

[16]      See Ex. A, Mayo-Coleman's sworn EEOC allegations, dated September 7, 2012 (attached hereto.)

[17]      During Mayo-Coleman's meetings with Copeland on August 21 and 22, 2012, Mayo-Coleman told Copeland that the comments were allegedly made by Smith during the single month time period of February 2012. Mayo-Coleman also admitted to Copeland that Smith's alleged sexually harassing conduct had altogether stopped as of May 4, 2012. (Copeland Aff. at ¶¶ 7, 9.)

John B. Douglass
EEOC Investigator
October 30, 2013
Page 21

Smith, the Company immediately offered Mayo-Coleman the option of a shift or position transfer (which she declined at that time); and (3) the Company granted Mayo-Coleman's October 18, 2012 request for a two-week transfer to the Sanitation Department. (Copeland Aff. at ¶ 2, Ex. 1, Code ); (Jandovitz Aff. at ¶¶ 15, 20, Ex. 8 (Mayo-Coleman's written request for a two-week transfer to the Sanitation Department, dated October 18, 2012).) See Barbau v. Credit Lyonnais Am. Servs., Inc., 97 Civ. 7991, 1998 U.S. Dist. LEXIS 20338, *12-13 (S.D.N.Y. Dec. 30, 1998) (holding promulgation and application of employer's equal opportunity policy describing internal complaint procedure constitutes reasonable effort to prevent discrimination.) See also Donovan v. Big V Supermarkets, Inc., 98 Civ. 2842, 1999 WL 615100 (S.D.N.Y. Aug. 12, 1999) (finding no issue of fact regarding maintenance of reasonable avenues of complaint where sexual harassment policy was maintained in the employee handbook.)

Additionally, the evidence shows that Mayo-Coleman unreasonably failed to take advantage of the Company's remedial procedures. Mayo-Coleman first complained of Smith's alleged sexual harassment to Human Resources on August 13, 2012, nearly one year after: (1) Freddie Pinicci's September 2011 retirement, which is when she claims that Smith started becoming more disrespectful towards her; and (2) approximately ten (10) months after Smith sent her the October 21, 2011 email, which she relies on as evidence of his alleged unlawful sexually harassing conduct. Such a lengthy delay alone demonstrates that Mayo-Coleman unreasonably failed to take advantage of American Sugar's preventive and corrective opportunities.[18] (See attached Exhibit A (copy of Mayo-Coleman's sworn allegations, dated September 7, 2012); (Copeland Aff. at ¶ 8, Ex. 3, Smith's October 21, 2011 email to Mayo-Coleman.) See, e.g., See O'Dell v. Trans World Entertainment Corp., 153 F. Supp. 2d 378 (S.D.N.Y. 2001) (employer established absence of vicarious liability for alleged sexual harassment of female employee by supervisor, through showing that complaining employee made inadequate use of harassment procedures by waiting for almost one year after sexual advances were made to make complaint) (affirmed, 40 Fed. Appx. 628, 2002 WL 1560266 (2d Cir. July 16, 2002)); Dayes v. Pace Univ., No. 98 Civ. 3675, 2000 WL 307382, at *6 (S.D.N.Y. Mar. 24, 2000) (granting employer summary judgment on its Faragher / Ellerth defense where plaintiff delayed one year before reporting supervisor's harassment) (affirmed, No. 00–7641, 2001 WL 99831, at *3 (2d Cir. Feb. 5, 2001); Barua v. Credit Lyonnais–U.S. Branches, No. 97 Civ. 7991, 1998 WL 915892, at *5 (S.D.N.Y. Dec. 30, 1998) (same).)

Furthermore, after having complained to Human Resources about Smith's alleged sexually harassing and discriminatory conduct, Mayo-Coleman unreasonably failed to fully cooperate in the Company's internal investigation by refusing to disclose information relevant to her allegations to Copeland. See Woodward v. Ameritech Mobile Communications, Inc., No. IP 98–0744–C H/G, 2000 WL 680415, at *15 (S.D. Ind. Mar. 20, 2000) (granting employer summary judgment on its affirmative defense where plaintiff, on the advice of counsel, refused

---

[18]     Mayo-Coleman alleges that after Maintenance Foreman Fred Pinicci retired in October 2011, Smith "immediately started being more disrespectful" towards her. Despite that allegation, however, she waited until August 13, 2012 to avail herself of American Sugar's sexual harassment complaint procedure.

