```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ROSANNA MAYO-COLEMAN,

                        Plaintiff,

        -against-                                              REPORT AND RECOMMENDATION

AMERICAN SUGAR HOLDING, INC. and                               14-CV-0079 (PAC)(KNF)
ROBERT JANDOVITZ,

                        Defendants.
------------------------------------------------------------X
```

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/2/15
```

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE PAUL A CROTTY, UNITED STATES DISTRICT JUDGE

## INTRODUCTION

Plaintiff Rosanna Mayo-Coleman ("Mayo-Coleman") seeks redress, through this action, for alleged violations of Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act and 42 U.S.C. § 1981. In addition, Mayo-Coleman asserts violations of New York State and New York City antidiscrimination laws. Before the Court is the defendants' motion for an Order: (1) dismissing portions of the plaintiff's amended complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure; (2) striking allegations from the amended complaint, pursuant to Rule 12(f) of the Federal Rules of Civil Procedure; and (3) requiring the plaintiff to provide a more definite statement of her claims, pursuant to Rule 12(e) of the Federal Rules of Civil Procedure. The plaintiff opposes the motion.

## BACKGROUND

Mayo-Coleman has been employed by defendant American Sugar Holding, Inc. ("ASH") since 1988. She maintains that, commencing in or about the Summer of 2008, Tyrone Smith ("Smith"), ASH's "MRP comptroller" and Mayo-Coleman's supervisor, "sexually harass[ed] and sexually pursue[d]" her. According to Mayo-Coleman, when she rebuffed his advances and entreaties, Smith retaliated against her by, inter alia: 1) denying her opportunities to garner Firewatch and other overtime pay, to which she was entitled based on seniority;[1] 2) assigning her cleaning responsibilities in excess of those required of

---

[1] Mayo-Coleman also alleges that, in addition to Smith's alleged misconduct, ASH refused to assign her overtime work as a "Mechanic's Assistant," a position Mayo-Coleman contends "was basically the same role that [she] performed" in her assigned job, Tech 2. According to Mayo-Coleman ASH refused to assign her Mechanic's Assistant work because the job required "too much heavy work" and she would "hurt herself" if she performed it.

Mayo-Coleman's male co-workers; and 3) failing to submit documentation properly, so that Mayo-Coleman could be paid fully and timely. Mayo-Coleman contends that she reported Smith's mistreatment of her to other supervisors, an ASH manager, and ASH's Human Resources personnel, including defendant Robert Jandovitz ("Jandovitz"), but the mistreatment by Smith continued. According to Mayo-Coleman, the atmosphere at her workplace became so unpalatable that, "on June 6, 2012, she suffered a panic attack . . . started crying and . . . had to leave to go to the Doctor [sic]." That same day, Mayo-Coleman's physician told her "that she was suffering from extreme depression from her work related [sic] issues and that she could not return to work until the doctor cleared her to do so. She was put on medication and ordered to see a psychiatrist. She was cleared to return to work on August 13, 2012."

      Mayo-Coleman contends that "[b]y mid-September . . . Smith began relentlessly harassing Plaintiff again and regularly screamed at and harassed her through September and October. Defendants allowed plaintiff to continue to be harassed and discriminated against." As a result, Mayo-Coleman "decided to file a Complaint with the EEOC [United States Equal Employment Opportunity Commission]. She alleged gender discrimination, sexual harassment, and retaliation." Mayo-Coleman recalls that, after she complained to the EEOC, "[w]ord quickly spread throughout Defendants' factory that Plaintiff had filed a Complaint against Defendant American Sugar and many of her co-workers stopped speaking to her." Furthermore, "Smith began treating Plaintiff even more hostilely." Mayo-Coleman maintains that she met with ASH Human Resources representatives, including Jandovitz, and reported "that she could not bear to work with . . . Smith any longer." Mayo-Coleman recalls that Jandovitz asked her whether she wanted "to transfer out of the department . . . and suggested that she go to ASH's Sanitation [department]." According to Mayo-Coleman, the suggestion that she transfer to a position in which she would perform sanitation work "shocked" her, because it would mean that she would be moving "to a less desirable position because . . . Smith was abusing her." Mayo-Coleman advised Jandovitz that transferring to a lower paying sanitation job was not something she could afford to do. Mayo-Coleman recalls that "Jandovitz replied, 'well, if you do it for two weeks the issue with Supervisor Smith will be resolved.'" Therefore, Mayo-Coleman agreed to perform sanitation work for two weeks.

