UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ROSANNA MAYO-COLEMAN,              :

                             Plaintiff,      :     Civil Action No. 14-cv-0079 (PAC)

                                      :

                - v. -           :

                                      :

AMERICAN SUGARS HOLDING, INC., AND BOB :
JANDOVITZ

                                      :

                                      :

                        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT
## OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**EPSTEIN BECKER & GREEN, P.C.**
Attorneys for Defendants
One Landmark Square, Suite 1800
Stamford, CT 06901
Telephone: (203) 348-3737
Fascimile:  (203) 326-7580

FIRM:40269551v1

# TABLE OF CONTENTS

**PRELIMINARY STATEMENT** ...................................................................................... 6

**STATEMENT OF MATERIAL UNDISPUTED FACTS** ..................................................... 9

A.   Plaintiff's Employment with American Sugar ............................................ 9

B.   Plaintiff's Long History of Asserting Unfounded Complaints and Grievances ................. 10

C.   Plaintiff's Long History of Asserting Unfounded Complaints and Grievances ................. 11

D.   Plaintiff's August 6, 2012 Complaint Regarding Sexual Harassment ................... 12

E.   The Company's Investigation of Plaintiff's Claims ............................................ 14

F.   Plaintiff's 2012 EEOC Charge .............................................................. 16

G.   Plaintiff's Federal Court Action ............................................................ 16

**ARGUMENT** ............................................................................................ 17

Point I: Standards Applicable to Defendants' Summary Judgment Motion ................................ 17

Point II: The Claims Against Robert Jandovitz Must Be Dismissed ........................................ 17

Point III: Plaintiff Cannot Make Out a Discrimination Claim Based Upon Sex ......................... 20

Point IV: Plaintiff Fails to Establish a Hostile Work Environment ...................................... 25

Point V: Plaintiff Cannot Establish That She was Subjected to Retaliation ............................... 28

Point VI: The Alleged Misconduct Cannot Be Imputed to Defendants ..................................... 29

**CONCLUSION** ......................................................................................... 30

FIRM:40269551v1

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aiello v. Stamford Hosp.*,
  2011 U.S. Dist. LEXIS 87121 (D. Conn. Aug. 08, 2011), aff'd, 487 Fed.
  Appx. 677 (2d Cir. Nov. 8, 2012) ............................................................................22

*Augustin v. The Yale Club of N.Y. City*,
  274 Fed. App'x 76 (2d Cir. 2008) ....................................................................26, 27

*Baskerville v. Culligan Int'l Co.*,
  50 F.3d 428 (7th Cir. 1995) ......................................................................................27

*Brennan v. Metro. Opera Assoc., Inc.*,
  192 F.3d 310 (2d Cir. 1999) .....................................................................................27

*Brown v. Orange & Rockland Utils., Inc.*,
  594 F. Supp. 2d 382 (S.D.N.Y. 2009) ......................................................................29

*Burlington Northern v. White*,
  548 U.S. 53 (2006) ...................................................................................................26

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ..................................................................................................17

*Cunningham v. N.Y. State DOL*,
  326 Fed. Appx. 617 (2d Cir. 2009) ..........................................................................25

*Dawson v. County of Westchester*,
  373 F.3d 265 (2d Cir. 2004) .....................................................................................17

*Dayes v. Pace*,
  2 Fed. Appx. 201 ......................................................................................................26

*Faragher v. City of Boca Raton*,
  524 U.S. 775 (1998) ..................................................................................................26

*Hayle v. Nassau Health Care Corp.*,
  2013 U.S. Dist. LEXIS 169791 (E.D.N.Y. December 2, 2013) ...............................24

*Hollander v. American Cyanamid Co.*,
  895 F.2d 80 (2d Cir. 1990) .......................................................................................28

3

*Knight v. U.S. Fire Ins. Co.,* 804
    F.2d 9, 12 (2d Cir. 1986). No ............................................................................21

*Lee v. N.Y. State Dep't. of Health,*
    2001 U.S. Dist. LEXIS 11287 (S.D.N.Y. March 26, 2001) ..............................24, 25

*McDonnell Douglas Corp v. Green.*
    411 U.S. 792. 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973)............................................20

*Monica v. New York City Off-Track Betting Corp.,*
    1995 U.S. Dist. LEXIS 3350 (S.D.N.Y. 1995)........................................................25

*Patane v. Clark,*
    508 F.3d 106 (2d Cir. 2007)...................................................................................26

*Perry v. Ethan Allen, Inc.,*
    115 F.3d 143 (2d Cir. 1997)...................................................................................29

*Petrosino v. Bell Atl.,*
    385 F.3d 210 (2d Cir. 2004)...................................................................................29

*Ramsey v. New York City Health & Hospitals Corp.,*
    2000 U.S. Dist. LEXIS 7510 (S.D.N.Y. June 2, 2000)...........................................22

*Salmon v. Pliant Corp.,*
    965 F. Supp. 2d 302 (W.D.N.Y. 2013) ..................................................................29

*Smalls v. Allstate,*
    396 F. Supp. 2d 364 (S.D.N.Y. Oct. 10, 2005) ...............................................20, 25

*Song v. Ives Lab., Inc.,*
    957 F.2d 1041 (2d Cir. 1992)...........................................................................20, 26

*Spinelli v. City of New York,*
    2014 U.S. Dist. LEXIS 139006 (S.D.N.Y. September 24, 2014)...........................18

*Tomka v. Seiler Corp.*
    66 F.3d 1295 (2d Cir. 1995).............................................................................18, 28

*Trinidad v. N.Y.C. Dep't of Corr.,*
    423 F. Supp. 2d 151 (S.D.N.Y. 2006)....................................................................27

*Williams v. Donnelley Corp.*
    368 F.3d 123 (2d Cir. 2004)...................................................................................24

## Statutes

42 U.S.C. § 2000e-3(a) ...................................................................................................28

New York City Human Rights Laws ............................................................................................. 18

**Other Authorities**

Fed. R. Civ. P. 56(a) ................................................................................................................... 17

Rule 56 ......................................................................................................................................... 9

Rule 56 (a)(1) ............................................................................................................................... 9

Rule 56(c) ................................................................................................................................... 17

FIRM:40269551v1

## PRELIMINARY STATEMENT

Defendants American Sugar Holdings, Inc. ("American Sugar") and Robert Jandovitz ("Jandovitz") (collectively, "Defendants") respectfully submit this memorandum of law in support of their Motion for Summary Judgment dismissing in its entirety the Amended Complaint filed by Plaintiff Rosanna Mayo-Coleman ("Plaintiff").

