UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------X

ROSANNA MAYO-COLEMAN,

          *Plaintiff,*

    -against-

AMERICAN SUGARS HOLDING, INC. and
ROBERT JANDOVITZ

        *Defendants.*

-----------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: September 18,
2017

No. 14-CV-0079 (PAC) (KNF)

**OPINION & ORDER
PARTIALLY ADOPTING
REPORT AND
RECOMMENDATION**

HONORABLE PAUL A. CROTTY, United States District Judge:

    Plaintiff Rosanna Mayo-Coleman ("Plaintiff") brings this action against her employer,

American Sugar Holdings ("ASH" or "ASR") and ASH's former Regional Manager of Human

Resources, Robert Jandovitz ("Jandovitz") (together, "Defendants"), under Title VII of the Civil

Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"); New York State Human Rights Law,

New York Executive Law § 290 *et seq.* ("NYSHRL"); and New York City Human Rights Law

Title 8 of the New York City Administrative Code ("NYCHRL"), alleging: (1) gender-based

discrimination, primarily in overtime assignment;[1] (2) hostile work environment, based on her

former supervisor's sexual harassment and other conduct; and (3) retaliation. On October 28,

2016, Defendants moved, pursuant to Fed. R. Civ. P. 56, for summary judgment on all claims.

ECF 111.

    On May 5, 2017, Magistrate Judge Kevin Nathaniel Fox issued a Report and

---

[1] The Court dismissed Plaintiff's race and age discrimination claims for failure to exhaust administrative remedies
on July 17, 2015. ECF 67.

1

Recommendation (the "R&R"), recommending that Defendants' motion (a) be granted on Plaintiff's claims against Jandovitz; and (b) denied respecting all other claims. ECF 132 at 29. On May 26, 2017, Defendants filed objections to the R&R. ECF 135.

The Court has reviewed the objections, and for the reasons set forth below, adopts the R&R's recommendation to grant Defendants summary judgment on Plaintiff's claims against Jandovitz; adopts the R&R's recommendation to deny Defendants' motion respecting Plaintiff's hostile work environment claim against ASH; and sustains Defendants' objections regarding Plaintiff's gender-based discrimination in the assignment of overtime and retaliation claims against ASH. The Court also concludes that Plaintiff's NYCHRL claims fail as a matter of law.

## LEGAL STANDARDS

### I. Review of Objections

The Court may "accept, reject, or modify, in whole or in part, the findings or recommendations by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). If a party timely objects, the Court reviews the R&R's contested portions *de novo*. *See Arista Records LLC v. Doe*, 604 F.3d 110, 116 (2d Cir. 2010). "However, where a party does not submit a timely objection, 'a district court need only satisfy itself that there is no clear error on the face of the record.'" *Martinson v. U.S. Parole Comm'n*, No. 02-CV-4913 (KMK), 2005 WL 1309054, at *3 (S.D.N.Y. June 1, 2005) (internal quotations and citation omitted). If a party "makes only conclusory or general objections, or simply reiterates the original arguments, the Court will review the Report strictly for clear error." *Pinkney v. Progressive Home Health Servs.*, No. 06-CV-5023 (LTS) (JCP), 2008 WL 2811816, at *1 (S.D.N.Y. July 21, 2008).

## II.    Summary Judgment

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court "resolve[s] all ambiguities and draw[s] all reasonable inferences in the light most favorable to the nonmoving party." *Summa v. Hofstra Univ.*, 708 F.3d 115, 123 (2d Cir. 2013). The non-movant "may not rely on conclusory allegations or unsubstantiated speculation" to raise a triable issue of fact. *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (internal quotation mark and citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial;'" and summary judgment is appropriate. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (citation omitted).

In the employment context, "direct evidence of [discriminatory] intent will only rarely be available so . . . affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (internal quotation marks and citation omitted). Even then, "a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment, and must show more than some metaphysical doubt as to the material facts." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 101 (2d Cir. 2010) (internal quotation marks and citation omitted).

## III.    Title VII and NYSHRL

Under Title VII, it is "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 41 U.S.C. § 2000e-2(a).

Courts analyze NYSHRL gender-based discrimination, hostile work environment, and retaliation claims under the same standards employed in Title VII claims. *See Walsh v. New York City Hous. Auth.*, 828 F.3d 70, 74–75 (2d Cir. 2016); *Treglia v. Town of Manilus*, 313 F.3d 713, 719 (2d Cir. 2002). Resolution of Title VII claims resolves parallel NYSHRL claims. *See Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 107 n.10 (2d Cir. 2011).

## IV. NYCHRL

Title 8 of the New York City Administrative Code prohibits employers from discriminating against any person based on, *inter alia*, gender. N.Y.C. Admin. Code § 8–107(1)(a). Courts review NYCHRL claims separately from their Title VII and NYSHRL equivalents. *See Mihalik v. Credit Agricole Cheuvreux North Am., Inc.*, 715 F.3d 102, 110 n.8 (2d Cir. 2013).

"To state a claim under the NYCHRL, a plaintiff must allege that the defendant engaged in discriminatory conduct 'within the boundaries of New York City.'" *Kearse v. ATC Healthcare Servs.*, No. 12-cv-233 (NRB), 2013 WL 1496951, at *2 (S.D.N.Y. Apr. 8, 2013) (quoting *Robles v. Cox & Co. Inc.*, 841 F. Supp. 2d 615, 623 (E.D.N.Y. 2012)). Courts look to the "location of the impact of the offensive conduct" to determine where the alleged discrimination occurred. *Robles*, 841 F. Supp. 2d at 623.

