UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROSANNA MAYO-COLEMAN,

                Plaintiff,

vs.

AMERICAN SUGARS HOLDING, INC. and
ROBERT JANDOVITZ,

                Defendants.

Civil Action No. 14-cv-0079 (PAC)

Electronically Filed


PLAINTIFF'S MEMORANDUM
IN OPPOSITION TO DEFENDANTS' MOTION IN LIMINE


Dated: Rhinebeck, New YOrk
       January 24, 2018

Nathaniel K. Charny (NC 5664)
Charny & Wheeler
9 West Market Street
Rhinebeck, New York 12572
Tel - (845) 876-7500
Fax - (845) 876-7501
ncharny@charnywheeler.com

Attorneys for Plaintiff Rosanna Mayo-Coleman

TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION .................................................................................................................1

ARGUMENT .........................................................................................................................1

POINT I

DR. GOLDSTEIN'S REPORT AND
TESTIMONY ARE ADMISSIBLE ......................................................................................1

    A.    Standard of Review ..................................................................................1

    B.    Dr. Goldstein's Impeccable Reputation and Expertise ............................2

    C.    Dr. Goldstein Did Perform a Differential Diagnosis ...............................3

    D.    Munafo is Readily Distinguishable ..........................................................7

    E.    Psychological Testing is Not Per Se Obligatory ......................................9

    F.    Conclusion ...............................................................................................11

POINT II

THE EGGSHELL PLAINTIFF DOCTRINE
APPLIES TO GENDER-BASED HOSTILE
WORK ENVIRONMENT DAMAGES ................................................................................12

CONCLUSION ......................................................................................................................16

## TABLE OF AUTHORITIES

Adeghe v. Janssen Pharm., Inc.,
No. 16 CIV. 2235 (LGS), 2017 WL 3741310 (S.D.N.Y. Aug. 30, 2017),
reconsideration denied, No. 16 CIV. 2235 (LGS), 2017 WL 4839063
(S.D.N.Y. Oct. 24, 2017) ................................................................................................ 4, 10

Amorgianos v. Nat'l R.R. Passenger Corp., 303 F.3d 256, 265 (2d Cir. 2002) ........................ 2, 11

Argonaut Ins. Co. v. Samsung Heavy Indus. Co.,
929 F. Supp. 2d 159 (N.D.N.Y. 2013) ............................................................................. 9, 10

Baker v. Metro-N. R. Co.,
No. 98 CIV 1073 (RNC), 2003 WL 22439730 (D. Conn. Oct. 23, 2003) ............................. 7

Benjumen, 408 B.R. 9, 20 (Bankr.E.D.N.Y.2009) ........................................................................ 9

Brady v. Wal-Mart Stores, Inc.,
455 F.Supp.2d 157, 197 (E.D.N.Y. 2006), aff'd, 531 F.3d 127 (2d Cir. 2008) ................... 12

Cohalan v. Genie Indus., Inc.,
No. 10 CIV. 2415 JMF, 2013 WL 829150 (S.D.N.Y. Mar. 1, 2013) .................................... 9

Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993) ..................................................... 1, 12

DeRienzo v. Metro. Transp. Auth., 694 F. Supp. 2d 229 (S.D.N.Y. 2010) .................................... 4

Figueroa v. Boston Sci. Corp., 254 F. Supp. 2d 361 (S.D.N.Y. 2003) .......................................... 4

Fink v. City of New York, 129 F.Supp.2d 511 (E.D.N.Y. 2001) .................................................. 12

Floyd v. City of New York, 861 F. Supp. 2d 274 (S.D.N.Y. 2012) ................................................ 2

Hewitt v. Metro-N. Commuter R.R., 244 F. Supp. 3d 379 (S.D.N.Y. 2017). ................................. 4

Jenson v. Eveleth Taconite Co., 130 F.3d 1287 (8th Cir. 1997) .................................................. 14

Katt v. City of New York, 151 F. Supp. 2d 313, n.31 (S.D.N.Y. 2001) ....................................... 12

Krohn v. New York City Police Dep't, 60 F. App'x 357 (2d Cir. 2003) ...................................... 12

Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137 (1999) ........................................................... 1

Lappe v. Am. Honda Motor Co., Inc., 857 F. Supp. 222 (N.D.N.Y.1994) .................................... 9