John B. Douglass
EEOC Investigator
October 30, 2013
Page 22

to participate in employer's investigation of sexual harassment.)  Consequently, American Sugar will prevail on its <u>Faragher/Ellerth</u> affirmative defense, and Mayo-Coleman's claims should be dismissed.

     (3) Mayo-Coleman's retaliation claim fails as a matter of law because:

          (a) Her allegations are conclusory; and

          (b) She can offer no evidence to support her retaliation claim because none exists.

Finally, in addition to the above, and notwithstanding American Sugar's vehement denial of Mayo-Coleman's claims, it is indisputable that Smith's departure from the Company has, for all intent and purposes, resolved Mayo-Coleman's claims.  In fact, Mayo-Coleman, herself, admitted as much in a conversation with Human Resources Regional Manager Bob Jandovitz on August 1, 2013.  On that day, Mayo-Coleman reported to Jandovitz that, since Smith had separated from the Company on May 13, 2013, her work environment was much better, the employees in her Department were communicating better and working as a team, and her concerns about overtime distribution had also been resolved because her Department was following the proper procedure for overtime distribution in accordance with the CBA. (Jandovitz Aff. at ¶ 22.)

Based on the foregoing and enclosed affidavits and documentary evidence, American Sugar denies the allegations of sexual harassment, sex discrimination and retaliation as set forth in Mayo-Coleman's Charge, and requests that the Charge be dismissed in its entirety for lack of probable cause.

          Very truly yours,

          *Peter M. Stein* KW

          Peter M. Stein

PMS:KEW:caj
Enclosures



**MEMORANDUM**



ɔ:      R. Mayo                          **DATE:**    April 19, 1990

ROM:    D. W. Brainard

UBJECT:   R. MAYO GRIEVANCE (29-90) - 3/28/90

Upon reviewing your grievance, the company finds
the following:

The sugar which needed to be broken on 3/27/90 was
created and situated on the fifth floor of building #16.
The individuals who worked over were the brown sugar operators
who worked the 8-4 shift on this floor, and who had created
some of the sugar that required reprocessing. They were,
therefore, properly asked to work over. You worked in the
5 lb. room on the day in question and were, therefore, not
entitled to the overtime.

Based on the above, your grievance is denied.

DWB:bk                                              D. W. Brainard

cc:  W. Raiola
     W. McClane

## GRIEVANCE FORM

### LOCAL 1814, ILA
343 Court Street, Brooklyn, N.Y. 11231

#354CAR

29-90

RECEIVED
APR 02 1990
PERSONNEL DEPT.
REFINED
SUGARS INC.

DIVISION SLB Packaging

MEMBER ROSANNA A.L. MAYO
(Please Print)

EMPLOYER RSI
(Please Print)

DEPARTMENT BROWN Sugar   SHIFT 8am to 4pm

JOB Breaking Sugar Bags   SENIORITY 1½ 656

FOREMAN Jimmy Ryan

SHOP STEWARD RAYMOND GRASSI

NATURE OF GRIEVANCE People was ask to stay over
with less seniority, which I was Never
asked. I also Inform the foreman about
asking seniority people first, This Isn't
the first time I wasn't asked first

AGREEMENT CLAUSE VIOLATED

SETTLEMENT REQUESTED 4 Hours Over Time

DATE 3 | 28 | 90

Rosanna Mayo
EMPLOYEE'S SIGNATURE

117 | 54 | 9003
SOCIAL SECURITY NUMBER

UNION REPRESENTATIVE

White Copy - Employer      Canary Copy - Member      Pink Copy - Union      Blue Copy - Legal



*6*

# Memorandum

| | | | |
|---|---|---|---|
| **To:** | Rosanna Mayo Coleman | **Date:** | March 21, 1996 |
| **From:** | Bob Jandovitz | | |
| **Subject:** | Grievance # 7-96 | | |

---

Upon reviewing your grievance the company finds the following:

On the day in question, Ed Loyola was already scheduled to come in to relieve you on the 2 lb. packer station and that morning Cliff Galang (H.S.B.) had called in sick. Jim Wallace tried to call Ed Loyola to inform him of a possible change of assignment, but couldn't get him.

At the unions request and when possible the company will not switch O.T. without notifying the employee before arrival at work. Jim honored this request and kept Ed assigned to the 2 lb. job. He then tried to get coverage for the high speed bagging position but no experienced operators were available, so S. Sancho worked 16 hours to cover his station.