      While Mayo-Coleman was assigned to perform sanitation duties, "Hurricane Sandy happened and Plaintiff was told that she could not work while Supervisor Smith and all of her co-workers received

copious amounts of overtime.  HR [Human Resources] refused to allow Plaintiff to come in and she received no pay." Mayo-Coleman contends that "[o]n or about November 13, 2013, almost a year after she had finally filed a complaint with the EEOC, Plaintiff learned that Supervisor Smith would no longer be working with the Company."

The instant action was commenced in January 2014, after the EEOC mailed Mayo-Coleman a right-to-sue notice on November 27, 2013.  After the action was commenced, in or about March 2014, ASH "finally offered Firewatch overtime" work to Mayo-Coleman, after continuously barring her from performing that work because, Mayo-Coleman alleges, it did not want her to hurt herself.  According to Mayo-Coleman, "despite anger and hostility from the male supervisor, [prompted by Mayo-Coleman's assignment to perform Firewatch duties on an overtime basis] she performed the job well . . . [and] has not been continuously denied Firewatch Overtime [sic] since April 19, 2014."

Defendants' Motion

Failure to Exhaust Administrative Remedies

The defendants contend that, preparatory to filing a Title VII claim with the court, a plaintiff must exhaust available administrative remedies by filing a timely complaint with an administrative antidiscrimination agency.  The defendants maintain that the allegations in the plaintiff's amended complaint, that she was the victim of gender, race, color and age discrimination, differ from the charge of discrimination Mayo-Coleman presented to the EEOC.  They assert that, when Mayo-Coleman submitted her charge of discrimination to the EEOC, she alleged sex discrimination and retaliation only.  According to the defendants, as a consequence, Mayo-Coleman never afforded the EEOC an opportunity to investigate the race, color and age discrimination claims she makes via the amended complaint. Therefore, allegations of discrimination premised on those three categories of discrimination may not be presented to this court for adjudication because they are unexhausted perforce of Mayo-Coleman's failure to include them in the charge of discrimination she filed with the EEOC.

Moreover, the defendants contend, inasmuch as race, color, and age discrimination are not reasonably related to the sex discrimination and retaliation charges the plaintiff made in the administrative forum, the EEOC investigation into the specific charges of discrimination the plaintiff presented to it would not have warranted the EEOC in broadening its investigation to inquire into issues of race, color and age discrimination.  Thus, the defendants maintain, since Mayo-Coleman failed to present race, color and age discrimination charges to the EEOC, those unexhausted discrimination claims should be dismissed by the court, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to

state a claim upon which relief can be granted. In addition, the defendants maintain, "since the Plaintiff's EEOC Charge lacks any reference to discrimination or retaliation on the basis of race or age . . . these claims should be dismissed with prejudice, because they were not filed with the EEOC, within the mandatory 300-day time period."

<u>Immaterial, Impertinent or Scandalous Allegations</u>

The defendants contend that the plaintiff's amended complaint is replete with "immaterial, impertinent, and/or scandalous allegations or categories of allegations." The defendants maintain that the "Plaintiff makes several general assertions about the treatment of minorities by Defendants. She states that, for example: 'it was quickly clear to Plaintiff that Defendant American Sugar was a hostile place for minorities when she noticed a noose hanging on the wall at the beginning of her employment' . . . Defendant ASR [American Sugar Refining, Inc.] 'advised the African American and female Tech 2s that they were not eligible for the promotion [to Tech 1]' . . . . [T]hese allegations are scandalous and not material to Plaintiff's claims of sex discrimination and retaliation." According to the defendants, several paragraphs in the amended complaint "contain references to either race or age claims, which should be dismissed entirely, with prejudice, or alternatively, stricken, since they were not raised before the EEOC." The defendants assert that the amended complaint "includes . . . irrelevant, and unnecessary allegations relating to Plaintiff's early employment with ASR 26 years ago." The defendants also note that the plaintiff's amended complaint contains allegations relating "to . . . acts that occurred from 2002 through the end of a strike in 2006, which are far too remote in time to be actionable." According to the defendants, "[t]hese irrelevant assertions should be stricken from the Complaint." Similarly, the defendants contend that the plaintiff's reference "to a 1999 EEOC complaint she filed against ASR . . . [is not] relevant, . . . is prejudicial to Defendants, and immaterial to the current matter." As such, it, like the other allegations claimed to be impertinent, immaterial or scandalous, should be stricken from the amended complaint, pursuant to Fed. R. Civ. P. 12(f).