Plaintiff has been continuously employed by American Sugar for the past 26 years and presently works as a Store Room Attendant in American Sugar's Yonkers, New York facility. Plaintiff commenced this action on January 24, 2014 and filed an Amended Complaint on July 30, 2014. The Amended Complaint contains dozens of allegations regarding perceived slights and grievances dating back to 1988 that are wholly irrelevant to her claims in this action. (Faherty Decl., Ex. A, Amended Compl.) After separating the wheat from the chaff, Plaintiff's claims fall into three categories – (1) Plaintiff alleges that she was the victim of gender discrimination because her male co-workers were offered overtime that should have been offered to her first due to her seniority; (2) Plaintiff alleges that from February 2012 through June 2012 she was sexually harassed by her supervisor; and (3) Plaintiff alleges that she was subjected to retaliatory treatment after she complained about her overtime and hostile work environment.

The parties have completed discovery and the undisputed facts of this case confirm that Plaintiff's claims against American Sugar fail as a matter of law. With regard to Plaintiff's claim that she was deprived of overtime opportunities due to her gender, Plaintiff admitted at her deposition that the underlying premise of her overtime claim is incorrect. Specifically, Plaintiff's Amended Complaint alleges that she was entitled to a right of first refusal for overtime opportunities due to her seniority, but American Sugar disregarded her seniority status and offered overtime opportunities to less senior male employees. (Faherty Decl., Ex. A, Amended Compl. ¶¶ 119-122.)

6

Plaintiff admitted at her deposition that those allegations were incorrect because she was *not* entitled to priority with regard to overtime opportunities based on her seniority. (Faherty Decl., Ex. B, Plaintiff's Dep. at pp. 72-73, 107, 110). Instead, Plaintiff acknowledged that the Collective Bargaining Agreement governing the allocation of overtime for Store Room attendants called for overtime to be shared among the employees. (*Id.*) As a result, the evidence establishes that Plaintiff consistently received *more* than her fair share of overtime. In fact, Plaintiff had the *highest* amount of overtime in 2015 and had the *second highest* amount of overtime for the years 2011, 2012 and 2013. (Troche Aff., ¶. 17; Faherty Decl., Ex. E, Chart summarizing overtime for Plaintiff, Regan Shepherd, Michael Cronin and Clark Simpson).

Discovery has also debunked Plaintiff's claim that she was denied the opportunity to perform a more lucrative form of overtime offered to a male employee – often referred to as "Firewatch Helper" – based on her gender. Plaintiff's Amended Complaint alleges that the Firewatch Helper overtime offered to one of her male co-workers paid an hourly rate that was 25% higher than the overtime opportunities offered to Plaintiff. (Faherty Decl., Ex. A, Amended Compl. ¶¶ 121). Here again, Plaintiff's deposition testimony refutes her claim, as Plaintiff admitted that the Firewatch Helper overtime allegedly offered to a male co-worker paid *exactly the same* time-and-a-half hourly rate as the overtime that Plaintiff performed. (Faherty Decl., Ex. B, Plaintiff's Dep. Tr. pp. 104-105).

Incredibly, Plaintiff candidly admitted at her deposition that *she knew before filing her Amended Complaint* that she was *not* entitled to additional overtime based on seniority and that Firewatch Helper overtime paid *exactly the same rate* as other forms of overtime. (Faherty Decl., Ex. B, Plaintiff's Dep. Tr. pp. 60, 72-73, 105). That did not stop Plaintiff from including those untrue allegations to bolster her flimsy claims of gender discrimination.

7

Plaintiff's second claim against American Sugar alleges that she was subjected to a hostile work environment from February 2012 through June 2012 when her supervisor, Tyrone Smith, subjected her to isolated, sexually offensive conduct. (Faherty Decl., Ex. A, Amended Compl. ¶¶ 52-62, 73.) At her deposition, Plaintiff identified five allegedly inappropriate statements allegedly made by Mr. Smith at various times over that five (5) month period. (Faherty Decl., Ex. B, Plaintiff's Dep. Tr. pp. 182-185). To this day, Plaintiff cannot point to a shred of evidence substantiating her allegations of sexual harassment. Nor did American Sugar find any corroborating evidence when they conducted an internal investigation of Plaintiff's claims. Nevertheless, even assuming, for the purpose of this summary judgment motion only, that Plaintiff's allegations are true, her hostile work environment claim still fails as a matter of law for multiple reasons: (a) Plaintiff suffered no tangible adverse job action; (b) the alleged sexually harassing conduct was not severe, continuous or pervasive enough to constitute a hostile working environment; (c) American Sugar maintained a reasonable, effective policy and procedure designed to address complaints of discrimination or harassment, and (d) Plaintiff unreasonably failed to take advantage of that policy in a timely manner and, when Plaintiff finally did file a complaint, she impeded American Sugar's internal investigation of her claims.

Finally, Plaintiff's retaliation claim fails as a matter of law because there is no evidence that she suffered any adverse employment actions after she submitted a complaint to American Sugar management regarding Smith's alleged misconduct. To the contrary, Plaintiff testified at her deposition that all of the alleged harassment took place in 2012, prior to her submitting her August 9, 2012 letter. (Faherty Decl., Ex. B, Plaintiff's Dep. Tr. pp. 182-188.)

Even if Plaintiff could establish viable claims of gender discrimination, hostile work environment or retaliation, which she cannot, there is no basis to impute liability to American

Sugar because the company maintains a robust policy to protect employees from discriminatory treatment.  (Faherty Decl., Ex. J; Troche Aff., ¶ 2-3.)  Plaintiff did not take advantage of that policy when the alleged misconduct was taking place.  When Plaintiff finally did submit a complaint to American Sugar's Human Resources Department in August 2012, the record shows that American Sugar took Plaintiff's complaint seriously and promptly conducted an internal investigation. (Troche Aff., ¶ 26; Faherty Decl. Ex. F., Copeland Aff., ¶ 4)  American Sugar was ultimately unable to corroborate Plaintiff's allegations because Plaintiff refused to cooperate with the investigation.  (Faherty Decl., Ex. F, Copeland Aff., ¶ 26).

To this day, Plaintiff remains an American Sugar employee in good standing.  At no point during the relevant time period has Plaintiff been demoted or disciplined for any reason. Nor have Plaintiff's wages been reduced or her job duties modified.  Stated simply, Plaintiff has not suffered a material adverse change in her employment.  As a matter of law, Defendants are entitled to summary judgment dismissing Plaintiff's Amended Complaint in its entirety.