None of the alleged discriminatory conduct took place in New York City, where Plaintiff resides. Nor has Plaintiff even suggested that the "impact of the offensive conduct" occurred within New York City. *Robles*, 841 F. Supp. 2d at 623. Such an argument, even if made, would be futile, where all of the alleged conduct "took place exclusively" in Yonkers. *Kearse*, 2013 WL 1496951, at *2; *see Robles*, 841 F. Supp. 2d at 623. Plaintiff's NYCHRL claims thus fail as a matter of law and are dismissed.

# BACKGROUND[2]

## I.     Plaintiff's Employment at ASH

ASH is located in Yonkers, New York. Def. 56.1 ¶ 2. Plaintiff has been employed by ASH

since 1988. *Id.* ¶ 4. She is currently a Storeroom Assistant in ASH's Engineering Department at

ASH's Yonkers location, where she assists in the operation of the Mechanical Storeroom. *Id.* ¶

5; Jandovitz Aff. ¶ 2. Her terms and conditions of employment are governed by a Collective

Bargaining Agreement (the "CBA"). Def. 56.1 ¶¶ 6–7; *see* Faherty Decl. Ex. G (CBA).

Throughout the relevant time period, Plaintiff had three Storeroom co-workers, all of whom were

male. Def. 56.1 ¶ 19.

ASH's policies prohibit discrimination, harassment, and retaliation. *Id.* ¶¶ 12–13; Faherty

Decl. Ex. J (Code of Ethics and Business Conduct). ASH's complaint procedures instruct

employees to report any actual or suspected violation to the employee's supervisor; another

supervisor, a Human Resources (HR) member; or its Ethics Hotline, among others. Def. 56.1 ¶

14; Faherty Decl. Ex. J at 5. Plaintiff read, understood, and agreed to comply with these policies.

Def. 56.1 ¶ 15.

Article 6 of the CBA, "Overtime," Section (f) reads: "[r]egularly scheduled overtime shall be

assigned to employees performing the job in which such overtime is required." Faherty Decl.

Ex. G. Section (i) reads: "[i]n those work groups where in the past, overtime has been shared,

such past practices shall be continued. The parties agree this provision as applied to mechanics

shall be applied as a group in the day maintenance section." *Id.* Section (j) reads: "[i]t is agreed

and understood that from time to time 'extra' overtime work may be available. In such

situations, the overtime shall be shared in plantwide seniority order, and the senior employee in

---

[2] Additional relevant facts are also set forth in the parties' extensive Local Rule 56.1 Statements of Material Facts and in the R&R.

rotation who can perform the available work and who volunteers, shall be given the overtime work." *Id.*

## II.    Plaintiff's Claims

Plaintiff's gender-based discrimination claim is premised on three actions: (1) denial of "Firewatch" overtime ("Firewatch Overtime")[3] until 2014, in favor of one of her Storeroom male co-workers, Regan Shepherd ("Shepherd");[4] (2) denial of all overtime opportunities for one six- or seven-week period; and (3) a two-week transfer to the sanitation department, which Plaintiff characterizes as a "demotion." *See* ECF 125 at 6–8; Pl. Counter 56.1 ¶¶ 16–22.

Plaintiff's hostile work environment claim is based primarily on alleged sexual harassing remarks and gestures made by her former supervisor, Tyrone Smith ("Smith"). *See* ECF 125 at 16–17; Pl. Counter 56.1 ¶¶ 14, 23–26. Plaintiff also cites the denial of Firewatch Overtime; alleged statements that she could not perform Firewatch Overtime because she was a woman; allegations that Smith required Plaintiff to "do all of the cleaning and prevented [Plaintiff] from having the same freedoms afforded to my coworkers, such as talking on the phone and listening to music;" and being "micromanaged and held to higher standards" and "disproportionately

---

[3] The parties dispute the requirements and allocation of Firewatch Overtime. ASH's Process Manager avers that ASH requires a "Firewatch Helper" anytime a department performs "hot work," such as welding, cutting or grinding; and that this assignment is performed on either a "straight time or overtime basis." Mendonca Decl. ¶ 3. She further avers that in 2011, the position was modified to additionally require the employee to "have basic welding skills and the ability to lift heavy pipes;" and that Firewatch Overtime "is not considered part of the Storeroom's shared overtime, as it is not routine work for them. This overtime is additional overtime that can be offered to any employee of the plant who has the skill set to perform the work." *Id.* ¶¶ 5–6. A 2013 email from a Maintenance Supervisor to HR detailing Firewatch requirements and responsibilities does not mention welding; but does list holding and lifting different sizes of pipes weighing up to 50 lbs. Faherty Decl. Ex. R. Plaintiff maintains that Firewatch Overtime does not require welding, citing this email and affidavits of two former ASH supervisors contending the same. *See* Pl. Counter 56.1 ¶¶ 62–66; Gaffney Aff. ¶ 21 (employed at ASH until 2016); Paniccia Aff. ¶ 5 (employed at ASH until 2011).