McCullock v. H.B. Fuller Co., 61 F.3d 1038 (2d Cir. 1995) ..................................................... 5, 7

McKinnon v. Kwong Wah Rest., 83 F.3d 498 (1st Cir. 1996) ...................................................... 15

Munafo v. Metro. Transp. Auth.,
No. 00 CIV 0134 (ERK), 2003 WL 21799913 (E.D.N.Y. Jan. 22, 2003) ................................. 7, 8

O'Connell v. Onondaga Cty.,
No. 5:09-CV-364 FJS/ATB, 2013 WL 998598 (N.D.N.Y. Mar. 13, 2013) .................................. 8

O'Loughlin v. USTA Player Dev. Inc.,
No. 14 CV 2194 (VB), 2016 WL 5416513 (S.D.N.Y. Sept. 28, 2016) ....................................... 10

Omeprazole Patent Litig.,
490 F.Supp.2d 381 (S.D.N.Y.2007), aff'd, 281 F. App'x 974 (2d Cir. 2008) ............................... 9

Paoli R.R. Yard PCB Litig., 35 F.3d 717 (3d Cir.1994) ................................................................. 9

Perkins v. Origin Medsystems, Inc., 299 F. Supp. 2d 45 (D. Conn. 2004) ..................................... 7

Qube Films Ltd. v. Padell,
No. 13 CIV. 8405 (AJN), 2016 WL 888791 (S.D.N.Y. Mar. 1, 2016) ...................................... 1, 2

Ragin v. Macklowe Real Estate Co., 6 F.3d 898 (2d Cir. 1993) .................................................. 14

Stampf v. Long Island R. Co., 761 F.3d 192 (2d Cir. 2014) ......................................................... 13

Tchatat v. City of New York, 315 F.R.D. 441 (S.D.N.Y. 2016) .................................................... 10

Tobin v. Steisel, 64 N.Y.2d 254 (1985) ......................................................................................... 13

Vazquez v. City of New York,
No. 10 CIV. 6277 (JMF), 2014 WL 4388497 (S.D.N. Y. Sept. 5, 2014) ...................................... 2

Williamson v. Handy Button Machine Company,
817 F.2d 1290 (7th Cir. 1987) ....................................................................................................... 14

Wren v. Spurlock, 798 F.2d 1313 (10th Cir. 1986) ....................................................................... 14

INTRODUCTION

Plaintiff Rosanna Mayo-Coleman submits this memorandum along with the Declaration of Robert Lloyd Goldstein, M.D., P.C. and Declaration of Nathaniel K. Charny, all in opposition to Defendants motion in limine.

ARGUMENT

POINT I

DR. GOLDSTEIN'S REPORT AND TESTIMONY ARE ADMISSIBLE

A.     Standard of Review

In evaluating expert testimony the Court acts as a gatekeeper to "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 597 (1993).

The reliability inquiry envisioned by Daubert is "a flexible one," id. at 594, and the factors to be considered "depend[ ] upon the particular circumstances of the particular case at issue." Qube Films Ltd. v. Padell, No. 13 CIV. 8405 (AJN), 2016 WL 888791, at *1 (S.D.N.Y. Mar. 1, 2016) (quoting Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 150 (1999)).

In Kumho, the Supreme Court pointed to factors a court may consider in conducting this inquiry, including whether a theory has been subject to peer review and publication, whether there is a known error rate, whether there are governing standards, and whether the method enjoys "general acceptance" within a "relevant scientific community." Id. at 149-50 (citing Daubert, 509 U.S. at 592-594).

These factors do not constitute a "definitive checklist or test." Id. at 150 (citing Daubert, 509 U.S. at 593).

In the instant context -- psychological and psychiatric evidence -- Courts have recognized that certain of these Daubert factors are less readily applied because in this field "the research, theories and opinions cannot have the exactness of [other] science methodologies." Qube Films Ltd. v. Padell, No. 13 CIV. 8405 (AJN), 2016 WL 888791, at *2 (S.D.N.Y. Mar. 1, 2016) (citing authority).