Considering the above the company did not: violate the contract and has denied your grievance.

cc:   D. Brainard
        T. McMahon
        P. Forcelli

3-99  01:15P REFINED SUGARS

# 7

# GRIEVANCE FORM

## LOCAL 1814, ILA
343 Court Street, Brooklyn, N.Y. 11231

#1-96

RECEIVED DEC 22 1995 THIS MIXED DEPT HAS BEEN DENIED SUGARS, INC.

DIVISION ___III___

MEMBER  ROSANNA MAYO COLEMAN
(Please Print)

EMPLOYER  Refine Sugars
(Please Print)

DEPARTMENT  5LB          SHIFT  12-8 Am

JOB  Machine OPER          SENIORITY  656

FOREMAN  Jim WALLACE

SHOP STEWARD  Fred Gaffney

NATURE OF GRIEVANCE  Article 6 Section I
Sammy Sancho Relief Call in sick, John Covered
The Station with HSB oper Sammy & Ed Loyola from 8am-12-12-4pm
I Stay over for the packer in my station when Ed came in
At 12:00 Jim sent Him to Relear me or sent me Home, Jim Asked Sammy
To Do 16 Hours, However I have seniority over Sammy & Ed
AGREEMENT CLAUSE VIOLATED  ARTICLE 6 SECTION I ARTICLE 2 Section 2

SETTLEMENT REQUESTED  4 his DOUBLE TIME

DATE Dec 20 11995

Rosanna Coleman
EMPLOYEE'S SIGNATURE

Fred Gaffney
UNION REPRESENTATIVE

117  154  9003
SOCIAL SECURITY NUMBER

White Copy - Employer     Canary Copy - Member     Pink Copy - Union     Blue Copy - Legal

Form 103

3-99 01:15P REFINED SUGARS

8

**REFINED SUGARS    INC.**
**MEMORANDUM**

**TO:**     Rosanna Mayo-Coleman

**FROM:**   Bob Jandovitz

**DATE:**   October 1, 1999

**RE:**     **Grievance #58-99**

Upon reviewing your grievance, the Company finds the following:

The old high speed bagging station is rarely operated and has been cleaned on both straight time and overtime by all 3 GMP employees assigned to Packaging.  On the day in question, the GMP laborers were asked in seniority order, if they wanted to stay to clean the "old" station.  The first employee refused.  When Ram was asked, he accepted.  The Supervisors scheduled the overtime properly.

Considering the above, your grievance is denied.

CC:    D. Brainard
       D Macone
       T. McMahon
       A. Vezzuto

RMJ/sm

3-99 01:13P REFINED SUGARS        914 505 4052        P.U5

9

**GRIEVANCE FORM**

**LOCAL 1814, ILA**

343 Court Street, Brooklyn, N.Y. 11231

#18-99
nuy
7/23/99

DIVISION ___3___

MEMBER __Rosanna Maro-Coleman__
(Please Print)

EMPLOYER __Refinied Sugars__
(Please Print)

DEPARTMENT __B. Sugar__                SHIFT __4-12__

JOB __packing__                SENIORITY __656  11 years__

FOREMAN __Thom Mc Mahon__

SHOP STEWARD __alby__

NATURE OF GRIEVANCE __Ram stay over to Clean the__
__Old High Speed Station I went to see why__
__I Couldnt stay over to Clean the station__
__it was down for 12-8 shift he stay over__
__all the time I havnt had any over time__
__in about 3 Months I also have seniority__
AGREEMENT CLAUSE VIOLATED __after 11 years this Ram gets overtime__
__ARTICLE 6 sect 1__   __all the time__   __ARTICLE 2 sec 2__

SETTLEMENT REQUESTED __4 HRS 1 1/2__

_____

_____

_____

DATE __7 | 20 | 99__

__Rosanna Colenfam__
EMPLOYEE'S SIGNATURE

_____
UNION REPRESENTATIVE

__117    154   19 003__
SOCIAL SECURITY NUMBER

White Copy - Employer        Canary Copy - Member        Pink Copy - Union        Blue Copy - Legal

Form 103

# *The* American Sugar Refining Company

**MEMORANDUM**

July 3, 2002

To:       F. Gaffney/L. Mayo-Coleman (For All PT1)

Cc:       D. Brainard
          K. Merritt
          D. McFarland

From:     Bob Jandovitz

Subject:  Grievance # 31-01

Upon reviewing your grievance, the company finds the following:

> The Company and Local 1814 have agreed that all training for open full time PT1 positions in packaging on the SIG and Hesser only, will be offered by polling the senior employees in the group.