<u>More Definite Statement</u>

The defendants assert that, "[w]hile the Amended Complaint includes unnecessary detail in many respects, in other respects it is not detailed enough, making it impossible for Defendants to respond to many of the allegations." In particular, the defendants maintain that the plaintiff should provide "specific dates of alleged discriminatory conduct." For example, the defendants contend that when Mayo-Coleman alleges that her supervisor did not submit material to enable her to receive overtime pay and that the defendants' payroll department advised her that her supervisor "seemed to be withholding her

pay on purpose," Mayo-Coleman "does not state when [these events] happened." In addition, the defendants contend that the "Plaintiff begins paragraphs of her Amended Complaint by stating 'soon,' 'thereafter' and 'later that day' without any reference to even the general time period she is referring to." According to the defendants, the "Plaintiff must also be more specific regarding who made the statements to her." For example, the defendants contend that Mayo-Coleman "alleges that she was . . . told that she could not perform Mechanics overtime because the job required 'too much heavy work' and that she 'would hurt herself.'" However, according to the defendants, Mayo-Coleman "failed to allege who made the statements to her and when they were made." The defendants allege that they will not be able to frame a response to the amended complaint without more information, and Mayo-Coleman should be directed to provide more detailed information to them, pursuant to Fed. R. Civ. P. 12(e).

Mayo-Coleman's Response to the Motion

        In response to the defendants' assertion that the race and age discrimination claims are unexhausted, Mayo-Coleman contends that she "inadvertently included the words race and age in [her] federal cause of action when [she] meant to limit the Federal Claim [sic] to sex and gender discrimination." Notwithstanding her inadvertent conduct, Mayo-Coleman maintains that, "in any case, Plaintiff's age and race based [sic] employment discrimination claims survive as this Court has pendent jurisdiction . . . over state and local claims if the issues arise from the same factual situation." According to Mayo-Coleman, "[t]he fact that she was more focused on the gender and sex discrimination abuse (which interfered with her ability to earn income on a weekly basis) . . . does not mean she does not have other discrimination claims."

        With respect to the defendants' request that Mayo-Coleman be directed to provide a more definite statement of her claims, because "it is impossible for Defendants to respond to many of the allegations," Mayo-Coleman contends that "the Complaint is extremely thorough and very clearly guides the reader chronologically through Plaintiff's long, discrimination filled [sic] career at Defendants [sic]. The Complaint, which was painstakingly drafted over many hours with Counsel and the Plaintiff, speaks for itself, and it speaks very clearly."

        Mayo-Coleman did not respond to the defendants' request "that the court strike . . . immaterial, impertinent and/or scandalous allegations or categories of allegations from the Amended Complaint."

Defendants' Reply

        In reply, the defendants contend that Mayo-Coleman's concession "that her federal race and age-based claims under Title VII were not brought before the EEOC" warrants the court in dismissing those

claims from the amended complaint. However, the defendants maintain that Mayo-Coleman misapprehends the impact of such a dismissal upon the analogous state and municipal race and age discrimination claims she has asserted. This is so, according to the defendants, because Mayo-Coleman contends that the state and municipal discrimination claims "automatically survive [the motion to dismiss] because this Court has pendant jurisdiction over those claims." The defendants assert that 28 U.S.C. § 1367 gives the court the discretion to determine whether to exercise supplemental jurisdiction over state and municipal-law claims that are related to claims in an action over which district courts have original jurisdiction, such as Mayo-Coleman's federal sex discrimination claim. The defendants contend that, given Mayo-Coleman's concession that the federal age and race discrimination claims she asserted inadvertently, over which the court would have had original jurisdiction, should be dismissed, the court may decline to exercise supplemental jurisdiction over the analogous state and municipal race and age-based discrimination claims made in this action. Thus, the defendants assert, Mayo-Coleman is wrong when she contends that those state and municipal-law claims survive their motion to dismiss automatically, once the corresponding federal claims are dismissed.