## STATEMENT OF MATERIAL UNDISPUTED FACTS

The undisputed facts are set forth in detail in Defendants' Defendants' Rule 56 (a)(1) Statement, dated October 28, 2016 ("Def's Rule 56"); Declaration of Carol J. Faherty, Esq., dated October 28, 2016 ("Faherty Decl."); Affidavit of Robert Jandovitz, dated October 28, 2016 ("Jandovitz Aff."); Affidavit of Deborah Troche, dated October 28, 2016; and Affidavit of Elizabeth Mendonca, dated October 28, 2016.   Those facts are summarized here.

### A.  Plaintiff's Employment with American Sugar

American Sugar operates as a cane sugar refining company and produces refined and specialty sugar products in the United States.  The Company was founded over one hundred and twenty years ago, in 1891, and is headquartered in Yonkers, New York, which is also Plaintiff's work location.  (Jandovitz Aff. ¶ 2).

9

Plaintiff has been employed by American Sugar since July 1988. (Faherty Decl., Ex, A, Amended Compl. ¶ 4).  Currently, she holds the position of Store Room Assistant in the Engineering Department (Troche Aff. ¶ 6).  In that role, Plaintiff assists in the operation of the Mechanical Storeroom and is responsible for, among other things, unloading receiving material from trucks for delivery to the Store Room; maintaining a running inventory of material on hand, received and issued; issuing tools and other equipment for use by work crews; cleaning the Store Room and placing material in appropriate storage spaces.  Mayo-Coleman is a member of Local 74 of the United Service Workers Union, and served as a Union Delegate in the past.  (Troche Aff. ¶ 7).  Accordingly, the terms and conditions of Plaintiff's employment, including overtime, are governed by the Collective Bargaining Agreement ("CBA"). (Faherty Decl., Ex. G).

### B. **Plaintiff's Long History of Asserting Unfounded Complaints and Grievances**

Plaintiff's 26-year tenure as an American Sugar employee is marked by her long history of filing grievances against the company for a wide variety of perceived slights and mistreatment, including claims that she was not provided a sufficient amount of overtime.  In fact, Plaintiff has filed no less than 14 grievances since 1990 in which she alleged that she was entitled to, but had been improperly denied, overtime pay or other compensation.  (Troche Aff., ¶ 8, Faherty Decl., Ex. H.)  With the exception of one sustained grievance, all of those grievances were determined to be unfounded and American Sugar had not violated the CBA governing Plaintiff's right to overtime.  (Troche Aff. ¶ 9).  Additionally, in 1999, Plaintiff pursued a race discrimination Complaint, dual filed with the New York State Division on Human Rights ("NYSDHR") and the EEOC.  (Troche Aff. ¶ 10; Faherty Decl. G.)  There too, among other allegations, Plaintiff claimed that she had been improperly denied overtime pay.  In 2002, the NYSDHR dismissed her Complaint in accordance with a no probable cause determination, and the EEOC adopted that determination. (Troche Aff. ¶ 11.)

10

Plaintiff has also been aware at all relevant times of American Sugar's zero tolerance policy for discriminatory, harassing or retaliatory conduct. American Sugar's Code of Ethics and Business Conduct ("Code") unequivocally prohibits discrimination, harassment, and retaliation. (Troche Aff. ¶¶ 2-5; Faherty Decl., Ex. J.)  The Code also contains the Company's complaint procedure, which specifically states that employees are responsible for reporting any real or potential violation of the Code. (Faherty Decl., Ex. J at p. 5).  Plaintiff acknowledged in writing that she read, understood and agreed to comply with these policies. (Troche Aff. ¶ 5; Faherty Decl., Ex. K.)  However, Plaintiff did not report the current allegations of sexual harassment, which she claims began in February 2012, until August 2012.

### C.  Plaintiff's Long History of Asserting Unfounded Complaints and Grievances

On May 4, 2012, Plaintiff submitted a grievance to American Sugar's Human Resources complaining that, despite her greater seniority, she was bypassed for overtime opportunities that were offered to employees with less seniority. (Jandovitz Aff. ¶ 4; Faherty Decl. Ex L).  Plaintiff's grievance was defective, however, because she made no attempt to resolve her complaints by speaking to her supervisor before filing a grievance. (Jandovitz Aff. ¶ 6).[1]

Even though Plaintiff failed to comply with the mandatory procedure for filing a grievance, American Sugar scheduled a meeting attended by Plaintiff, union representative Adolph McBean and Mr. Jandovitz, to discuss her complaint. (Jandovitz Aff. ¶ 9.)  At that meeting, Plaintiff was told that her complaint regarding overtime was unfounded because the CBA requires overtime assignments to be shared among employees in the Store Room. (*Id.*).

---

[1] Plaintiff may try to argue that the May 12, 2012 grievance included a complaint of discrimination because one of the several sections of the CBA referenced in her grievance includes a reference to discriminatory treatment. Plaintiff's description of her grievance made no mention of discriminatory treatment or a hostile work environment. Moreover, Plaintiff met with Jandovitz and McBean to discuss her May 12 grievance and she did not complain of gender discrimination or sexual harassment at that meeting.

FIRM:40269551v1

By the end of that meeting, Plaintiff acknowledged that she was not entitled to priority for overtime based on her seniority and by all appearances seemed satisfied that she was not being treated unfairly. (*Id.* at ¶ 10). Notably, at no point during that meeting did Plaintiff state that her supervisor was acting inappropriately. (*Id.* at ¶ 11.)

   D. **Plaintiff's August 6, 2012 Complaint Regarding Sexual Harassment**

On June 6, 2012, Plaintiff took a two month leave of absence claiming she needed time off because she was "stressed." (Jandovitz Aff. ¶ 13, Faherty Decl., Ex. N.) Plaintiff did not provide American Sugar with any other reason for her leave of absence. On August 9, 2012, plaintiff sent a letter to American Sugar's Human Resources Department indicating that she was returning to work on August 13, 2012 and requesting that she return "to a work environment free of stress, sexual harassment and discrimination." (Jandovitz Aff. ¶ 14, Faherty Decl. Ex. O). That August 9, 2012 letter was the first time Plaintiff gave any indication that she believed she had been sexually harassed by another American Sugar employee. (Jandovitz Aff. ¶ 15.)

Upon receiving that letter, Jandovitz and Troche scheduled a meeting with Plaintiff on her first day back to work, August 13, 2012. (Jandovitz Aff. ¶ 16, Troche Aff. ¶20.) At the August 13, 2012 meeting, Jandovitz asked Plaintiff to explain, as referenced in her August 9, 2012 letter, what creates stress on her job, and to explain her claims of harassment and discrimination and whether there were any accommodations that the Company could provide her. In response, Plaintiff told Jandovitz and Troche that her then-supervisor, Tyrone Smith, had subjected her to sexual harassment. (Jandovitz Aff. ¶¶ 17-18; Troche Aff. ¶¶ 23.)