[4] Plaintiff also contends, without any evidence other than her own affidavit, that her other two Storeroom co-workers were offered but did not accept Firewatch Overtime because they "did not like to work overtime and rarely accepted the overtime they were offered." Pl. Counter 56.1 ¶ 19; *see* Mayo Decl. ¶ 36.

6

disciplined more harshly than her male co-workers for engaging in the same conduct." Mayo Decl. ¶ 38; ECF 125 at 16–17; Pl. Counter 56.1 ¶¶ 19, 48, 70.

Plaintiff's retaliation claim is based on the same denial of Firewatch Overtime; allegations that Smith made her clean more often than her male-coworkers and repeatedly submitted late paperwork, resulting in delayed paychecks; and ASH's decisions to hire third-party contractors to perform Firewatch Overtime and to limit the amount of Window Overtime that Storeroom employees could receive. See Mayo Decl. ¶¶ 33, 38; ECF 125 at 20.

### III. Relevant Events and History

Plaintiff claims that Smith began sexually harassing her in 2008. Pl. Counter 56.1. ¶ 24. She avers she complained of sexual harassment and gender discrimination to two other supervisors, Fred Paniccia and Fred Gaffney; their affidavits indicate that Plaintiff reported the conduct to them at least as early as 2010.[5] Mayo Decl. ¶ 13; Paniccia Aff. ¶ 23; Gaffney Aff. ¶ 13; see Pl. Counter 56.1. ¶¶ 14, 25. Plaintiff avers that, pursuant to ASH's policy, she called the hotline in or about May of 2012. Mayo Decl. ¶ 14; see Pl. Counter 56.1 ¶¶ 14, 25. In her deposition, Plaintiff described several of Smith's lewd comments; and recalled that these had occurred in 2012.[6] Faherty Decl. Ex. B at 182–188.

On May 4, 2012, Plaintiff submitted a grievance to HR, claiming she had been improperly bypassed for overtime opportunities that were offered to less senior employees. Def. 56.1 ¶¶ 27–28; Faherty Decl. Ex. L (Grievance). Jandovitz and Plaintiff's Union representative met with Plaintiff, reviewed the CBA with her, and explained that the CBA requires overtime to be shared

---

[5] Plaintiff avers that she reported these complaints to these two supervisors; Debbie Troche of HR, Jandovitz; Smith; and her Union representative "for many years, specifically in 2008, 2009, 2010, 2011, 2012, 2013, 2014 and 2015." Mayo Decl. ¶ 13.
[6] These include: "Damn, you look good;" "I would tell you to go F yourself, but you might do it;" "Your boobs is getting big;" "I would tap that ass if you wasn't so old;" "I would tap that ass if you wasn't an old coon;" and "a sexual remark towards my body parts when a vendor was standing in the doorway of his office and he was not aware that she was standing there." Faherty Decl. Ex. B at 182:19, 183:14–19, 185:22–23, 186:14–15, 188:21–24.

among Storeroom employees, not allocated based on seniority, thus rendering her claim unfounded.[7] Def. 56.1 ¶¶ 29–30; Faherty Decl. Ex. B. at 59:24–60:25, 72:12–73:23, 107:2–18. Plaintiff testified that based on this meeting, she understood that overtime was to be shared and not allocated based on seniority. Def. 56.1 ¶ 31; Faherty Decl. Ex. B. at 60:2–25, 72:12–73:23.

On June 6, 2012, Plaintiff took a two-month leave of absence due to stress. Def. 56.1 ¶ 33; Faherty Decl. Ex. N (Doctor's Note). Plaintiff wrote Jandovitz on August 9, 2012, stating that she was returning to work on August 13, 2012 and "requesting to return to a work environment free of stress, sexual harassment and discrimination." Def. 56.1 ¶ 34; see Faherty Decl. Ex. O (Aug. 9, 2012 Letter).

Jandovitz and HR employee Debbie Troche ("Troche") met with Plaintiff the day she returned, August 13, 2012. Def. 56.1 ¶¶ 36–41. Plaintiff reported that Smith had sexually harassed and discriminated against her, and provided the following information:

He would call her into his office to yell and scream at her when she didn't get her work done, even though she was under a lot of stress at work to accurately complete a lot of work in a short amount of time;

He spoke to her with contempt and disrespect;

He made inappropriate comments to her about her butt and boobs, called her an "old coon," and commented about "what he would do to her if she wasn't so old;"
He "nags her," but not the guys in her Department;

He complained about her playing her radio low during inventory, but allowed someone else to play loud and inappropriate rap music; and,

He discriminated against her because he wouldn't assign her overtime work performing Firewatch duties with the Pipefitters.

---

[7] Specifically, they explained that ASH considered, and had always considered, its Storeroom part of its Maintenance Department; and thus that Section (i) applied instead of Section (g), which provides that "non regularly scheduled overtime" is allocated based on seniority to employees "[i]n the processing shifts" who "can do the available work." Faherty Decl. Ex. G; Def. 56.1 ¶ 30; Faherty Decl. Ex. B. at 59:11–60:25, 72:12–73:23, 107:2–18. The Job Description lists Storeroom Assistant as within the Engineering Department; but much of the actual descriptions involves maintenance. See Faherty Decl. Ex. W (Job Description). Article 6 does not mention the Engineering Department. See Faherty Decl. Ex. G.

Def. 56.1 ¶¶ 37–38; *see* Faherty Decl. Ex. P (Notes from Aug. 13, 2012 Meeting).