Judge Nathan explains in Qube Films:  "Acknowledging that not all fields of expertise are equally quantifiable, the Second Circuit has emphasized that courts evaluating expert testimony should focus on 'the indicia of reliability identified in Rule 702, namely, (1) that the testimony is grounded on sufficient facts or data; (2) that the testimony 'is the product of reliable principles and methods'; and (3) that 'the witness has applied the principles and methods reliably to the facts of the case.' Amorgianos v. Nat'l R.R. Passenger Corp., 303 F.3d 256, 265 (2d Cir. 2002) (quoting Fed. R. Evid. 702).  This "flexible Daubert inquiry gives the . . . court the discretion needed to ensure that the courtroom door remains closed to junk science while admitting reliable expert testimony." Qube Films, supra at *2.

Even in light of Daubert and its progeny, "exclusion [of expert testimony] remains 'the exception rather than the rule.'" Vazquez v. City of New York, No. 10 CIV. 6277 (JMF), 2014 WL 4388497, at *12 (S.D.N. Y. Sept. 5, 2014) (quoting Floyd v. City of New York, 861 F. Supp. 2d 274, 287 (S.D.N.Y. 2012)).  Instead, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Qube Films Ltd., 2016 WL 888791, at *2 (S.D.N.Y. Mar. 1, 2016) (quoting Daubert, 509 U.S. at 596).

B. <u>Dr. Goldstein's Impeccable Reputation and Expertise</u>

Dr. Goldstein's CV is submitted as Exhibit 1 to the Declaration of Nathaniel K. Charny, his expert report at issue is submitted as Exhibit 2 to the Charny Declaration (referred to and cited as the Goldstein Report), and his complete deposition transcript is submitted as Exhibit 3 to the Charny Declaration (referred to and cited as the Goldstein Deposition).

Even putting aside the fact that Defendants' counsel has repeatedly used Dr. Goldstein as an expert witness in similar cases, Goldstein Decl., ¶¶ 20-21, Dr. Goldstein's reputation and expertise are impeccable.

Dr. Goldstein is a Board-Certified physician in psychiatry in practice for more than 40 years. Dr. Goldstein is currently Clinical Professor of Psychiatry (the highest academic rank for voluntary faculty) at Columbia University's College of Physicians and Surgeons. For the last 20 years Dr. Goldstein has directed the program "Legal and Ethical Issues in the Practice of Psychiatry." Goldstein Decl., ¶ 1. Dr. Goldstein also has a juris doctor degree from Columbia Law School. Charny Decl., Ex. 1.

Dr. Goldstein teaches postgraduate fellows in Forensic Psychiatry and has authored over 90 publications in the forensic psychiatry literature. Goldstein Decl., ¶ 1; <u>see also</u> Charny Decl., Ex. 1 (for list of all publications etc.).

Dr. Goldstein has over 40 years of clinical experience treating patients and also extensive experience conducting forensic psychiatric evaluations and testifying at trials. <u>Id.</u>

Dr. Goldstein's testimony has never been precluded in hundreds of trials in which he has testified. Goldstein Decl., ¶ 2.

      C.      <u>Dr. Goldstein Did Perform a Differential Diagnosis</u>

Defendants first argue that Dr. Goldstein's conclusions are unreliable because Dr. Goldstein did not perform a differential diagnosis. This argument is contrary to fact and law.

A differential diagnosis is "a patient-specific process of elimination that medical practitioners use to identify the most likely cause of a set of signs and symptoms from a list of possible causes." <u>Adeghe v. Janssen Pharm., Inc.</u>, No. 16 CIV. 2235 (LGS), 2017 WL 3741310, at *4 (S.D.N.Y. Aug. 30, 2017), <u>reconsideration denied,</u> No. 16 CIV. 2235 (LGS), 2017 WL 4839063 (S.D.N.Y. Oct. 24, 2017); <u>see also</u> <u>Hewitt v. Metro-N. Commuter R.R.</u>, 244 F. Supp. 3d 379, 383 (S.D.N.Y. 2017).

Notably -- and equally as well established --, "an expert need not rule out every potential cause in order to satisfy <u>Daubert</u> . . ." and instead, "the expert's testimony must at least address obvious alternative causes and provide a reasonable explanation for dismissing specific alternate factors identified by the defendant." <u>DeRienzo v. Metro. Transp. Auth.</u>, 694 F. Supp. 2d 229, 236 (S.D.N.Y. 2010) (citing authority).