Bob Jandovitz
Manager, Human Resources

BJ/mg

# American Sugar Refining, Inc.

**MEMORANDUM**

April 7, 2003

To:        Rosanna Mayo Coleman

Cc:        Don Brainard              Fred Gaffney
           Dennis Mc Farland

From:      Bob Jandovitz

Subject:   Grievance # 08 - 03

Upon reviewing your grievance the company finds the following:

On the day in question packaging did not need an industrial bagger since we had an industrial relief employee on site.  Industrial bagging was down due to lack of space in the warehouse. Packaging had enough coverage and your services weren't required.

Considering the above your grievance denied.



1 Federal Street, Yonkers, NY 10702
Tel: (914) 963-2400   Fax: (914) 963-1030

# GRIEVANCE FORM

## LOCAL 1814, ILA
### 343 Court Street, Brooklyn, N.Y. 11231

OP-03

MY
3/1/03

DIVISION _3_

MEMBER _Rosanna Mayo-Coleman_
(Please Print)

EMPLOYER _American Sugar_
(Please Print)

DEPARTMENT _Eng_          SHIFT _12-8_

JOB _Tech 2_          SENIORITY _7/10/88_

FOREMAN _Dennis McFarland_

SHOP STEWARD _Rosanna_

NATURE OF GRIEVANCE _Claud Lewis worked in high Speed on Dec 26th for the Day. Why wasn't I Called in to cover for Claude I was on 12 Hours, But that never Stop Maxine from working 16 Hours with 2 people She had to Break were as I had 3 people to_

AGREEMENT CLAUSE VIOLATED _Break. And wasn't Called in_

SETTLEMENT REQUESTED _I would Like To get Paid for 4 Hours Time+half_

DATE _12/27/02_

_Rosanna Mayo_
EMPLOYEE'S SIGNATURE

_Rosanna Mayo_
UNION REPRESENTATIVE

_117 154 9003_
SOCIAL SECURITY NUMBER

White Copy - Employer      Canary Copy - Member      Pink Copy - Union      Blue Copy - Legal

# American Sugar Refining, Inc.

**MEMORANDUM**

April 7, 2003

| | | |
|---|---|---|
| To: | Claude Lewis | |
| | Mitch Wilson | |
| | Rosanna Mayo Coleman | |
| Cc: | Don Brainard | Fred Gaffney |
| | Dennis Mc Farland | |
| From: | Bob Jandovitz | |
| Subject: | Grievance # 09- 03 | |

Upon reviewing your grievance the company finds the following:

On the day in question Will did bring up supplies and this work should have been offered to someone in Engineering. Upon review Will only performed the work in question for approximately 4 hours therefore Mitch Wilson will be paid 4 hours at time and one half.



1 Federal Street, Yonkers, NY 10702
Tel: (914) 963-2400   Fax: (914) 963-1030

## GRIEVANCE FORM

### LOCAL 1814, ILA
343 Court Street, Brooklyn, N.Y. 11231

09-03

MNJ
3.1.03

DIVISION ___3___

MEMBER Claude Lewis, Mitch Wilson, Rosanna Coleman
(Please Print)

EMPLOYER American Sugars
(Please Print)

DEPARTMENT Eng.          SHIFT 8-4

JOB Relief Oper Tech 2          SENIORITY 1988, 1982, 1988

FOREMAN Dennis McFarland

SHOP STEWARD Rosanna Mayo Coleman

NATURE OF GRIEVANCE Will was Bring up Supplies to
Brown Sugar which he is in a Different Dept.
Therefore the Company Should have used
the Tech Two, Mitch could have stay over
Claude could have came in early & I could have
Stayed -til 8pm he did the Job For 12 Hours.