With respect to the defendants' request that the court strike immaterial, impertinent and scandalous material from the amended complaint and, further, that it direct Mayo-Coleman to provide a more definite statement of her claims, the defendants note that the "Plaintiff's Memo [sic] does not address any of [the arguments the defendants made in support of these requests,] other than to offer her conclusory, self-serving contentions that the Amended Complaint is 'extremely thorough' and 'very clearly' sets forth Plaintiff's allegations." The defendants maintain that Mayo-Coleman's: (1) failure to respond to their arguments; (2) failure to make citation to "any cases or authorities that support her position that the Amended Complaint, as it is drafted, is adequate"; and (3) concession that the federal "race and age-based discrimination claims should be dismissed," militate in favor of the court granting the defendants' motion to strike race and age-based allegations from the amended complaint and their motion for a more definite statement: (a) specifying the dates when alleged discriminatory events occurred, and (b) identifying the speakers referenced in the amended complaint.

## DISCUSSION

Rule 12(b)(6) Motion

"[A] party may assert the following [defense] by motion . . . failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "A motion asserting [failure to state a claim] must be made before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b). To survive a motion to

dismiss, made pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009)(quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949.  "Conclusory allegations that the defendant violated the standards of law do not satisfy the need for plausible factual allegations." Kiobel v. Royal Dutch Petroleum Corp., 621 F.3d 111, 191 (2d Cir. 2010)(citing Twombly, 550 U.S. at 555, 127 S. Ct. at 1965).

When a motion is made, pursuant to Rule 12(b)(6), all facts alleged in the complaint are assumed to be true and all reasonable inferences are drawn in the plaintiff's favor.  See Interpharm, Inc. v. Wells Fargo Bank, Nat'l Assoc., 655 F.3d 136, 141 (2d Cir. 2011).  When assessing a Rule 12(b)(6) motion, a court's "consideration is limited to facts stated on the face of the complaint or incorporated . . . by reference, and to matters [about] which judicial notice may be taken," Allen v. WestPoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991), as well as "documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit." Rothman v. Gregor, 220 F.3d 81, 88-89 (2d Cir. 2000)(internal citation omitted).

The defendants moved for a partial dismissal of the amended complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, contending that Mayo-Coleman failed to state a claim upon which relief can be granted because she did not present claims of race and age discrimination to the EEOC and, therefore, did not exhaust her administrative remedies with respect to those allegations of discrimination.  Exhaustion of "administrative remedies is a pre-condition to bringing a Title VII claim in federal court." Francis v. City of New York, 235 F.3d 763, 768 (2d Cir. 2000).  The "exhaustion of administrative remedies through the EEOC stands as an essential element of Title VII's statutory scheme, and one with which defendants are entitled to insist that plaintiffs comply." Id. (internal quotation marks and citation omitted).  Discrimination claims that have not been exhausted administratively are vulnerable to a Fed. R. Civ. P.12(b)(6) motion.  See Cetina v. Longworth, 583 Fed. Appx. 1, 3 (2d Cir. 2014) (citing Williams v. New York City Hous. Auth., 458 F.3d 67, 70 (2d Cir. 2006)(per curiam)).

In the charge of discrimination Mayo-Coleman lodged with the EEOC, she checked a box indicating that the discrimination about which she was filing her charge was sex-based.  The narrative recited in the plaintiff's charge of discrimination makes clear that she was alleging sex discrimination and, arguably, retaliation.  Nowhere in the charge of discrimination that Mayo-Coleman presented to the

EEOC is there an allegation of race-based or age-based discrimination. Mayo-Coleman's failure to present her race and age-based discrimination claims to the EEOC for investigation and adjudication would typically bar her from bringing suit, in a federal court, based on those allegations of discrimination. However, "claims that were not asserted before the EEOC may be pursued in a subsequent federal court action if they are reasonably related to those that were filed with the agency." Shah v. New York State Dep't of Civil Service, 168 F.3d 610, 614 (2d Cir. 1999)(internal quotation marks omitted). "A claim is considered reasonably related if the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made." Fitzgerald v. Henderson, 251 F.3d 345, 359-60 (2d Cir. 2001)(internal quotation marks omitted). "In determining whether claims are reasonably related, the focus should be on the factual allegations made in the [EEOC] charge itself, describing the discriminatory conduct about which a plaintiff is grieving." Deravin v. Kerick, 335 F.3d 195, 201 (2d Cir. 2003)(alteration in original, internal quotation marks omitted).