During the August 13, 2012 meeting, Plaintiff provided Jandovitz and Troche with the following information concerning her allegations about Smith:

> He would call her into his office to yell and scream at her when she didn't get her work done, even though she was under a lot of

12

> stress at work to accurately complete a lot of work in a short amount of time;
>
> He spoke to her with contempt and disrespect;
>
> He made inappropriate comments to her about her butt and boobs, called her an "old coon," and commented about "what he would do to her if she wasn't so old";
>
> He "nags her," but not the guys in her Department;
>
> He complained about her playing her radio low during inventory, but allowed someone else to play loud and inappropriate rap music; and,
>
> He discriminated against her because he wouldn't assign her overtime work performing Firewatch duties with the Pipefitters.

(Jandovitz Aff. ¶ 18; Troche Aff. ¶ 23).

In response to Plaintiff's allegations, Jandovitz asked Plaintiff if she would like to be transferred to a different shift or position while American Sugar investigated her claim. (Jandovitz Aff. ¶ 19). Plaintiff declined that offer.  (*Id*). At the end of their meeting, Jandovitz and Troche assured Plaintiff that the Company would conduct a thorough investigation of her allegations.  (*Id.* at ¶ 20, Faherty Decl., Ex. P. Jandovitz Notes of the August 13, 2012 meeting).

After the August 13, 2012 meeting, Plaintiff did not report any other concern or alleged incidents of sexual harassment, sex discrimination or retaliation to Jandovitz or Troche. (Jandovitz Aff. ¶21; Troche Aff. ¶ 25.)   Indeed, Jandovitz ran into Plaintiff on company grounds at least three (3) times after the August 13, 2012 meeting and asked her each time how she was doing in her work environment.  (Jandovitz Aff. ¶ 22).   Plaintiff's response was the same each time -- she told Jandovitz that she was focusing on doing her job and avoiding Smith.  During those conversations, Plaintiff did not express any additional concerns or alleged incidents of sexual harassment, sex discrimination, or retaliation. (*Id.)*.

FIRM:40269551v1

### E. **The Company's Investigation of Plaintiff's Claims**

Immediately after learning of Plaintiff's allegations regarding Smith, American Sugar implemented a thorough investigation of Plaintiff's claims, which was conducted by the Company's then Regional Manager of Human Resources, Nicole Copeland.  (Jandovitz Aff. ¶ 23).  Copeland met with numerous individuals, including Plaintiff and her Union Representative, Assistant Chief Steward Adolph McBean, Jandovitz, Smith, Troche, two of Mayo-Coleman's Storeroom Assistant co-workers, Reagan Shepherd and Clark Simpson, and two Maintenance Supervisors, Juan Vizcaino and Liz Mendonca.   (Faherty Decl., Ex. F, Copeland Aff. at ¶ 4). Copeland wrote notes regarding her investigation.  (Faherty Decl., Ex. V, Copeland File).

Copeland met with Plaintiff on August 20 and 21, 2012.  During those meetings, Plaintiff complained that Smith had subjected her to sexual harassment; and that she had been denied overtime work based on her sex.  (Faherty Decl. Ex. F, Copeland Aff. ¶ 5).  With respect to the overtime issue, Plaintiff offered two bases for her claim of gender discrimination: (1) comments allegedly made during a June 9, 2011 meeting, by  former Maintenance Supervisor Fred Panicci and Human Resources Representative Debbie Troche, to the effect that Mayo-Coleman could  not perform overtime Firewatch duties assisting the Pipefitters; and (2) she was denied overtime assignments in favor of her male co-workers who had less seniority than Plaintiff.  (*Id.* at ¶ 6.).

The information that Plaintiff provided to Copeland concerning her sexual harassment allegations was substantially the same as what she had disclosed to Jandovitz and Troche on August 13, 2012.  Plaintiff complained to Copeland that Smith made inappropriate comments to her during the month of February 2012, including telling her that: (1) she has a "fat juicy ass," (2) her "boobs were getting big," (3) "[y]ou're nothing but an old coon;" and, (4) "[y]ou have a big ass. I would tap that ass if you weren't so old."  Plaintiff also complained that Smith

14

stared at her private areas.    (*Id.* at ¶ 7).  Plaintiff also told Copeland that Smith had not engaged in any sexually harassing conduct after May 4, 2012, when she complained to Human Resources that she had been improperly passed over for overtime opportunities.  (*Id.* at ¶ 9.)

Copeland also interviewed Smith, who categorically denied Plaintiff's allegations. (*Id.* at ¶ 18.) In addition, none of the witnesses interviewed by Copeland observed Smith behaving inappropriately.

While Plaintiff provided Copeland some details about her sexual harassment allegations, she refused to provide critical information that she claimed supported her allegations. (*Id.* at ¶ 10). Specifically, Plaintiff claimed that her allegations could be corroborated by a witness who allegedly overheard Smith making a rude comment to her, but Plaintiff refused to identify the witness, the comment the witness overheard or even the date of the incident. (*Id.*).  Plaintiff also told Copeland that her attorney instructed her to not disclose to American Sugar all of the relevant details of her complaint, including the substance and timing of comments allegedly made by Smith. (*Id.*).

Copeland also investigated Plaintiff's claim that she was denied opportunities to perform Firewatch Helper overtime that was allegedly offered to one of her male co-workers. Copeland confirmed what Plaintiff had been told on multiple occasions -- Firewatch Helper overtime had specific requirements, including the ability to help lift heavy pipes.  (*Id.* at ¶ 16.)  Copeland also learned that *Plaintiff had previously acknowledged that she was unable to perform* Firewatch Helper overtime, but insisted that American Sugar was required to ask her whether she wanted the overtime assignment before asking other employees with less seniority. (Faherty Decl., Ex. F, Copeland Aff. At ¶ 16; Troche Aff. ¶ 14).  Additionally, Firewatch Helper overtime is not considered part of the Storeroom's shared overtime, as it is

15

not routine work for them.  This overtime is additional overtime that can be offered to any employee of the plant who has the skill set to perform the work. (Mendonca Aff. ¶ 6).

As part of her investigation, Copeland also reviewed payroll records demonstrating that Plaintiff was given a significant number of overtime hours and more than two other male members of her department.  (Faherty Decl., Ex. F, Copeland Aff. ¶ 23).