Within one week, Nicole Copeland, Regional Manager of HR at ASH's Baltimore plant, began an extensive investigation into Plaintiff's allegations. Def. 56.1 ¶¶ 45–47; *see* Faherty Decl. Exs. F, V. Regarding the alleged sexual harassment, Copeland avers that Plaintiff provided substantially the same information as she had given HR; and stated that Smith had made inappropriate comments in February 2012, but that he had not engaged in any verbal abuse after May 4, 2012. Def. 56.1 ¶¶ 49–50. Regarding the alleged sex discrimination, Copeland avers that Plaintiff repeated her argument that she was denied Firewatch Overtime in favor of male co-workers with less seniority; and claimed that Troche and Paniccia had told Plaintiff in a June 9, 2011 meeting that she could not perform Firewatch Overtime because she was a woman. *Id.* ¶ 48. Plaintiff avers that she also provided Copeland the name of an individual who overheard Smith's "abusive behavior towards me;" but Copeland did not interview this individual.[8] Mayo Decl. ¶ 16. Copeland's investigation concluded:

> Relative to your complaint about inappropriate comments allegedly made by your supervisor, Tyrone Smith, as you indicated there were no other witnesses to the alleged comments. You were unwilling at the time to provide me with the name or company of the one witness you claim overheard an inappropriate comment. As such, I am unable [to] substantiate your compl[a]int. However, I have reviewed the Anti-Harassment and EEO Policy as well as the Code of Ethics and Business Conduct with Mr. Smith.
>
> As it relates to your complaint about the assignment of overtime, I have concluded that your collective bargaining agreement indicates overtime in the Engineering department, of which the store room is a part, is to be shared among the employees in the classification. The assignment for overtime are not considered to be extra overtime. The collective bargaining

---

[8] Plaintiff's Counter 56.1 Statement also claims that Plaintiff told Copeland "she was the only employee made to clean, and that it is because she is the only woman in the storeroom;" that she was able to perform Firewatch Overtime; and that Smith and another employee "made up fake requirements" such as "needed confined space and respirator" so that Plaintiff "would not want to work" Firewatch Overtime. Pl. Counter 56.1 ¶¶ 48, 55–57, 63. (These allegations are supported, somewhat conclusively, by the declaration of Plaintiff's attorney, based on conversations with Plaintiff. *See id.*; Goddard Decl. Ex. 2(h). By contrast, Plaintiff's affidavit does not include such claims. *See* Mayo Decl.).

9

agreement has been reviewed with Mr. Smith and the procedure for overtime has been updated to match the contractual language.

Faherty Decl. Ex. F at 27; *see* Def. 56.1 ¶¶ 58–59.

On September 7, 2012, Plaintiff filed a Charge of Discrimination against ASH with the Equal Employment Opportunity Commission ("EEOC") alleging that she had been "sexually harassed and retaliated by my supervisor, Tyrone Smith;" the EEOC issued a Notice of Right to Sue on November 27, 2013. Am. Compl. ¶ 14.

On October 18, 2012, Plaintiff requested a two-week transfer to the sanitation department.[9] Faherty Reply Decl. Ex. C (Oct. 18, 2012 Transfer Request Letter to Jandovitz). She filed this action on January 6, 2014.

## ANALYSIS

### I.    Title VII and NYSHRL Claims

#### a.    Claims Against Jandovitz

The R&R recommends granting summary judgment in favor of Defendants on Plaintiff's claims against Jandovitz, as "individuals are not subject to liability under Title VII," R&R at 22 (quoting *Wrighten v. Glowski*, 232 F.3d 119, 120 (2d Cir. 2000)); and because Plaintiff's "unsubstantiated conclusory allegations" that Jandovitz participated in and condoned the discrimination, sexual harassment, and retaliation "are insufficient to support [her] state-law claims." R&R at 23. Defendants do not object to this recommendation. Finding no clear error, the Court adopts the R&R's recommendation. *Martinson*, 2005 WL 1309054, at *3.

---

[9] Defendants maintain that Jandovitz and Troche asked Plaintiff if she would like to be transferred to a different shift or position while ASH investigated her claim and that Plaintiff declined. Def. 56.1 ¶¶ 39–40. Plaintiff claims she was not offered a transfer until October 2012. Mayo Decl. ¶ 39.

### b. Title VII and NYSHRL Claims Against ASH

Defendants make numerous objections to the R&R's findings and recommendations regarding Plaintiff's claims against ASH. *See* ECF 135.

### i. Gender-Based Discrimination[10]

Where a plaintiff brings a Title VII discrimination claim based on disparate treatment but lacks direct evidence of discrimination, the *McDonnell Douglas* burden-shifting framework applies.[11] *See* R&R at 23–24; *Legg v. Ulster Cty.*, 820 D.3d 67, 72 (2d Cir. 2016); *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 82–83 (2d Cir. 2015). Plaintiff thus must first establish a prima facie case by showing, as relevant here, that "she suffered an adverse employment action; and [] that that the circumstances [gave] rise to an inference of discrimination." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000). The former requires Plaintiff to demonstrate that she "endure[d] a materially adverse change in the terms and condition of employment," which must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Vega*, 801 F.3d at 85 (internal quotation marks and citations omitted). Examples include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished

---

[10] Plaintiff attempts to connect ASH's decisions, made after she filed this action, to (1) outsource Firewatch Overtime work to third parties and (2) "cap" the amount of Window Overtime permitted for Storeroom employees, to her individual claims of discrimination. ECF 125 at 7–8 ("Clearly, Defendants have gone to great lengths to preclude Plaintiff from earning extra monies."). But these are business decisions, applicable to all ASH employees; and made to reduce overtime expenses. Faherty Reply Decl. Ex. A at 152. These decisions are neither "materially adverse change[s] in the terms and condition[s] of employment" so as to constitute adverse employment actions as to Plaintiff, *Vega*, 801 F.3d at 85; nor has Plaintiff even attempted to compare herself to any similarly-situated individual to show an inference of discrimination. *Mandell v. Cty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003).
[11] As described in the R&R, this framework requires a plaintiff to demonstrate a prima facie case of discrimination by showing "(1) she is a member of a protected class; (2) she is qualified for her position; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). The burden then shifts to the employer to "articulate some legitimate, nondiscriminatory reason" for the disparate treatment. *McDonnell Douglas*, 411 U.S. at 802. "If the employer articulates such a reason for its actions, the burden shifts back to the plaintiff to prove that the employer's reason 'was in fact pretext' for discrimination." *Vega*, 801 F.3d at 83 (quoting *McDonnell Douglas*, 411 U.S. at 804).

material responsibilities, or other indices unique to a particular situation." *Id.* (internal quotation marks and citations omitted). To show an inference of discrimination through disparate treatment evidence, Plaintiff must demonstrate that "she was similarly situated in all material respects to the individuals with whom she seeks to compare herself." *Mandell v. Cty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003).

Plaintiff concedes that all Storeroom employees "were offered equal amounts of storeroom window overtime" which she consistently accepted; and that Firewatch Overtime paid the same hourly rate as Window Overtime. Pl. Counter 56.1 ¶ 19; Def. 56.1 ¶ 67; *see* Faherty Decl. Ex. B at 104–105. Indeed, payroll records reflect that Plaintiff "had the highest or second highest amount of overtime in the Store Room in years 2011, 2012 and 2013 and the highest number of hours in 2015." Def. 56.1 ¶ 19; *see* Faherty Decl. Ex. E (Payroll Record Summary Chart of Storeroom Employees). But that is not enough; Plaintiff claims that the denial of Firewatch Overtime amounts to gender discrimination: (a) ASR's reason was "because she is a woman and because ASR did not want wom[e]n performing firewatch," (b) overtime "was always assigned by [s]eniority in the Storeroom and it was only changed to shared overtime after Plaintiff complained about being excluded from Firewatch;"[12] and (c) ASR declined to grant Plaintiff Firewatch Overtime even after changing the policy to require shared overtime, and did so because of her gender. Pl. Counter 56.1 ¶¶ 16–19.

The R&R did not accept the evidence showing Plaintiff's substantial overtime received and performed as dispositive, but rather "[i]t is the opportunity to perform overtime work assignments the plaintiff did not receive because of her sex that is material to her claim and

---

[12] Plaintiff testified that "[b]ased on the members that [were] in the [S]toreroom" when she joined it in 2005, she understood that overtime was allocated based on seniority. Goddard Decl. Ex. 5 at 41:16–43:25, 59:8–10. She claims that when Smith became her supervisor in 2010, he changed how overtime was allocated and instead required it to be shared. *Id.* at 52:2–16, 53:4–25, 59:24–25.

disputed." R&R at 25. The R&R finds that the CBA, which does not identify either Firewatch or Window Overtime by name, does not sufficiently support ASH's Process Manager's sworn statement that the CBA "provides that routine overtime assignments are to be shared" among Storeroom employees. *Id.* at 25–26. The R&R concludes: "the facts concerning overtime assignments and the eligibility for same are disputed, [so] whether the plaintiff suffered an adverse employment action by being deprived of overtime work assignments in favor of her male co-workers is disputed and cannot be resolved on this record." *Id.* at 26.

Defendants make numerous objections. They first claim that the R&R erroneously ignored Plaintiff's admissions during her deposition that the CBA requires overtime to be shared and that she had no right of first refusal based on seniority." ECF 135 at 3. Second, Defendants contend that the R&R "overlooked Plaintiff's failure to present any evidence to refute Defendants' evidentiary showing;" and argue that Plaintiff makes only conclusory allegations and fails to specify when she was deprived of overtime aside from a vague "6-7 weeks," "how much overtime was lost, and whether the overtime was offered instead to a male co-worker." *Id.* at 4. Finally, Defendants argue that even assuming Plaintiff had made a prima facie showing of discrimination, the R&R overlooked Plaintiff's failure to show that Defendants' non-discriminatory reason for not offering her Firewatch Overtime – i.e., that Plaintiff was not qualified but that Shepherd, who had welding experience, was qualified – was pretextual, as required by *McDonnell Douglas*. ECF 135 at 7.

The Court sustains Defendants' objections. As an initial matter, neither the six- or seven-week time period in which Plaintiff claims not to have received *any* overtime, nor Plaintiff's two-week transfer to the sanitation department, support a prima facie case of discrimination.

First, the Court struggles to identify the specific time period upon which the former is based.[13]

Plaintiff's inconsistent and conclusory allegations, unsupported by any evidence other than her

claim that her three male co-workers received overtime during whatever period upon which she

bases this assertion, are insufficient to defeat summary judgment. *Gorzynski*, 596 F.3d at 101.