Putting aside whether a differential diagnosis was even required, <u>cf.</u> <u>Figueroa v. Boston Sci. Corp.</u>, 254 F. Supp. 2d 361, 367 (S.D.N.Y. 2003) (failure to rule out alternative causes would go only to the weight of the evidence where the expert had formed an otherwise reliable opinion), as a matter of fact Dr. Goldstein did perform such analysis. Goldstein Depo., p. 110; Goldstein Report, seriatum; Goldstein Decl.; ¶¶ 10-12, 15-18. And, as discussed below, Dr. Goldstein's testimony provides a more than reasonable explanation for dismissing the "specific alternative factors identified by the defendant." <u>DeRienzo</u>, 694 F.Supp. 2d at 236.

In regard to sexual abuse at age 14 and the subsequent abortion, in his report Dr. Goldstein acknowledges same as part of his comprehensive psychiatric interview. Goldstein

4

Report, p. 2 (noting that Plaintiff had "no psychiatric attention at the time"). Dr. Goldstein explains that because of the time frame between the sexual abuse and the workplace events at issue here the decades-old sexual abuse is definitively not the "cause of depression 40 years later." Goldstein Depo., pp. 114-115; Goldstein Decl., ¶¶ 10-11. This psychiatric conclusion is relatively rote. Goldstein Decl., ¶ 11 ("It would be completely speculative and unwarranted to draw any conclusion that there was a simple causal chain between her childhood experiences and the onset of a depressive illness requiring treatment many decades later.").

Instead, Dr. Goldstein explains at his deposition that such events are a predisposing factor; they make the Plaintiff an eggshell plaintiff (discussed in more detail below in argument point II). Dr. Goldstein testifies:

> Q. Would that be a factor in determining what caused her to suffer from major depressive disorder?
>
> A. Well, as I said earlier, any victim of sexual assault at an early age is more likely and at risk to develop psychiatric problems later in life, I mean have much higher incidence and risk of psychiatric problems later in their adult life.
>
> Q. Would a belief that an abortion has prevented you, or has rendered you sterile be a factor in a depressive episode?
>
> A. It's conceivable that that might have also been a, let's call it a predisposing factor that made it more likely that in later life under the, you know, appropriate stressful circumstance might predispose her to develop the depression.

Goldstein Depo., p. 14; Goldstein Decl., ¶ 11.

And while Defendants' non-MD expert may think otherwise, that is for the battle of examination and cross-examination. McCullock v. H.B. Fuller Co., 61 F.3d 1038, 1044 (2d Cir. 1995).

5

Regarding the 2000 attempted suicide, Dr. Goldstein took this into account in his differential diagnosis, Goldstein Depo., p. 117, and determined that it was not the cause of the current diagnosis of depressive disorder, id. Dr. Goldstein explained at his deposition:

> Q. Did you take into account Ms. Mayo-Coleman's suicide attempt in 2000, when reaching your conclusion regarding the causal nexus between Ms. Coleman's depressive disorder and her allegations about Mr. Smith?
>
> A. Yes, I took it into account.
>
> Q. To what extent did you take it into account?
>
> A. Just that it was part of her history. I don't think it had any causative role in triggering her major depressive disorder.
>
> Q. And you don't believe that it was any indication of psychological issues at the time, correct?
>
> A. You mean in 2000?
>
> Q. Yes.
>
> A. It was indicative of psychiatric issues, obviously, but it was not indicative that she had a psychiatric illness at the time.

Goldstein Depo., pp. 116-117; see also Goldstein Decl. ¶ 12.

Dr. Goldstein similarly explained how he analyzed the suicide attempt as outside the scope of a depressive disorder.

> Q. Do you have any particular reason why a suicide attempt would not be indicative of a depressive disorder?
>
> A. Many, many, many people make suicide gestures or attempts who are not suffering from any psychiatric disorder or specifically a depressive disorder. And the fact that it was an isolated incident, it may have been impulsive, it was very circumscribed in nature, there was no persistence of, you know, any psychiatric symptomatology, no repeat attempt; and lastly, required no intervention, either medical or psychiatric.

Goldstein Depo., pp. 116-117.