AGREEMENT CLAUSE VIOLATED Article 2 Section 1 + 2

SETTLEMENT REQUESTED we would like to get Paid 4 Hour
Time half. he has to ask the people in
the Eng. Dept First

DATE 12 30 02

Mitch Wilson
Rosanna Mayo Coleman
EMPLOYEE'S SIGNATURE
Claude Lewis
Rosanna Mayo Coleman
UNION REPRESENTATIVE

C. Lewis. 101- 54- 8284
M. Wilson 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
R. Mayo 117 54-9003
SOCIAL SECURITY NUMBER

White Copy – Employer          Canary Copy – Member          Pink Copy – Union          Blue Copy – Legal

# American Sugar Refining, Inc.

**MEMORANDUM**

April 7, 2003

To:         Rosanna Mayo Coleman

Cc:         Don Brainard                    Fred Gaffney
            Dennis Mc Farland

From:       Bob Jandovitz

Subject:    Grievance # 11 - 03

Upon reviewing your grievance the company finds the following:

We discussed the grievance in my office.  It was determined that even though coverage was being scheduled once Sandru changed his mind after speaking with D. Mc Farland, the coverage wasn't required.  You did not miss out on an overtime opportunity since the coverage was provided by the eligible employee.

Considering the above your grievance denied.



1 Federal Street, Yonkers, NY 10702
Tel: (914) 963-2400   Fax: (914) 963-1030

## GRIEVANCE FORM

### LOCAL 1814, ILA
343 Court Street, Brooklyn, N.Y. 11231

11~v,
MJ
3/1/03

DIVISION ___3___

MEMBER ___Rosanna Coleman___
(Please Print)

EMPLOYER ___American Sugars___
(Please Print)

DEPARTMENT ___Eng.___          SHIFT ___12-8___

JOB ___Tech 2___          SENIORITY ___6586 15 yrs.___

FOREMAN ___Singh/Dennis McFarlen___

SHOP STEWARD ___Rosanna Coleman___

NATURE OF GRIEVANCE ___I was Told at 7:45 I Could Stay over to Do The Relief Job. Mitch Wilson was going To Run 6x Because Sandra wanted to go home at 8:00 Sandra Said Dennis Said he was To Stay.___

AGREEMENT CLAUSE VIOLATED ___Article 6 Section d & E___

SETTLEMENT REQUESTED ___Would Like to Be Paid 4 Hours Time/Half.___

DATE ___Jan 29 / 03___

___Rosanna Mayo-Coleman___
EMPLOYEE'S SIGNATURE

___Rosanna Mayo Coleman___
UNION REPRESENTATIVE

SOCIAL SECURITY NUMBER ___117   154   9003___

White Copy - Employer       Canary Copy - Member       Pink Copy - Union       Blue Copy - Legal

# American Sugar Refining, Inc.

**MEMORANDUM**

May 21, 2003

To:     Rosanna Coleman

Cc:     Don Brainard                    F. Gaffney
        D. McFarland

From:   Bob Jandovitz

Subject:   Grievance #25 - 03

Upon reviewing your grievance the company finds the following:

The company has a long practice of trying to run/operate the refinery as efficiently as possible. This along with other management rights as mentioned in Article 3 Section A gives us the right to schedule as we did during the incident you cited in your grievance. Additionally we discussed this actual grievance with both Dennis McFarland and Fred Gaffney wherein Dennis stated that we didn't require your assistance since the warehouse was full and production had to be slowed down. Therefore breaks weren't required.

Finally Article 3 Sec B as cited in your grievance pertains to minimum hours of work upon reporting to work and does not apply here. Article 6 Sec H also cited in your grievance refers mainly to continuation of a job already being performed you were not performing the job in question. In your case the company had several options at their disposal and was not required to call you in.

Considering the above your grievance is denied.

Domino SUGAR

1 Federal Street, Yonkers, NY 10702
Tel: (914) 963-2400   Fax: (914) 963-1030

**GRIEVANCE FORM**

**LOCAL 1814, ILA**

343 Court Street, Brooklyn, N.Y. 11231

25-03

9/16/03

MJ

DIVISION _____ 3 _____

MEMBER _____ Rosanna Coleman _____
(Please Print)

EMPLOYER _____ American Sugars _____
(Please Print)

DEPARTMENT _____ Pack _____          SHIFT _____ 8-4 pm _____

JOB _____ Tech 2 _____          SENIORITY _____ 656 _____

FOREMAN _____ Dennis McFarland _____

SHOP STEWARD _____ Rosanna Coleman _____

NATURE OF GRIEVANCE _____ I was Not Call in When
Claud Lewis went up to Brown at
4:00 to Run the Station. Could have
Call Me in to Do Claude Lewis Job

AGREEMENT CLAUSE VIOLATED _____ ARTicle 3 Sec B ARTicle 6 Sech _____

SETTLEMENT REQUESTED _____ 4 hrs 1½ _____

DATE _____ 3 / 28 / 03 _____

_Rosanna Coleman_
EMPLOYEE'S SIGNATURE

_Rosanna Mayo Coleman_
UNION REPRESENTATIVE

SOCIAL SECURITY NUMBER

White Copy - Employer       Canary Copy - Member       Pink Copy - Union       Blue Copy - Legal