In the circumstance of this case, where the plaintiff checked a box identifying sex discrimination as the basis for her EEOC charge of discrimination and provided a narrative with her charge that speaks solely of sex discrimination and, arguably, retaliation, no basis exists for concluding that the EEOC investigation of Mayo-Coleman's charge would encompass an exploration of race and age-based discrimination. Consequently, Mayo-Coleman's race and age-based claims of discrimination are unexhausted and cannot be asserted in this action. In any event, Mayo-Coleman acknowledges that the reference in her amended complaint to age and race discrimination, in the context of her federal claim of discrimination, was inadvertent. On the strength of that acknowledgment alone, it is clear that no plausible federal claim for race and age-based discrimination, upon which relief can be granted, has been asserted by the plaintiff. Mayo-Coleman's acknowledgment provides additional support for granting this branch of the defendants' motion.

Notwithstanding her "inadvertent" reference to race and age discrimination in the amended complaint, Mayo-Coleman maintains that her state and municipal race and age-based discrimination claims should survive the defendants' Fed. R. Civ. P. 12(b)(6) motion, "as this Court has pendent jurisdiction over said claims . . . [because they] arise from the same factual situation [as her federal sex discrimination claim]."

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution . . . The district

> courts may decline to exercise supplemental jurisdiction . . . if – (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367.

Mayo-Coleman's assertion, that her race and age-based state and municipal discrimination claims survive the defendants' motion to dismiss, because the court has pendent jurisdiction over them, ignores the discretion that 28 U.S.C. § 1367 vests in a district court respecting the exercise of supplemental jurisdiction over claims when "the district court has dismissed all claims over which it has original jurisdiction." Here, the court is warranted in dismissing Mayo-Coleman's federal race and age-based discrimination claims because she failed to exhaust applicable administrative remedies, a prerequisite to presenting those claims to the court for adjudication. The dismissal of those federal claims, that is warranted in this circumstance, allows the court to determine whether to exercise its discretion and adjudicate the discrimination claims Mayo-Coleman has asserted that are premised solely on state and municipal antidiscrimination laws. Expending judicial resources adjudicating state and municipal race and age discrimination claims, when federal race and age discrimination claims are not before the court, does not appear to be an efficient use of the court's limited time and resources.

<u>Rule 12(f) Motion</u>

Rule 12(f) of the Federal Rules of Civil Procedure provides, in pertinent part, that

> [t]he court may strike from a pleading . . . immaterial, impertinent or scandalous matter. The court may act . . . on motion made by a party either before responding to the pleading or . . . within 21 days after being served with a pleading.

"Immaterial 'matter' is that which has no essential or important relationship to the claim for relief or the defenses being pleaded, or a statement of unnecessary particulars in connection with and descriptive of that which is material." *5C Charles Allan Wright & Arthur R. Miller, Fed. Practice & Procedure, Section 1382, at 458, 460 (3rd ed. 2004)*. "'[I]mpertinent' matter consists of statements that do not pertain, and are not necessary, to the issues in question." <u>Id.</u> at 463. Scandalous allegations, for the purpose of Rule 12(f), are those which reflect unnecessarily on a defendant's "moral character or uses

repulsive language or detracts from the dignity of the court." <u>Lynch v. Southampton Animal Shelter Foundation, Inc.</u>, 278 F.R.D. 55, 63 (E.D.N.Y. 2011)(citation omitted). The determination to grant or deny a Fed. R. Civ. P. 12(f) motion to strike is left to the court's discretion. <u>See von Bulow by Auersperg v. von Bulow</u>, 657 F. Supp. 1134, 1146 (S.D.N.Y. 1987). A motion to strike

> on the ground that the matter is impertinent and immaterial . . . will be denied, unless it can be shown that no evidence in support of the allegation would be admissible. The Federal Rules of Civil Procedure have long departed from the era when lawyers were bedeviled by intricate pleading rules and when lawsuits were won or lost on the pleadings alone. Thus, the courts should not tamper with the pleadings unless there is a strong reason for doing so. Evidentiary questions . . . should especially be avoided at such a preliminary stage of the proceeding. Usually, the questions of relevancy and admissibility in general require the context of an ongoing and unfolding trial in which to be properly decided and ordinarily, neither a district court nor an appellate court should decide to strike a portion of the complaint on the grounds that the material could not possibly be relevant on the sterile field of the pleadings alone.

<u>Lipsky v. Commonwealth United Corp.</u>, 551 F.2d 887, 893 (2d Cir. 1976)(citations omitted).