American Sugar's investigation resulted in a determination that Plaintiff's sexual harassment allegations against Smith could not be substantiated, as Smith vehemently denied those allegations and Plaintiff refused to identify the witness she claimed ed Smith making an inappropriate comment to her.  (*Id.* at ¶¶  24, 26).

American Sugar also determined that Plaintiff's sex discrimination claim based on her overtime assignments was unsubstantiated. First, contrary to Plaintiff's claim that she was entitled to more overtime based on her seniority, the CBA requires overtime work to be shared among the Store Room employees. Second, the Company's payroll records refuted Plaintiff's claim that she was deprived of overtime because of her gender. (*Id.* at ¶ 25).

### F.  Plaintiff's 2012 EEOC Charge

On September 7, 2012, Plaintiff filed a Charge of Discrimination against American Sugar with the EEOC (the "EEOC Charge") alleging that she had been "sexually harassed and retaliated by my supervisor, Tyrone Smith."  The EEOC issued a Right to Sue letter on or about November 27, 2013. (Faherty Decl., Ex. A, Amended Compl. ¶14).

### G.  Plaintiff's Federal Court Action

Plaintiff commenced this action on January 6, 2014 and initially proceeded on a *pro se* basis.  On June 27, 2014, Plaintiff s current counsel filed an appearance on Plaintiff s behalf and an Amended Complaint was filed on July 30, 2014.

16

The Amended Complaint contains three causes of action. Plaintiff's First Cause of Action alleges that she was subjected to a hostile work environment based upon her gender, sex, race and age. Plaintiff's Second Cause of Action alleges she was discriminated against due to her gender, sex, race and age. The Third Cause of Action alleges Plaintiff suffered retaliation in response to her complaints of discrimination.

On March 2, 2015, Magistrate Judge Kevin Fox issued a Report and Recommendation ("R&R") recommending that the Court grant Defendants' pre-answer motion to dismiss Plaintiff's age and race claims due to her failure to exhaust her administrative remedies. (Faherty Decl., Ex. S.) Magistrate Judge Fox also recommended that the Court decline supplemental jurisdiction over Plaintiff's age and race discrimination claims brought under New York state law. On July 17, 2015, the Court adopted Magistrate Judge Fox's R&R and dismissed all of Plaintiff's race and age claims. (Faherty Decl., Ex. T.)

## ARGUMENT

## POINT I: STANDARDS APPLICABLE TO DEFENDANTS' SUMMARY JUDGMENT MOTION

Summary judgment is warranted if the evidence "show[s] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Plaintiff may not rely on conclusory allegations or conjecture to defeat summary judgment, but must proffer "'evidence on which the jury could reasonably find for the [plaintiff].'" *Dawson v. County of Westchester,* 373 F.3d 265, 271 (2d Cir. 2004).

## POINT II: THE CLAIMS AGAINST ROBERT JANDOVITZ MUST BE DISMISSED

FIRM:40269551v1

As a threshold matter, Plaintiff's claim against Jandovitz in his individual capacity is improper and should be summarily dismissed.  Plaintiff has no legal or factual basis to assert claims against Jandovitz in his individual capacity.  It is well settled that individual employees are not "employers" within the meaning of Title VII, and therefore, are not individually liable for alleged violations of Title VII.  *Tomka v. Seiler Corp.* 66 F.3d 1295, 1313 (2d Cir. 1995) ("discriminatory personnel actions taken by an employer's agent only create liability for the employer-entity"); *Spinelli v. City of New York*, 2014 U.S. Dist. LEXIS 139006, *7 (S.D.N.Y. September 24, 2014) (Title VII "shield[s] individual employees from personal liability"); *Smalls v. Allstate¸* 396 F. Supp. 2d 364, 371 (S.D.N.Y. October 10, 2005) ("Plaintiff's Title VII claims against Smith must be dismissed because there is no personal liability under that statute").

Plaintiff's claims against Jandovitz under the New York State and New York City Human Rights Laws (collectively, "NYHRL") are equally improper.  The NYHRL only permits individual liability against an employee if the employee actively participates in the alleged discrimination.  Pursuant to NYHRL § 296(6), it is unlawful discriminatory practice for any person to "aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or attempt to do so."   In this case, Plaintiff does not allege any facts suggesting that Jandovitz participated in the alleged discrimination against her.

At most, Plaintiff's allegations regarding Jandovitz amount to nothing more than her unjustified dissatisfaction with how he allegedly handled Plaintiff's complaints.  Plaintiff does not claim that Jandovitz participated in, aided or abetted any alleged sexual harassment.  To the contrary, Plaintiff confirmed that the sole American Sugar employee who allegedly harassed her was Tyrone Smith.  (Faherty Decl., Ex. U. Plaintiff's Responses to Defendants' First Set of Interrogatories, dated December 4, 2015,).

Nor does Plaintiff allege that Jandovitz unfairly deprived Plaintiff of any overtime opportunities. The only allegations that Plaintiff directs toward Jandovitz are based on a union grievance form Plaintiff submitted to Jandovitz in May 2012, in which she alleges that her rights were being violated and that she wanted "to get paid for all the times I was buy pass for overtime." (Jandovitz Aff. ¶¶ 4-5; Faherty Decl., Ex. L). Plaintiff alleges that Jandovitz informed Plaintiff that she had not followed the proper procedure for filing a grievance under the CBA because she had not met first with her supervisor to attempt to resolve the overtime issue. (Faherty Decl., Ex. A, Amended Compl. ¶ 181.) Plaintiff concedes, however, that Jandovitz still met with Plaintiff in June 2012 to address her May 2012 Grievance. (Faherty Aff., Ex. A, Amended Compl. ¶ 178; Plaintiff Dep. Tr. pp. 60, 72-73).

On June 6, 2012, shortly after Jandovitz met with Plaintiff, she submitted a doctor's note stating that she was depressed due to work-related stressors and needed to take a leave of absence. (Jandovitz Aff. ¶ 12, Faherty Decl. Ex. N). The note did not provide any indication of sexual harassment. Plaintiff took a leave of absence from June 6, 2012 until August 13, 2012. On August 9, 2012, a few days before Plaintiff returned to work, she submitted a note to Jandovitz stating that she wanted to return to a work environment free of stress, sexual harassment and discrimination. (Faherty Decl., Ex. O, Jandovitz Aff. ¶ 14).

On Plaintiff's first day back to work, Jandovitz met with Plaintiff to discuss her allegations. (Jandovitz Aff. ¶ 16; Troche Aff. ¶ 22). Jandovitz also tried to address Plaintiff's concerns by offering her a different shift or position, which she refused. (Jandovitz Aff. ¶ 19; Faherty Decl., Ex. C, Jandovitz Dep. Tr. p. 223). Following the August 2012 meeting, Jandovitz saw Plaintiff on at least three separate occasions and asked her how she was doing, and

FIRM:40269551v1

each time Plaintiff responded that she was doing okay. (Jandovitz Aff. ¶ 22; Faherty Decl., Ex. C, Jandovitz Dep. Tr. p. 128).

Under these undisputed facts, Plaintiff has no basis to impose personal liability on Jandovitz and her claims against him must be dismissed.

## POINT III: PLAINTIFF CANNOT MAKE OUT A DISCRIMINATION CLAIM BASED UPON SEX

Plaintiff's claims of sex discrimination under Title VII and the NYHRL cannot survive summary judgment because Plaintiff cannot establish discrimination under the burden-shifting framework established by *McDonnell Douglas Corp v. Green*. 411 U.S. 792. 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973).[2]  "First, the plaintiff must make out a prima facie case of discrimination by showing that (1) he belongs to a protected class; (2) he suffered an adverse employment action; and (3) the circumstances surrounding the adverse employment action giving rise to an inference of discrimination."  *Smalls v. Allstate*, 396 F. Supp. 2d 364, 370 (S.D.N.Y. Oct. 10, 2005).  The burden then shifts to the employer to show a legitimate, nondiscriminatory reason for the adverse employment action.  If the employer does so, the final burden remains with the plaintiff to show that the non-discriminatory reason asserted by the employer was pretextual and that the employer discriminated against him.  *Id.*

Plaintiff cannot establish a *prima facie* case of discrimination or hostile work environment because her allegations do not give rise to an inference of discriminatory intent.

a.  *Plaintiff's Allegations Regarding Overtime Do Not Establish Discriminatory Intent*

---

[2] Plaintiff's NYHRL claims are governed by the same standards applicable to Title VII claims.  *See, e.g., Song v. Ives Lab., Inc.*, 957 F.2d 1041, 1048 (2d Cir. 1992) (discrimination claims brought under the NYSHRL and NYCHRL are analogous to claims brought under analogous federal statutes, and the same elements and burdens of proof and production apply).

The basis of Plaintiff's gender discrimination claim is her allegation that she was denied overtime because of her sex.  To survive summary judgment, Plaintiff must show that she was deprived of overtime under circumstances giving rise to an inference of discriminatory intent. Plaintiff cannot sustain that burden based solely on her own conclusory allegations of discrimination. Rather, there must be evidence giving rise to an inference of discrimination. *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 12 (2d Cir. 1986).  No such evidence exists here.

Plaintiff's discrimination claim is based on allegations that she was deprived of lucrative overtime that should have been offered to her first due to her seniority in the Store Room. (Faherty Decl., Ex. A, Amended Compl. ¶ 121).  Plaintiff's own deposition testimony negates a finding of discriminatory intent because she admitted that her Union Representative and Jandovitz explained that the CBA required overtime in her department to be shared and Plaintiff acknowledged that they were correct.  (Faherty Decl., Ex. B, Plaintiff Dep. Tr. pp. 59-60, 72-73). Plaintiff also admitted that she was not deprived of overtime that paid a higher hourly rate than the overtime she received. (*Id.* pp. 104- 105).  Those admissions are fatal to Plaintiff's claim that American Sugar had a discriminatory intent to deny her from earning overtime due to her gender.

Plaintiff's gender discrimination claim fails for yet another reason.  Her allegations and testimony regarding the amount of overtime she claims she lost due to her gender are vague, at best, and do not come close to demonstrating that she suffered an adverse employment action. (*Id.* at pp. 111-113).   Apart from Plaintiff's vague and now-discredited claims that she was unfairly denied overtime, there is no evidence to support her allegations.  The evidence is all to the contrary, as Plaintiff had the second highest amount of overtime in the Store Room in years 2011, 2012 and 2013 and the highest number of hours in 2015.  (Faherty Decl., Ex. E).

FIRM:40269551v1

Plaintiff also fails to specify any specific dates when she was allegedly passed over for overtime, why she had any right to be offered that overtime before her co-workers and whether she was even available to perform any such overtime.   The only time frame Plaintiff could recall when she did not receive overtime was a six-week period in 2011. (Faherty Decl., Ex. B, Plaintiff's Dep. Tr. pp. 111-113).   But Plaintiff was unable to state whether or to what extent overtime was offered to anyone else during that period.  (*Id*).

Plaintiff's failure to proffer any evidence that she was unfairly denied overtime opportunities is not surprising.   American Sugar's payroll records detailing the amount of overtime worked by each of the four employees in Plaintiff's department demonstrate that Plaintiff had the highest number of overtime hours in 2015 and the second highest amount of overtime hours in 2011, 2012 and 2013. (Troche Aff. ¶ 17; Faherty Decl., Ex. E).   Furthermore, Plaintiff received significantly more overtime than two of her male co-workers, Clark Simpson and Michael Cronin during the years 2011 through 2014.[3]   This indisputable fact further demonstrates that Plaintiff's discrimination claim fails as a matter of law.   See *Aiello v. Stamford Hosp.*, 2011 U.S. Dist. LEXIS 87121, at * 33 (D. Conn. Aug. 08, 2011) (dismissing plaintiff's claim alleging disparate treatment in the assignment of overtime work because he did, in fact, receive a significant amount of overtime in comparison with other employees), aff'd, 487 Fed. Appx. 677 (2d Cir. Nov. 8, 2012); *Ramsey v. New York City Health & Hospitals Corp.*, 2000 U.S. Dist. LEXIS 7510, at * 22 (S.D.N.Y. June 2, 2000) ("Considering that there is evidence that plaintiff made more money from over-time work than most other maintenance workers, the fact that an overtime job may have on various occasions been taken away from plaintiff and given to

---

[3] Plaintiff worked the following number of overtime hours per year: 863.75 in 2011, 543.25 in 2012, 302.50 in 2013, 195.25 in 2014 and 282.50 in 2015.  (Faherty Decl. Ex. E).

another maintenance worker is not evidence of a discriminatory employment practice adverse to plaintiff for purposes of his disparate treatment claim").

      b. *Regan Shepherd is Not a Similarly Situated Employee Who Received More Favorable Treatment*

Plaintiff also fails to establish an inference of discriminatory treatment by claiming that one of her male co-workers, Reagan Shepherd, received more opportunities than Plaintiff to perform Firewatch Helper overtime.  The Firewatch Helper is required pursuant to American Sugar's Hot Work Policy when a department in the plant is performing "hot work," such as welding, cutting or grinding.  (Mendonca Aff. ¶ 3).  Prior to 2011, this overtime work was simply referred to as "Firewatch" and involved standing watch while employees performed welding and other hot work that could potentially cause a fire.  (Mendonca Aff. ¶ 4).  Beginning in 2011, the Firewatch position was modified and required the employee to have basic welding skills and the ability to lift heavy pipes. (Mendonca Aff. ¶ 4).  This modified overtime is referred to by many as "Firewatch Helper" to denote the additional requirements.  (Mendonca Aff. ¶ 5).

Plaintiff previously admitted that she was unable to meet the requirements to perform Firewatch helper overtime.  (Troche Aff. ¶ 15).  Unlike Plaintiff, Shepherd met the requirements and had welding experience, an enhanced skill set that allowed him to perform the Firewatch Helper role.  (*Id.* ¶ 18).  In fact, Shepherd was recently transferred to the Pipefitting department due to his skills. (*Id.* ¶ 19).  Notably, Plaintiff does not allege that the two other male employees who worked in the Store Room were also given Firewatch Helper overtime.

Furthermore, while overtime in the Storeroom is shared pursuant to the CBA, the Firewatch Helper overtime is not considered part of the shared overtime.  It is additional overtime, independent of Storeroom overtime opportunities, that can be offered to other employees. (Mendonca Aff. ¶ 6).

23

Plaintiff's claim that Shepherd received favorable treatment with respect to overtime assignments overlooks the undisputed fact Shepherd had a specific skill set that Plaintiff lacked and she is not similarly situated to Shepherd. *Lee v. N.Y. State Dep't. of Health*, 2001 U.S. Dist. LEXIS 11287, *61-62 (S.D.N.Y. March 26, 2001) ("plaintiff must show that she was treated differently from similarly situated [non-Asian] employees"). Plaintiff cannot establish that she was similarly situated to Shepherd and, therefore, his receipt of Firewatch Helper overtime does not create an inference of discrimination based on gender.

Moreover, Plaintiff cannot demonstrate that she was qualified to perform Firewatch Helper overtime. To the contrary, Plaintiff acknowledged to Troche that she could not perform the heavy pipe lifting that was necessary in order to perform the Firewatch Helper role. (Troche Aff. ¶ 15). *See Williams v. Donnelley Corp.* 368 F.3d 123, 127 (2d Cir. 2004) (no evidence of discrimination when plaintiff failed to show that she was qualified for the position she allegedly did not receive due to race and gender); *Hayle v. Nassau Health Care Corp.*, 2013 U.S. Dist. LEXIS 169791,*18 (E.D.N.Y. December 2, 2013) (plaintiff's conclusory allegations that she was not receiving as much overtime as another employee were not sufficient because plaintiff did not know what tasks the other employee was working on).

c.  *Plaintiff Has Not Suffered a Materially Adverse Employment Action*

Even assuming Plaintiff could establish an inference of discriminatory intent based on the absence of Firewatch Helper overtime, she cannot demonstrate that the lack of Firewatch Helper overtime constitutes a materially adverse employment action because she received more than her fair share of overtime in other areas. It is undisputed that Plaintiff was provided with a substantial amount of overtime in the Store Room and had more overtime opportunities than at least two of her male co-workers. It is also undisputed that Firewatch Helper overtime paid the

24

same hourly rate as the Store Room overtime offered to Plaintiff, eliminating any basis for Plaintiff to claim that there was any financial benefit to performing that overtime.

Although Title VII does not define adverse employment actions "solely in terms of job termination or reduced wages or benefits…it must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Smalls v. Allstate*, 396 F. Supp. 2d 364, 369 (S.D.N.Y. 2005). See also *Monica v. New York City Off-Track Betting Corp.,* 1995 U.S. Dist. LEXIS 3350, at * 11-12 (S.D.N.Y. 1995) (a materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.

Plaintiff remains employed in the Store Room of American Sugar to this day. She was not demoted or terminated, her wages have not been reduced and her job duties have not materially changed. (Troche Aff. ¶ 30). Stated simply, Plaintiff has not suffered a material adverse change in her employment.[4]

In sum, Plaintiff alleges nothing more than a litany of actions, everyday workplace grievances and disappointments that do not, when viewed in their totality, constitute adverse employment actions. *See Cunningham v. N.Y. State DOL*, 326 Fed. Appx. 617, 619 (2d Cir. 2009). As a result, her sex discrimination claims should be dismissed as a matter of law.

## POINT IV: PLAINTIFF FAILS TO ESTABLISH A HOSTILE WORK ENVIRONMENT

---

[4]Plaintiff's allegations of verbal abuse by Smith are addressed *infra* as part of Plaintiff's hostile work environment claims. However, "being yelled at, receiving unfair criticism, receiving unfavorable schedules or work assignments…do not rise to the level of adverse employment actions…because they [do] not have a material impact on the terms and conditions of Plaintiff's employment." *Lee v. New York State Dept. of Health*, 2001 U.S. Dist. LEXIS 11287, at *45-46 (S.D.N.Y. 2001).

Plaintiff's allegations that she was subjected to a hostile work environment also cannot withstand scrutiny.  In order to establish a hostile work environment, a plaintiff must show the following: (1) the alleged harassment was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment; and (2) a specific basis exists for imputing the objectionable conduct to the employer.  *See Augustin v. The Yale Club of N.Y. City*, 274 Fed. App'x 76, 77 (2d Cir. 2008).[5]

When determining the severity and pervasiveness of a hostile work environment claim, the Court considers the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, whether it was physically threatening and humiliating rather than merely offensive, and whether the conduct unreasonably interfered with Plaintiff's work performance.  *See Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (citation omitted).  The plaintiff must prove both that the workplace was "permeated with 'discriminatory intimidation, ridicule, and insult…that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create and abusive environment."  *Dayes v. Pace*, 2 Fed. Appx. 201, 207 ((2d Cir. 2001).  "Title VII…does not set forth a "general civility code for the American workplace." *Burlington Northern v. White,* 548 U.S. 53, 68 (2006) (internal citations omitted).  "The ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes and occasional teasing" are not considered unlawful harassment.  *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

---

[5] In addressing claims brought under the New York State and New York City laws, courts look to federal decisional law for guidance.  *See, e.g., Song v. Ives Lab., Inc.*, 957 F.2d 1041, 1048 (2d Cir. 1992) (discrimination claims brought under the NYSHRL and NYCHRL are analogous to claims brought under analogous federal statutes, and the same elements and burdens of proof and production apply).

FIRM:40269551v1

Plaintiff's allegations, even if true, fail to demonstrate that she was subjected to the type of severe or pervasive conduct that gives rise to a hostile work environment. The totality of Plaintiff's evidence of a hostile work environment is based on a handful of incidents regarding inappropriate comments Smith allegedly made to her over a four month period. (Faherty Aff., Ex. B, Plaintiff Dep. pp. 182-185). Plaintiff testified that the alleged harassment began in February and ended in May 2012, yet she did not report those comments until August 2012. Viewed in the context of Plaintiff's 26 years of employment at American Sugar, it cannot reasonably be said that these isolated comments by one person over the course of four months, amounts to an environment that is so severe or pervasive that it rises to a level of actionable conduct. *See Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 431 (7th Cir. 1995) (nine comments made over a seven month period were too infrequent to be severe and pervasive).

Indeed, the Second Circuit has consistently found that "[i]solated, minor acts or occasional episodes do not warrant relief." *Brennan v. Metro. Opera Assoc., Inc.*, 192 F.3d 310, 318 (2d Cir. 1999); *see also Augustin v. Yale Club of N.Y.C.*, 274 Fed. App'x 76 (2d Cir. 2008), *aff'd*, 274 F. App'x 76 (2d Cir. 2008); *Trinidad v. N.Y.C. Dep't of Corr.*, 423 F. Supp. 2d 151, 167-68 (S.D.N.Y. 2006) (isolated incidents of supervisors calling plaintiff a "bitch" and making sexual remarks over five years insufficient to support a claim of discriminatory harassment).[6]

Plaintiff's claims also fail as a matter of law because the terms and conditions of her employment were not altered. She is still employed at American Sugar, where she has held the same position, the same responsibilities and the same salary and benefits. As a result, American Sugar is entitled to summary judgment dismissing her hostile work environment claims.

---

[6] The same is true under the NYCHRL, as "'petty, slight, or trivial inconvenience[s] are not actionable." *Kumaga*, 910 N.Y.S.2d 405, 2010 WL 1444513, at *14 (quoting *Williams*, 872 N.Y.S. 2d at 38).

## POINT V: PLAINTIFF CANNOT ESTABLISH THAT SHE WAS SUBJECTED TO RETALIATION

Plaintiff's claim that she was retaliated against for complaining about the alleged discrimination fares no better.  Title VII provides that "it shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [such employee] has opposed any practice made an unlawful practice by this subchapter [.]"  42 U.S.C. § 2000e-3(a).  The State and City Human Rights laws contain almost identical provisions. *Tomka v. Seiler*, 66 F.3d 1295, 1308 (2d Cir. 1995).

To establish a prima facie case of retaliation, an employee must show "(1) participation in a protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action."  Id. at 1308; *Hollander v. American Cyanamid Co.,* 895 F.2d 80, 85 (2d Cir. 1990).

Here, Plaintiff has utterly failed to meet her burden of establishing even a *prima facie* case of retaliation.  Plaintiff alleges that Smith retaliated against her for rejecting his sexual advances by ordering her to clean the Store Room more than he asked her male co-workers. (Faherty Aff, Amended Compl. ¶ 71.)  Plaintiff concedes however that cleaning is a part of the job description for Store Room employees. (Faherty Decl., Ex. B, Plaintiff Dep. Tr. P. 33). She also admitted that her co-workers were also required to clean the store room, but they often failed to do so. (*Id.* at pp. 253-254).

Plaintiff also alleges that Smith failed to submit Plaintiff's overtime hours in a timely manner and that some of her paychecks were incorrect.  Plaintiff is correct that there were issues regarding the timely submission of overtime hours for a brief period in 2012 that resulted in paychecks that did not include all earned overtime.  The issues regarding overtime paychecks were not unique to Plaintiff, however, and her male co-workers had similar issues regarding their

overtime paychecks.  (Troche Aff. ¶ 29).  In addition, Plaintiff admits that all issues regarding her paychecks were promptly corrected and she was paid all earned overtime.

For all of these reasons, Plaintiff's retaliation claim fails as a matter of law.

## POINT VI: THE ALLEGED MISCONDUCT CANNOT BE IMPUTED TO DEFENDANTS

Finally, even assuming, arguendo that all of the foregoing conduct was actionable, an employer can only be liable for alleged harassment perpetrated by coworkers if there is evidence that the employer either provided no reasonable avenue of complaint or knew of the harassment and did nothing about it.  *See Petrosino v. Bell Atl.*, 385 F.3d 210, 225 (2d Cir. 2004); *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997).

Based on the undisputed evidence in this record, no reasonable juror could conclude that liability should be imputed to American Sugar since (i) the Company has strict policies and procedures prohibiting discrimination (as well as retaliation) in its workplace, and (ii) as soon as Plaintiff reported inappropriate conduct to Jandovitz on August 12, 2012, prompt reasonable action was taken.  *See Brown v. Orange & Rockland Utils., Inc.*, 594 F. Supp. 2d 382, 394 (S.D.N.Y. 2009) (employer provided a reasonable avenue of complaint where it "maintain[ed] a written policy that establishes fairly comprehensive procedures and guidance regarding workplace behavior, discrimination, and the proper handling of discrimination claims").

Moreover, Plaintiff cannot dispute that American Sugar acted proactively and promptly when Plaintiff complained that she was being sexually harassed.  American Sugar commenced an investigation within days of Plaintiff's complaint but could not substantiate her claims because Plaintiff was not cooperative.  (Faherty Decl., Ex. F, Copeland Aff. ¶ 24).  Furthermore, Copeland reviewed American Sugar's rules of conduct with Smith even though he denied Plaintiff's allegations.  *See Salmon v. Pliant Corp.*, 965 F. Supp. 2d 302, 306 (W.D.N.Y. 2013).

FIRM:40269551v1

Based on this record, no reasonable juror could conclude that American Sugar failed to act reasonably and promptly regarding Plaintiff's allegations.

## <u>CONCLUSION</u>

Based on the foregoing, Defendants respectfully request that the Court grant summary judgment, dismissing Plaintiff's claims in their entirety and with prejudice.

Dated: October 28, 2016

**EPSTEIN BECKER & GREEN, P.C.**
Attorneys for Defendant s

By: *s/Robert Goldstein*
Robert D. Goldstein
250 Park Avenue
New York, New York 10177-0077
Telephone: (212) 351-4500
Email: rgoldstein@ebglaw.com

and

Carol J. Faherty
One Landmark Square, Suite 1800
Stamford, Connecticut 06901
Telephone:  (203) 348-3737

30