Second, while Plaintiff now characterizes her transfer to the sanitation department as a

"temporary demotion," Plaintiff *requested* that transfer; and has not submitted any evidence

showing that she was paid at a lower hourly rate. *See* Faherty Reply Decl Ex. C; *Vega*, 801 F.3d

at 85.

The CBA clearly requires shared overtime, and the record confirms that Plaintiff received her

full share. Even assuming *arguendo* that the CBA *did* grant Plaintiff a right of first refusal based

on seniority, "that was a right granted to [her] under the CBA, not Title VII." *Silva*, 509 F. Supp.

2d at 382. "[D]enials of overtime requests, 'without more,' are not adverse employment actions

where the plaintiff 'fails to allege facts plausibly indicating that she suffered any material

detriment as a result of being denied overtime, such as opportunities for career advancement.'"

*Alice Carrington v. Jeannette Mota and City of N.Y.*, No. 16-cv-8061 (GBD/JLC), 2017 WL

3835883, at *9 (S.D.N.Y. Aug. 31, 2017) (quoting *Henry v. N.Y.C. Health & Hosp. Corp.*, 18 F.

Supp. 3d 396, 406 (S.D.N.Y. 2014)). Firewatch Overtime paid no more than Window Overtime.

Faherty Decl. Ex. B. at 104–05. The denial of Firewatch Overtime simply does not rise to the

level of an adverse employment action where Plaintiff was consistently offered, performed, and

was compensated for Window Overtime at the same rate. She has not shown that the denial

---

[13] Plaintiff describes this time period as having occurred in October 2011; or sometime generally in 2012; or possibly during her leave of absence from June 6, 2012 to August 13, 2012. *See* Faherty Decl. Ex. B at 113:4–25; Pl. Counter 56.1 ¶ 22; ECF 125 at 8 (citing "the loss of pay Plaintiff incurred when she was forced out on sick leave due to the stress her work environment caused her" as one event that, when viewed cumulatively with others, constitutes an adverse employment action).

caused her to suffer any material detriment or material changes in the terms and conditions of her employment. *Carrington*, 2017 WL 3835883, at *9; Faherty Decl. Ex. E; *Vega*, 801 F.3d at 85.

Further, Plaintiff has not shown that the denial of Firewatch Overtime gives rise to an inference of discrimination. Plaintiff fails to show that she "was similarly situated in all material respects to [Shepherd,] with whom she seeks to compare herself:" put simply, regardless of whether Firewatch Overtime formally required welding experience, Shepherd had such experience; but Plaintiff did not. *Mandell*, 316 F.3d at 379; *see* Troche Aff. ¶¶ 18–19. Moreover, the fact that Plaintiff received substantial overtime, often more than at least two of her male co-workers, undermines any alleged inference of discrimination. *See* Faherty Decl. Ex. E; *Silva v. Peninsula Hotel*, 509 F. Supp. 2d 364, 382 (S.D.N.Y. 2007) (no inference of discrimination where Hispanic plaintiff's claim rested on fact that two Caucasian employees with less seniority received more overtime; CBA did not grant plaintiff any right based on seniority; and another Hispanic employee was assigned the most overtime in two years and substantial overtime in a third year); *Armstrong v. Metro Trans. Auth.*, No. 07-CV-3561 (DAB), 2014 WL 4276336, at *16, (S.D.N.Y. Aug. 28, 2014) (no inference of discrimination where plaintiff failed to articulate specific overtime opportunities given to Caucasian or male employees). Finally, the affidavits of two former supervisors are insufficient to rescue Plaintiff's claims. Paniccia avers that Plaintiff "complained to me about not being given firewatch overtime and that *she believed that it was because she was a woman*." Paniccia Aff. ¶ 4 (emphasis added). The instances of gender discrimination averred by Gaffney are vague and unspecific.[14] A rational trier of fact, viewing

---

[14] Gaffney claims, *inter alia*, (1) to "know" that the reason Plaintiff was not assigned Firewatch Overtime "is because she is a woman;" (2) to have witnessed an unspecified supervisor tell Plaintiff that she could not work Firewatch Overtime "because she was a woman, and [it] was 'men's work;'" (3) that he "saw other female employees also be refused certain overtime work because it was considered 'men's work'" and maintains that he "told the aforementioned ASR supervisors that I heard them say such things, and that they would not discriminate against women . . . . [but] [t]he ASR supervisors held fast to their position;" and (4) that "ASR Management supported their discriminatory position." Gaffney Aff. ¶¶ 15–20.

"the record taken as a whole," would not find an inference of discrimination. *Matsushita*, 475 U.S. at 587; *see Gorzynski*, 596 F.3d at 101.

Finally, even if Plaintiff had established a prima facie case, Plaintiff has not demonstrated that the legitimate reason articulated by Defendants was pretext. *Vega*, 801 F.3d at 83; *see Gorzynski*, 596 F.3d at 101; *Silva*, 509 F. Supp. 2d at 383 (adopting recommendation to dismiss where R&R stated: "Even if Plaintiff could make out a *prima facie* case of discrimination in the assignment of Special Project overtime, the Hotel has articulated a nondiscriminatory reason for denying Plaintiff a greater proportion of the available overtime, namely that he did not possess the necessary skills to complete the work . . . Plaintiff does not offer any evidence in rebuttal."). Regardless of whether Firewatch Overtime formally required welding skills, Defendants have articulated a legitimate reason for preferring an employee who has welding skills help with "welding, cutting, or grinding" work. Mendonca Decl. ¶ 3. Plaintiff has not submitted rebuttal evidence to overcome that reason.

Based on the record as a whole, no reasonable juror could conclude that Plaintiff was discriminated against based on her gender in the assignment of Firewatch Overtime. *Matsushita*, 475 U.S. at 587; *Gorzynski*, 596 F.3d at 101.

### ii.  Hostile Work Environment

Proof of a hostile work environment claim requires that (1) the harassment was both objectively and subjectively "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment;" and (2) "a specific basis exists for imputing the conduct that created the hostile environment to the employer." *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997); *see Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (explaining that first prong has both objective and subjective components).

16

"[T]he analysis of severity and pervasiveness looks to the totality of the circumstances."

*Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 547 (2d Cir. 2010). "[E]specially in the context of a

claim of sexual harassment, where state of mind and intent are at issue, the court should not view

the record in piecemeal fashion." *Id.* at 548 (internal quotation marks omitted). In such cases,

"summary judgment should be used sparingly . . . the question of whether a work environment is

*sufficiently* hostile to violate Title VII is one of fact." *Redd v. N.Y. Div. of Parole*, 678 F.3d 166,

178 (2d Cir. 2012) (internal quotation marks and citations omitted) (emphasis in original).

Repeated sexual comments and gestures may create a hostile environment. *See, e.g., Kaytor*, 609

F.3d at 553. "Absent certain defenses . . . an employer is presumed to be responsible where the

perpetrator of the harassment was the plaintiff's supervisor." [15] *Id.*

The R&R finds that Smith's comments are "sufficiently egregious," alone and in the

aggregate, "to satisfy the first element of a hostile work environment;" nor is it a defense that the

comments were made during a short four-month period within Plaintiff's 26 years of

employment. R&R at 27. Further, the R&R finds that disputed facts exist regarding when ASH

knew of the alleged sexual harassment, precluding summary judgment. *Id.* at 27–28.

Defendants' first objection is repetitive: that even assuming that Smith made the alleged

comments, they occurred "during a relatively brief period from February to May 2012" and were

not sufficiently severe or pervasive. ECF 135 at 8. Defendants also argue that the R&R

overlooked that ASH did not learn of Plaintiff's allegations until 2012 and subsequently

promptly conducted an investigation. *Id.* at 9–10. Further, Defendants contend that the R&R

---

[15] Defendants do not raise the *Faragher/Ellerth* affirmative defense, which requires a showing that "(1) 'the employer exercised reasonable care to prevent and correct promptly any [discriminatory] harassing behavior,' and (2) 'the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.'" *Gorzynski*, 596 F.3d at 104 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998)). Instead, despite the fact that Smith was Plaintiff's supervisor, Defendants and the R&R both cite and employ the legal standard applicable to harassing co-workers. *See* ECF 116 at 26; ECF 135 at 10; R&R at 26–28.

failed to consider ASH's thorough investigation; and thus erroneously concluded that liability can be imputed to ASH. *Id.* at 10.

The Court rejects Defendants' objections. Defendants' first objection "simply reiterates the original arguments" considered and rejected by Magistrate Judge Fox; and the Court finds no clear error in the determination that Smith's alleged comments were sufficiently severe or pervasive to create a hostile work environment. *Pinkney*, 2008 WL 2811816, at *1; *see Kaytor*, 609 F.3d at 553–55. Moreover, the facts underlying Defendants' argument that the comments were made over a four-month period are disputed: Plaintiff contends that sexual harassment began in 2008. *See* Pl. Counter 56.1 ¶¶ 24–25; Mayo Decl. ¶ 13. Regardless, a rational juror viewing the evidence in the light most favorable to Plaintiff could find the alleged comments, even if made during several months, sufficiently severe. *See Gorzynski v.* 596 F.3d at 102–03; *Kaytor*, 609 F.3d at 550.

Defendants' second objection is contradicted by the record. The R&R correctly found that disputed facts exist regarding when ASH learned of the alleged harassment. Defendants maintain that Plaintiff's August 9, 2012 letter was the first time she indicated she had been sexually harassed by an ASH employee. Def. 56.1 ¶ 35. But Plaintiff claims she previously complained of sexual harassment to two other supervisors, both of whom aver that Plaintiff complained of such conduct as early as 2010; one avers that he relayed Plaintiff's complaints to HR and received no response. Pl. Counter 56.1. ¶¶ 24–25, 35; Mayo Decl. ¶ 13; Gaffney Aff. ¶ 13; Paniccia Aff. ¶¶ 2–3. Moreover, Plaintiff avers she called ASH's hotline in May 2012. Mayo Decl. ¶ 14; Pl. Counter 56.1 ¶¶ 14, 25. These actions complied with ASH's protocols. *See* Faherty Decl. Ex. J at 5. Though Plaintiff has identified approximately five instances that she testified occurred in 2012, her affidavit and those of her former supervisors urge that there

existed other instances. On these facts, summary judgment is inappropriate. *See Holcomb*, 521

F.3d at 137; *Kaytor*, 609 F.3d at 550.

Moreover, regardless of when ASH learned of Plaintiff's complaints, and regardless of the

sufficiency of the investigation performed, Smith's supervisory status imputes liability for his

conduct to ASH. *Gorzynski*, 596 F.3d at 103.

The Court thus adopts the R&R's recommendation to deny summary judgment on Plaintiff's

hostile work environment claim.[16]

### iii. Retaliation

Retaliation claims are analyzed under the *McDonnell Douglas* burden-shifting framework.

*Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843–44 (2d Cir. 2013). To establish a prima

facie case of retaliation, a plaintiff must show "(1) participation in a protected activity; (2) the

defendant's knowledge of the protected activity; (3) an adverse employment action; and (4) a

causal connection between the protected activity and the adverse employment action." *Id.* at 844

(internal quotation marks and citation omitted). In the retaliation context, an adverse

employment action is one that "could well dissuade a reasonable worker from making or

supporting a charge of discrimination." *Vega*, 801 F.3d at 90 (citing *Burlington N. & Santa Fe

Ry. Co. v. White*, 548 U.S. 53, 57 (2006)). The fourth element requires proof that "the desire to

retaliate was the but-for cause of the challenged employment action." *Univ. of Tex. Sw. Med.

Ctr. v. Nassar*, 133 S. Ct. 2517, 2528 (2013).

The R&R recommends denying summary judgment on Plaintiff's retaliation claim, finding:

> Although it is undisputed that the plaintiff filed various grievances, it is disputed: (a)
> when the plaintiff made complaints about Smith's disparate treatment of her in
> connection with her rejection of his sexual advances and based on her sex; (b) when the

---

[16] The R&R does not address any of the other allegations on which Plaintiff bases her hostile work environment claim. *See* ECF 125 at 16–17. The Court declines to do so now; the fact-finder will assess Plaintiff's credibility on these issues and determine their applicability to the hostile work environment. *See Kaytor*, 609 F.3d at 550.

defendants had knowledge of the plaintiff's complaints; (c) whether the plaintiff suffered an adverse employment action; and (d) whether a causal connection exists between the plaintiff's complaints and any adverse employment action.

R&R at 29. Defendants object to this finding, arguing, *inter alia*, that there is no adverse employment action: Plaintiff's temporary (two-week) transfer to the sanitation department, which she requested, cannot constitute an adverse employment action. ECF 135 at 11.

The Court sustains Defendants' objections. The Court has determined that neither Plaintiff's temporary transfer nor the denial of Firewatch Overtime are adverse actions; and the Court concludes that none of the additional events upon which Plaintiff asserts her retaliation claim are adverse.[17] *See* ECF 125 at 20. Plaintiff's unsubstantiated claim that Smith made cleaning the Storeroom her sole responsibility does not constitute an adverse employment action because, as Plaintiff testified, cleaning is a routine task required of all Storeroom employees; it is thus not "a materially adverse change in the terms and condition of [her] employment." *Vega*, 801 F.3d at 85; *see* Faherty Decl. Ex. B at 253:23–254:7. Nor has Plaintiff provided sufficiently specific evidence from which a trier of fact could find any causal connection. Finally, ASH's unrelated decisions to reduce business expenses by (a) outsourcing Firewatch Overtime to third parties and (b) limiting the amount of Window Overtime Storeroom employees could receive are not adverse actions. *Vega*, 801 F.3d at 85; *Carrington*, 2017 WL 3835883, at *9. Furthermore, there is no reliable evidence connecting these decisions to Plaintiff's complaints. *Univ. of Tex.*, 133 S. Ct. at 2528; Faherty Reply Decl. Ex. A at 152.

No reasonable trier of fact could find that Plaintiff has established a prima facie case of retaliation. *Matsushita*, 475 U.S. at 587; *Gorzynski*, 596 F.3d at 101.

---

[17] To the extent Plaintiff still relies on her allegation that Smith retaliated against her by failing to submit Plaintiff's overtime pay, resulting in delayed payment, *see* Am. Compl. ¶ 83, this is insufficient to defeat summary judgment. Plaintiff fails to provide any supporting evidence; and only briefly mentions this in her opposition papers. ECF 125 at 20. Moreover, these untimely paycheck issues were not unique to Plaintiff. *See* Troche Aff. ¶ 29.

## CONCLUSION

For the foregoing reasons, regarding Plaintiff's Title VII and NYSHRL claims, the Court adopts the R&R's recommendation to grant Defendants summary judgment on the claims against Jandovitz; adopts the R&R's recommendation to deny Defendants' motion respecting the hostile work environment claim against ASH; and sustains Defendants' objections regarding the discrimination and retaliation claims against ASH.

Accordingly, the Court GRANTS summary judgment in favor of Defendants on Plaintiff's Title VII and NYSHRL claims against Jandovitz; DENIES summary judgment to Defendants on Plaintiff's Title VII and NYSHRL hostile work environment claim against ASH; and GRANTS summary judgment in favor of Defendants on Plaintiff's Title VII and NYSHRL discrimination and retaliation claims against ASH.

The Court dismisses Plaintiff's NYCHRL claims as the City law has no application outside New York City's limits.

The parties are directed to appear at a status conference at 10:30 a.m. on October 12, 2017 in Courtroom 14C to set a date for trial. The Clerk of Court is directed to terminate all pending motions.

Dated: New York, New York                         SO ORDERED

       September 18, 2017

PAUL A. CROTTY

United States District Judge