Regarding the death of her sister in 2013 (which occurred after the hostile work environment of 2012) Dr. Goldstein analyzed said data and concludes, more than reasonably, that "notwithstanding the presence of other psycho-social stressors in her life, such as the death of her sister in 2013," the earlier hostile work environment was "in and of itself[, a] substantial cause of the onset and persistence of her psychiatric condition."  Goldstein Report, p. 6.  Dr. Goldstein explains:  "Ms. Mayo-Coleman's sister's death occurred after the onset of her psychiatric illness and both my report and the Riverdale records noted that her sister's death exacerbated her symptoms."  Golstein Decl., ¶ 16.

It is evident from the record that Dr. Goldstein did in fact conduct a differential diagnosis, dealing with each of the issues that Defendants have raised as possible alternative causes of Plaintiff's diagnosed condition.  Goldstein Report, seriatim; Goldstein Depo., seriatum; Goldstein Decl., ¶¶ 10-12, 15-18.

Instead, what Defendants' take issue with, apparently, is the quality of that differential diagnosis.  However, "[d]isputes as to the . . .  faults in [Dr. Goldstein's] use of differential etiology as a methodology . . . go to the weight, not the admissibility, of his testimony."  McCullock, 61 F.3d at 1044; Baker v. Metro-N. R. Co., No. 98 CIV 1073 (RNC), 2003 WL 22439730, at *2 (D. Conn. Oct. 23, 2003); cf. Perkins v. Origin Medsystems, Inc., 299 F. Supp. 2d 45, 61–62 (D. Conn. 2004) (noting that expert witness distinguished childhood sexual abuse as cause, noting "although it is helpful to be aware of a patient's history of physical or sexual abuse, such information is only of limited potential use because approximately 25% of her patients report incidents of childhood sexual abuse, which Dr. Metzger believes is about the incidence of childhood sexual abuse in the general population").

>	D.	Munafo is Readily Distinguishable

To support this argument, Defendants rely almost exclusively on the Eastern District decision Munafo v. Metro. Transp. Auth., No. 00 CIV 0134 (ERK), 2003 WL 21799913 (E.D.N.Y. Jan. 22, 2003).  Munafo is readily distinguishable.

First, Munafo was a summary order issued in 2003.  Per the Second Circuit's Local Rules, citation to same in the Second Circuit is improper.  See 2d Cir. L.R. 32.1.1; see O'Connell v. Onondaga Cty., No. 5:09-CV-364 FJS/ATB, 2013 WL 998598, at *4 (N.D.N.Y. Mar. 13, 2013).  As with O'Connell, citation to same in this Court is suspect as well.

Second, and in any case, Munafo presents a very different set of facts.

In Munafo, the expert was a pharmocologist whose practice was limited to diagnosing and prescribing medication to treat conditions.  It ended up being essentially undisputed in Munafo that the expert was not qualified to opine on the cause of said condition(s).  The instant matter is quite different.  Dr. Goldstein is not only a treating psychiatrist with decades of experience diagnosing illness and causation, he has a law degree, and is experienced as a practitioner and instructor in forensic psychiatry -- the very vocation that is designed for the task at hand.

In addition, in Munafo, the expert admitted that he conducted no differential diagnosis of any sort.  The Court explains:  "During his deposition, Dr. Rao candidly admitted that he made no attempt to perform a differential diagnosis as to the cause of Munafo's alleged depression.  Despite a number of significant events and emotional traumas in Munafo's recent past, Dr. Rao utterly failed to investigate or even inquire as to how these factors may have contributed to his depression."  Munafo, 2003 WL 21799913, at *18-19.

The instant matter is quite different. Here, as discussed above, Dr. Goldstein is eminently qualified to testify as proposed and Dr. Goldstein did perform a differential diagnosis and has addressed and differentiated the events Defendants propose are potential alternative causes of the Plaintiff's condition.

      E.    <u>Psychological Testing is Not Per Se Obligatory</u>

In their final contention within this argument point, Defendants challenge Dr. Goldstein's methodology. Once parsed, the only argument being made here is that Dr. Goldstein should be excluded as a witness because he performed no psychological testing.

Here, Dr, Goldstein performed the following: (i) personal interview; (ii) medical record review; and (iii) background facts of past symptoms, behaviors, and experiences. Goldstein Decl., ¶¶ 3-6. Dr. Goldstein, reasonably and legitimately saw no need to perform such testing. Goldstein Depo., pp. 106-108. Dr. Goldstein explains:

> The keystone requirements of a good forensic psychiatric evaluation are i) conducting a psychiatric examination and ii) obtaining collateral sources of information (such as reviewing psychiatric treatment records and depositions) to corroborate the findings of the psychiatric examination. My methodology in this case satisfied both keystone requirements.

Goldstein Decl., ¶ 6.

It is well established that the absence of testing goes to the weight, not admissibility of the testimony. <u>Argonaut Ins. Co. v. Samsung Heavy Indus. Co.</u>, 929 F. Supp. 2d 159, 169–70 (N.D.N.Y. 2013); <u>Cohalan v. Genie Indus., Inc.</u>, No. 10 CIV. 2415 JMF, 2013 WL 829150, at *4 (S.D.N.Y. Mar. 1, 2013) (citing authority); <u>In re Omeprazole Patent Litig.</u>, 490 F.Supp.2d 381, 460 (S.D.N.Y.2007) (holding that for an expert's testimony to be admissible, the expert is "not required to perform every possible test"), <u>aff'd</u>, 281 F. App'x 974 (2d Cir. 2008) (summary order); <u>In re Benjumen</u>, 408 B.R. 9, 20 (Bankr.E.D.N.Y.2009) (same); <u>Lappe v. Am. Honda</u>

9

Motor Co., Inc., 857 F. Supp. 222, 228 (N.D.N.Y.1994); see also In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 761 (3d Cir.1994) ( "[T]o avoid exclusion of his or her opinion, [the experts] did not have to conduct every possible test to assess whether his or her view was correct so long as he or she employed sufficient diagnostic techniques to have good grounds for his or her conclusion....").

Citing authority, Judge Briccetti explains that as long as there are personal interviews and review of medical records, the "methods [are] generally acceptable bases for reaching an expert opinion related to a psychological condition."  O'Loughlin v. USTA Player Dev. Inc., No. 14 CV 2194 (VB), 2016 WL 5416513, at *5 (S.D.N.Y. Sept. 28, 2016) (citing authority).

As a matter of psychiatric expertise as well as jurisprudence under Daubert, Dr. Goldstein is correct that the patient interview/psychiatric assessment is the sine qua non of forensic psychiatry.  Goldstein Decl., ¶¶ 6-9.  Indeed, to the extent case law provides any per se requirements for experts, it appears to be the personal interview and examination.  See Tchatat v. City of New York, 315 F.R.D. 441, 446 (S.D.N.Y. 2016).  Even then, however, Courts have applied the liberal Daubert standard and allowed expert testimony even absent personal examination.  Adeghe v. Janssen Pharm., Inc., No. 16 CIV. 2235 (LGS), 2017 WL 3741310, at *4 (S.D.N.Y. Aug. 30, 2017), reconsideration denied, No. 16 CIV. 2235 (LGS), 2017 WL 4839063 (S.D.N.Y. Oct. 24, 2017); Argonaut Ins. Co. v. Samsung Heavy Indus. Co., 929 F. Supp. 2d 159, 169–70 (N.D.N.Y. 2013).

Finally, note that Dr. Goldstein (and a spate of experts) are dubious of psychological testing, especially as it relates to malingering.  Goldstein Decl., ¶ 9.  While the Defendants non-MD expert will undoubtedly argue otherwise, this is a matter for the fact finder.

Finally, Defendants' inclusion of an expert report written by Dr. Goldstein (at the behest of Defendants' law firm) in an entirely unrelated matter, with no background or detail is misleading, at best. Dr. Goldstein explains the basis of his conclusions in that case, which was remarkably different from the instant matter.

> In the case which the motion discusses and which attaches my expert report prepared for Defendants' law firm, I requested testing because there was strong suspicion that the Plaintiff, who suffered from an antisocial personality disorder and drug addiction, was malingering. Moreover, the opposing side's psychologist was criticized by me because that psychologist did not conduct any testing (which is what psychologists routinely rely on), did not perform a competent mental health examination, and did not review any of the available collateral sources of data (treatment records, depositions, etc.) to attempt to corroborate his conclusions. He really did solely rely on what the Plaintiff told him!

Goldstein Decl., ¶ 20.

Just as with Munafo, the instant matter presents materially inapposite circumstances.

F.  Conclusion

Once the hyperbole is removed, Defendants' motion in this argument point is that (i) Dr. Goldstein did not conduct a differential diagnosis and hence cannot testify as to causation and (ii) Dr. Goldstein's failure to conduct any psychological testing means he cannot testify as to Plaintiff's diagnosed condition.

As discussed above, Dr. Goldstein did conduct a differential diagnosis and while Dr. Goldstein decided to forego psychological testing, his examination and record review is more than sufficient to satisfy Daubert.

The Supreme Court and the Second Circuit are very clear that the standards for admissibility of this kind of expert testimony is expansive. "The judge should only exclude the evidence if the flaw is large enough that the expert lacks 'good grounds' for his or her

11

conclusions." Amorgianos v. Nat'l R.R. Passenger Corp., 303 F.3d 256, 267 (2d Cir. 2002) (citing authority).  "This limitation on when evidence should be excluded accords with the liberal admissibility standards of the federal rules and recognizes that our adversary system provides the necessary tools for challenging reliable, albeit debatable, expert testimony." Id.

The Supreme Court has explained, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Daubert, 509 U.S. at 596, 113 S.Ct. 2786.

POINT II

THE EGGSHELL PLAINTIFF DOCTRINE
APPLIES TO GENDER-BASED HOSTILE WORK ENVIRONMENT DAMAGES

Defendants second argument point in this motion asks this Court to conclude that the eggshell plaintiff doctrine does not apply to Title VII/New York Executive Law claims absent a physical injury.  This should be rejected based upon the overwhelming precedent holding otherwise.

Judge Orenstein -- affirmed by the Second Circuit -- explains the relevance of the eggshell plaintiff doctrine in those cases where there is no physical injury, holding:  "Such testimony could persuade the jury that a lifetime of struggling with his condition left Brady particularly susceptible to emotional harm flowing from the discrimination to which the defendants subjected him." Brady v. Wal-Mart Stores, Inc., 455 F.Supp.2d 157, 197 (E.D.N.Y. 2006), aff'd, 531 F.3d 127 (2d Cir. 2008).  See also Katt v. City of New York, 151 F. Supp. 2d 313, 351, n.31 (S.D.N.Y. 2001) ("Perhaps the most reasonable jurors of all would have rejected both experts' either/or positions, and reached the sensible conclusion that Katt's humiliating treatment at her job was stressful and disturbing, and combined with pre-existing problems and

12

subsequent tragedies to create a near-total breakdown."), aff'd in relevant part sub nom. Krohn v. New York City Police Dep't, 60 F. App'x 357 (2d Cir. 2003); Fink v. City of New York, 129 F.Supp.2d 511, 537 (E.D.N.Y. 2001) ("Fink's disenchantment with the fire department and his job, both of which he came to hate, aggravated by the memory of his experience of his reception upon returning from Vietnam and exacerbated by the fire department's placing him on light duty after subjecting him to medical testing because of his alleged disability all compound his emotional injuries, lending credence to the claims of diminished self-worth and public humiliation which Fink's testimony suggested."); EEOC Enforcement Guidance: Compensatory and Punitive Damages Available under § 102 of the Civil Rights Act of 1991, at 7, online at http://www.eeoc.gov/policy/docs/damages.html (last visited January 24, 2018) ("if a complaining party had preexisting emotional difficulties and his mental health deteriorates as a result of the discriminatory conduct, the additional harm may be attributed to the respondent. The fact that the complaining party may be unusually emotionally sensitive and incur great emotional harm from discriminatory conduct will not absolve the respondent from responsibility for the greater emotional harm."); Tobin v. Steisel, 64 N.Y.2d 254, 259 (1985) (wrongdoer is responsible for aggravation of preexisting psychological injuries).

The Second Circuit has recently addressed this issue in the context of a state law claim where the only damages -- as here -- were for mental anguish. Stampf v. Long Island R. Co., 761 F.3d 192 (2d Cir. 2014). The Second Circuit explicitly endorses the eggshell plaintiff doctrine in setting the proper amount of damages on remitur. Id. at 208 * n.5.

The Court explained:

> Although the average victim [] may not have experienced such a high degree of stress and anxiety from Trigg's malicious prosecution, a defendant must take a plaintiff as she finds him and,

13

> therefore, is responsible for the harm she inflicts on a person even if that harm is exacerbated by the person's unknown infirmities.

Stampf, 761 F.3d at 208 n.5.

This precedent is consistent with every Circuit Court that has directly addressed the issue of an eggshell plaintiff without a physical injury. See Jenson v. Eveleth Taconite Co., 130 F.3d 1287, 1294-95 (8th Cir. 1997) (Title VII harassment and discrimination case applying "the universal doctrine of tort law that a tortfeasor must take the plaintiff as it finds her should apply," and finding that a defendant is responsible for the "harm caused to a plaintiff who happens to have a fragile psyche."); Williamson v. Handy Button Machine Company, 817 F.2d 1290, 1294 (7th Cir. 1987) ("perhaps [plaintiff] was unusually sensitive, but a tortfeasor takes its victims as it finds them"); Wren v. Spurlock, 798 F.2d 1313, 1322 (10th Cir. 1986).

The only Circuit Court case cited to support Defendants' argument is the Second Circuit's twenty-five year old decision Ragin v. Macklowe Real Estate Co., 6 F.3d 898 (2d Cir. 1993). This case is off-point and its statements in regard to the eggshell plaintiff doctrine were in dicta.

In Ragin, the Court was considering on appeal the results of a bench trial[1] in front of Judge Sweet for claims brought under the Fair Housing Act, to wit, that the defendants had published advertisements that indicated a preference for white renters. Ragin, 6 F.3d at 903.

Judge Sweet found certain violations of the Act and, as trier of fact and after assessing the credibility of the witnesses, set the damages at $2,500 per plaintiff. Noting especially that Judge Sweet was responsible for assessing the credibility of the witnesses, id. at 908, the Circuit Court affirmed Judge Sweet's damages award. In so doing, the Circuit Court responded to one of the appellant arguments -- that Judge Sweet did not adequately consider the eggshell plaintiff

---

[1] There was in addition an advisory jury verdict form which the Trial Court considered in its deliberations.

doctrine regarding the plaintiffs' past history of race discrimination. It is only in this context that the Circuit Court notes that "the 'eggshell skull' doctrine has been applied only in cases where the plaintiff suffered physical injuries." Ragin, 6 F.3d at 908. The Court goes on to reference and rely on the Trial Court credibility and causation assessment as factfinder (and the record evidence therein) in upholding Judge Sweet's damages calculations, without regard to the eggshell plaintiff doctrine. Id.

This is far from the dispositive holding proposed by Defendants.

Things have changed since Ragin. As cited above, it is now almost universally accepted (including in the Second Circuit) that the eggshell plaintiff doctrine applies to claims which have exclusively mental anguish damages. The language cited by Defendants in Ragin is now inaccurate and it should not form the basis of the precedent Defendants seek.

Instead, it is submitted that contemporary precedent, in this Circuit and in all other Circuits weighing in on the question warrant application of the eggshell plaintiff doctrine to claims for damages for gender-based hostile work environment claims under Title VII.

The Defendants' argument here is also self-servingly contradictory and hypocritical. Presumably aware of their burden of proof if they wish to show that the mental anguish was not caused by their acts (cf. McKinnon v. Kwong Wah Rest., 83 F.3d 498, 506 (1st Cir. 1996) ("The burden is on the defendant to establish a causal relationship between the prior injury and the damages claimed by the plaintiffs.")), Defendants request an odd ruling that while all such testimony should be precluded if offered by Plaintiff, the Defendants should still be allowed to inquire "without offering details, as to the memory of a particular but unspecified traumatic event in her past that affected her in 2012 . . ." Def. Memo., p. 18 (emphasis added).

Defendants offer no further explanation for this peculiar (and one-sided) request. If Defendants get to explore Plaintiff's eggshell status, going all the back to the events when she was 14

15

years old, then certainly Plaintiff's counsel is allowed to explore same. To leave these subjects only covered "without offering details," will bemuse the jury.

## CONCLUSION

For these reasons as well as the entire record before the Court, it is submitted that the Defendants Motion in Limine be denied in all respects.

Dated:  Rhinebeck, New York
       January 24, 2018

                                                            /s/ Nathaniel K. Charny

                                        Nathaniel K. Charny (NC 5664)
                                        Charny & Wheeler
                                        9 West Market Street
                                        Rhinebeck, New York  12572
                                        Tel - (845) 876-7500
                                        Fax - (845) 876-7501
                                        ncharny@charnywheeler.com

                                        Attorneys for Plaintiff
                                        Rosanna Mayo-Coleman