# American Sugar Refining, Inc.

**MEMORANDUM**

November 17, 2003

To:        Rosanna Mayo-Coleman

Cc:        K. Merritt
            D. Mc Farland
            F. Gaffney

From:      Bob Jandovitz

Subject:   Grievance # 04-04

Upon reviewing your grievance the company finds the following:

The company has a long practice of trying to run/operate the refinery as efficiently as possible. This along with other management rights as mentioned in Article 3 Section A gives us the right to schedule as we did during the incident you cited in your grievance.

The consumer relief operator was brought in because the Sig and Hesser machines were operating and the position was required for breaks, garbage and relief, as in normal coverage. You were not required, since, do to the limited operation we did not need to provide breaks for the palletizer operator. Rather the palletizer could be shut down for breaks while the limited product queued up until the break was over. If an additional line was running such as the industrial brown or powder than you probably would have been called in.

Considering the limited operation, past practice and management rights the supervisors covered the shift correctly.

Considering the above your grievance is denied.



1 Federal Street, Yonkers, NY 10702
Tel: (914) 963-2400   Fax: (914) 963-1030

# GRIEVANCE FORM

## LOCAL 1814, ILA

343 Court Street, Brooklyn, N.Y. 11231

MJ
04-04
11/17/08

DIVISION _3_

MEMBER _Rosanna Mayo-Coleman_
(Please Print)

EMPLOYER _American Sugars_
(Please Print)

DEPARTMENT _Pack_     SHIFT _12-8am_

JOB _Tech 2_     SENIORITY _16 years_

FOREMAN _Dennis McFarlan_

SHOP STEWARD _Alex Zanco_

NATURE OF GRIEVANCE _I was told stay Home on Sunday while the Palletizer Ran, I should have Been In to give Palletizer oper his Break Con Relief Came in to do Relief in 5th Room. why did ConRelief worked and not Shutedown For Breaks in the Room_

AGREEMENT CLAUSE VIOLATED _Article 6 Section H_

SETTLEMENT REQUESTED _I would like to get paid for Sunday 8 Hour O/T_

DATE _11 | 12 | 03_

_Rosanna Mayo Cole_     _117 | 54 | 5003_
EMPLOYEE'S SIGNATURE     SOCIAL SECURITY NUMBER

_Fred Gaffney_
UNION REPRESENTATIVE

White Copy - Employer      Canary Copy - Member      Pink Copy - Union      Blue Copy - Legal

# American Sugar Refining, Inc.

**MEMORANDUM**

March 4, 2004

To:       Rosanna Mayo

Cc:       K. Merritt
          D. McFarland
          F. Gaffney

From:     Debbie Troche

Subject:  Grievance #08-04

Upon reviewing your grievance the company finds the following:

You should have continued to work the hours in question. Payroll will be
contacted to pay you the settlement requested of 4 hours at time & one half.

*Please process payment
for the above.*

*Debbie Troche*
*3/5/04*

**Domino.**
**SUGAR**

*1 Federal Street, Yonkers, NY 10702*
*Tel: (914) 963-2400   Fax: (914) 963-1030*

# GRIEVANCE FORM

## LOCAL 1814, ILA

### 343 Court Street, Brooklyn, N.Y. 11231

8-04
MJ
1/13/04

DIVISION _3_

MEMBER _Rosanna Mayo_
(Please Print)

EMPLOYER _American Sugars_
(Please Print)

DEPARTMENT _Pack_          SHIFT _12 AM 12 PM_

JOB _Tech 2_          SENIORITY _15 1/2 yrs_

FOREMAN _Singh_

SHOP STEWARD _Alex_

NATURE OF GRIEVANCE _I was scheduled to work 12 AM to 1:_
_To Cover Vacation The open Shift was Days_
_on 12/24/03 I was Sent home at 8 AM. Singh Said_
_Claude Lewis would Come Back Short Swing to_
_Cover My Job I Told him he was wrong & I Should S_
_he told me I had to go Home_

AGREEMENT CLAUSE VIOLATED _Article 2 Section 2 Article 6_

SETTLEMENT REQUESTED _I would Like to get Paid 4 Hours_
_Time + half._

DATE _12 29 03_

_Rosanna Mayo_
EMPLOYEE'S SIGNATURE

_Rosanna Mayo-Coleman_
UNION REPRESENTATIVE

SOCIAL SECURITY NUMBER

White Copy - Employer       Canary Copy - Member       Pink Copy - Union       Blue Copy - Legal

# American Sugar Refining, Inc.

**MEMORANDUM**

July 16, 2004

To:        Rosanna Mayo

Cc:        D. Brainard
           B. Jandovitz
           K. Merritt
           D. McFarland
           F. Gaffney

From:      Debbie Troche

Subject:   Grievance #24-04

Upon reviewing your grievance the company finds the following:

One of the responsibilities of a GMP employee is to clean the machines when they are running.  For example, it has been agreed by both the company and the union that the GMP employees would clean the pulverizing station if it runs on a Saturday but if it was down on Sunday, the operator would do the cleaning therefore, the GMP employees are not crossing over into the Engineering department when they are cleaning machines.  The alley ways are also part of the GMP responsibilities and as such when they need to be cleaned the GMP employees are assigned.

Considering the above your grievance is denied.

**Domino**
SUGAR

1 Federal Street, Yonkers, NY 10702
Tel: (914) 963-2400  Fax: (914) 963-1030

# American Sugar Refining, Inc.

Memorandum

November 3, 2004

To:        Rosanna Mayo

Cc:        D. Brainard
           B. Jandovitz
           K. Merritt
           D. McFarland
           F. Gaffney

From:      Debbie Troche

Subject:   Grievance 35-04

Upon reviewing your grievance the company finds the following:

Each week, after the schedule is posted, the operators have always been allowed to switch shifts to cover any existing vacancies.  The two employees in the rotation decided to cover the shift on an 8 to 8 schedule. A Pack Tech 2 was asked to come in at 8:00 p.m. (4 hours early) to cover the shift and refused therefore the PT 1 covered the shift from 8:00 p.m. to 8:00 a.m.

Considering the above your grievance is denied.

American Sugar Refining, Inc.

MEMORANDUM

August 10, 2005

To:       M. Langone
          M. Wilson
          C. Lewis
          M. Cohen
          R. Coleman
          G. White

Cc:       D. Brainard
          R. Jandovitz
          K. Merritt
          D. MacFarland
          F. Gaffney
          R. Mayo

From:     Debbie Lafaro

Subject:  Grievance # 06-05

Upon reviewing your grievance the company finds the following:

The staffing requirements for Packaging are 12 Packaging Laborers, 28 PT 1's and 3 Electrical Technicians.  The Packaging department currently has 6 openings for qualified PT 1's and 2 PT 1 positions remain open due to workers' comp and a family emergency.  Therefore, the department is operating with 8 less PT 1's.  We have been in touch with the union throughout the return to work process.  They are well aware of the situation in packaging and the fact that we can and will continue to utilize supervisors to perform tasks as long as employees work 40 hours in a week and while we are shorthanded.

Considering the above your grievance is denied.

## GRIEVANCE FORM

### LOCAL 1814, ILA
343 Court Street, Brooklyn, N.Y. 11231



DIVISION ___III___

MEMBER ~~Leslie Mullins~~ Maxine Langone Mitch Wilson, Claude Lewis Mike Cohen Rosanna Coleman Godfrey White
(Please Print)

EMPLOYER American Sugars Inc
(Please Print)

DEPARTMENT PacKaging          SHIFT ALL

JOB Tech II          SENIORITY _____

FOREMAN Management

SHOP STEWARD Fred Gaffney

NATURE OF GRIEVANCE The Tech II position was Eliminated then why is The Foreman Rubin Doing the Breaks, that Job was a union Jurisdiction Job The Foreman is working 12 Hours a Day doing union work. when members are still out of work.

AGREEMENT CLAUSE VIOLATED Article 13
Aritcle 2 sec 7

SETTLEMENT REQUESTED Union wants These Jobs Restored or some of The Jobs Restored with Back Pay They Took a pay cut Taking Lesser Paying Job and also use The Recall List

DATE Aug 13  1 05

EMPLOYEE'S SIGNATURE          SOCIAL SECURITY NUMBER
Fred Gaffney

UNION REPRESENTATIVE

White Copy - Employer     Canary Copy - Member     Pink Copy - Union     Blue Copy - Legal

American Sugar Refining, Inc.

**MEMORANDUM**

September 20, 2005

To:        Rosanna Mayo-Coleman

Cc:        D. Brainard
           B. Jandovitz
           K. Merritt
           C. Ortiz
           J. Cordova
           R. Hernandez
           F. Gaffney

From:      Debbie Lafaro

Subject:   Grievance #13-05

Upon reviewing your grievance the Company finds the following:

The summer temps began working in early June to assist with the project of relocating the inventory of the packaging storeroom to the main storeroom. This project consisted of physically moving parts from one area to another, tearing down old shelves and installing new ones, counting the items that were brought over and labeling. During their time here the temps never performed worked normally performed by union employees nor, with the exception of one Saturday which you also worked, never worked any overtime. Please be advised that you did work and got paid for 22.25 hours of overtime for the week of 8/15/05.

Considering the above your grievance is denied.

# GRIEVANCE FORM

## LOCAL 1814, ILA
343 Court Street, Brooklyn, N.Y. 11231

13-05
DB 9/15/05

DIVISION _3_

MEMBER _ROSANNA COLEMAN_
(Please Print)

EMPLOYER _American Sugars_
(Please Print)

DEPARTMENT _Eng._          SHIFT _7:00 - 3:30_

JOB _Store Room_          SENIORITY _656_

FOREMAN _Carlos Ortiz_

SHOP STEWARD _____

NATURE OF GRIEVANCE _I was To Stay over To Do Inventory_
_IN The Store Room. I was Sent home at 5:00_
_I was Told that the Inventory was for_
_Someone Else and I Should have the Job Before_
_Someone out Side of the Store Room.         8/20/05_
_the College Student + Temp Stay To Do my work   8/19/0_

AGREEMENT CLAUSE VIOLATED _Article 6_

SETTLEMENT REQUESTED _I want to get Paid For the_
_week of 8/19/05 and 8/25/05_
_8/11/05 get Paid for 8/11 + 8/12 the_
_Week of 8/15/05_

DATE _8/26/05_

_Rosanna Coleman_
EMPLOYEE'S SIGNATURE

SOCIAL SECURITY NUMBER

_Fred Goffrey._
UNION REPRESENTATIVE

White Copy - Employer     Canary Copy - Member     Pink Copy - Union     Blue Copy - Legal

American Sugar Refining, Inc.

**MEMORANDUM**

July 12, 2006

To:       Rosanna Mayo Coleman

Cc:       D. Brainard
          B. Jandovitz
          K. Merritt
          J. Cordova
          P. Haenchen
          F. Gaffney

From:     Debbie Lafaro

Subject:  Grievance #26-05

Upon reviewing your grievance the Company finds the following:

As per Article 13 of the CBA, "…..these employees (supervisors) shall not perform work that would deprive an active employee of the opportunity to work that individual's *regularly scheduled work hours*."

Your settlement request to get paid is denied.  As per your request to have the hours made up, since May 1st you have worked overtime the following weeks:

| Week Ending | # of Overtime hours |
|-------------|---------------------|
| May 7, 2006 | 12.5 |
| May 21, 2006 | 21.5 |
| June 11, 2006 | 8 |
| June 18, 2006 | 16 |
| June 25, 2006 | 8 |
| July 6, 2006 | 7 |

Therefore, the make up assignment has been provided.

GRIEVANCE FORM

LOCAL 1814, ILA
70 20th STREET
BROOKLYN, NEW YORK 11232
(718) 499-9600



DIVISION _____

MEMBER  ROSANNA COLEMAN
                                                (Please Print)

EMPLOYER  American Sugars
                                                (Please Print)

DEPARTMENT  Store Room                    SHIFT _____

JOB  Oper.                                           SENIORITY _____

FOREMAN  CARLOS Ortiz

SHOP STEWARD  Chris Moczyolowski

NATURE OF GRIEVANCE  The week of May First Joe + CARLOS
cleared + Put away Motors from Building
25 A Which we the oper did not have
40 Hours in yet therefore we should have
done the work. They worked 12 Hours

AGREEMENT CLAUSE VIOLATED  Article 13

SETTLEMENT REQUESTED  I want to get Paid for It or the
hour's made up to me

DATE  5 / 6 / 06

_Rosanna Col_
MEMBER'S SIGNATURE                                    SOCIAL SECURITY NUMBER  ___/___/___

_Rosanna Col_
UNION REPRESENTATIVE

White Copy - Employer              Canary Copy - Member              Pink Copy - Unior