The defendants maintain that Mayo-Coleman's reference in her amended complaint to: (1) the defendants' treatment of minority employees; (2) race and age-based discrimination; (3) historical information regarding her employment by the defendant stretching back 26 years ago; (4) acts that occurred during the period 2002 through the end of a strike in 2006; and (5) a 1999 EEOC complaint she filed against her employer are immaterial, impertinent and irrelevant to this action and, furthermore, are prejudicial to the defendants. Given that Mayo-Coleman has conceded that she did not wish to assert federal race and age-based discrimination claims in this action, should your Honor determine not to exercise supplemental jurisdiction over the state and municipal race and age discrimination claims Mayo-Coleman has asserted, the allegations regarding race and age discrimination would be immaterial and impertinent and could be stricken from the amended complaint. <u>See</u> *Wright & Arthur R. Miller, Fed. Practice & Procedure, Section 1382, at 458, 460, 463 (3rd ed. 2004)*.

The historical information Mayo-Coleman has included in her amended complaint and the references she has made to: (a) matters pertaining to the period 2002, through the end of a strike in 2006; and (b) a 1999 EEOC complaint appear to be immaterial and irrelevant to the sex discrimination and retaliation claims that are the focus of this action. However, given the restraint with which the Second

Circuit Court of Appeals has directed district courts to approach Fed. R. Civ. P. 12(f) motions to strike, see Lipsky, 551 F.2d at 893, striking the historical and other matters referenced immediately above, based "on the sterile field of the pleadings alone," appears to be inappropriate. Id. Although the defendants allege that Mayo-Coleman's pleadings contain scandalous matter, the Court disagrees, as it finds nothing in the pleadings which: 1) reflects unnecessarily on the defendants' moral character; 2) constitutes repulsive language; or 3) detracts from the dignity of the court. See Lynch, 278 F.R.D. at 63.

Rule 12(e) Motion

Rule 12(e) of the Federal Rules of Civil Procedure provides, in pertinent part, the following:

> A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response. The motion must be made before filing any responsive pleading and must point out the defects complained of and the details desired.

"There is a tension between Rule 12(e) and Fed. R. Civ. P. 8, which requires only a short and plain statement of the claim showing that the pleader is entitled to relief. While motions for more definite pleadings are generally disfavored, the opposing party must be given sufficient notice to frame a responsive pleading." MTV Networks, a Div. of Viacom Int'l Inc. v. Curry, 867 F. Supp. 202, 207-08 (S.D.N.Y. 1994)(internal quotation marks and citation omitted). Thus, a motion for a more definite statement ought to be denied "unless the complaint is so excessively vague and ambiguous as to be unintelligible and as to prejudice the defendant seriously in attempting to answer it." Boothe v. TRW Credit Data, 523 F. Supp. 631, 635 (S.D.N.Y. 1981). Rule 12(e) "is designed to strike at unintelligibility rather than want of detail . . . allegations that are unclear due to a lack of specificity are more appropriately clarified by discovery rather than by an order for a more definite statement." Covington v. City of New York, No. 98 CV 1285, 1999 WL 739910, at *9 (S.D.N.Y. Sept. 22, 1999).

The defendants maintain that the amended complaint lacks specificity with respect to: 1) the dates on which certain alleged discriminatory conduct occurred; and 2) the identity of the speaker(s) to whom Mayo-Coleman attributes various statements that were allegedly made to her that support Mayo-Coleman's sex discrimination and retaliation claims. The defendants do not allege that the amended complaint is unintelligible, only that it lacks specificity regarding dates and the identity of various

declarants whose statements Mayo-Coleman references in the amended complaint. These alleged lapses in specificity are matters that "are more appropriately clarified by discovery rather than by an order for a more definite statement." Covington, 1999 WL 739910, at *9. Therefore, granting this branch of the defendants' motion is not warranted.

## RECOMMENDATION

For the reasons set forth above, I recommend that defendants' motion for relief, pursuant to Fed. R. Civ. P. 12(b)(6), 12(e) and 12(f), Docket Entry No. 53, be granted, in part, and denied, in part.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Paul A. Crotty, 500 Pearl Street, Room 735, New York, New York, 10007, and to the chambers of the undersigned, 40 Centre Street, Room 425, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Crotty. **Failure to file objections within fourteen (14) days will result in a waiver of objections and will preclude appellate review.** See Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); Cephas v. Nash, 328 F.3d 98, 107 (2d Cir. 2003).

Dated: New York, New York
March 2, 2015

Respectfully submitted,

_Kevin Nathaniel Fox_
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE