Kenneth J. Kelly, Esq.
kkelly@ebglaw.com
Robert Goldstein, Esq.
rgoldstein@ebglaw.com
Carol Faherty, Esq.
cfaherty@ebglaw.com
Epstein Becker & Green, P.C.
250 Park Avenue
New York, New York 10177
(212) 351-4500
Attorneys for Defendants

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROSANNA MAYO-COLEMAN,<br><br>        Plaintiff,<br><br>    - against –<br><br>AMERICAN SUGARS HOLDING, INC., AND BOB JANDOVITZ,<br><br>        Defendants. | 14-cv-0079 (PAC)(KNF) |

**DEFENDANT'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION FOR A NEW TRIAL AS TO DAMAGES OR, IN THE ALTERNATIVE, TO REMIT THE EMOTIONAL DISTRESS AND COMPENSATORY DAMAGES AWARD**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................... 2

POINT I     THE PUNITIVE DAMAGES AWARD SHOULD BE VACATED .......................... 2

     a.      Plaintiff Failed to Identify Any Evidence That Supports an Award of Punitive Damages ................................................................................................ 2

     b.      Comparable Cases Demonstrate that any Award of Punitive Damages, if Upheld, Must be Remitted to $30,000 ..................................................... 2

POINT II     PLAINTIFF FAILS TO DEMONSTRATE THAT SHE IS ENTITLED TO COMPENSATORY DAMAGES IN EXCESS OF $30,000 ..................................... 2

     a.      The Cases Cited By Plaintiff Prove That The Jury's Award is Excessive .................. 2

     b.      The Compensatory Damages Award is Grossly Excessive Even If the Court Determines that Plaintiff Has "Significant" Emotional Distress ...................... 2

POINT III     THE COMPENSATORY DAMAGES AWARD MUST BE REDUCED BASED ON THE JURY'S INFLATION OF THE AWARD BASED ON PLAINTIFF'S CHILDHOOD SEXUAL ASSAULT ........................................................................ 2

CONCLUSION ................................................................................................................ 2

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*A.Z. v. Pine Plains Central School District*,
   2010 WL 1212987 (S.D.N.Y. 2010)...................................................................................6

*Brady v. Wal-Mart Stores, Inc.*,
   455 F. Supp. 2d 157 (E.D.N.Y. 2006), *aff'd,* 531 F.3d 127 (2d Cir. 2008).......................6

*Carter v. United States*,
   760 F. Supp. 2d 281 (E.D.N.Y. 2011) ................................................................................9

*Greenbaum v. Handelsbanken*,
   67 F. Supp. 2d 228 (S.D.N.Y. 1999)...................................................................................3

*Hughes v. Patrolmen's Benev. Ass'n of City of New York, Inc.*,
   850 F.2d 876 (2d Cir. 1988)................................................................................................7

*Katt v. City of New York*,
   151 F. Supp. 2d 313 (S.D.N.Y. 2001)..............................................................................5, 6

*Luciano v. Olsten*,
   110 F. 3d 210 (2d Cir. 1997)...............................................................................................1

*MacMillan v. Millennium Broadway Hotel*,
   873 F. Supp. 2d 546 (S.D.N.Y. 2012).................................................................................3

*Moncriffe v. Classique Interiors & Design Inc.*,
   No. CV 09-0986 ETB, 2011 WL 2224880 (E.D.N.Y. June 2, 2011)...............................4, 5

*Munson v. Diamond*,
   No. 15CV00425DABBCM, 2017 WL 4863096 (S.D.N.Y. June 1, 2017)..........................3

*Olsen v. Cty. of Nassau*,
   615 F. Supp. 2d 35 (E.D.N.Y. 2009) ..................................................................................7

*Osorio v. Source Enterprises, Inc.*,
   No. 05 CIV. 10029 (JSR), 2007 WL 683985 (S.D.N.Y. Mar. 2, 2007) ..............................6

*Parrish v. Sollecito*,
   280 F. Supp. 2d 145 (S.D.N.Y. 2003).................................................................................3

*Quinby v. WestLB AG*,
   No. 04 CIV.7406 WHP, 2008 WL 3826695 (S.D.N.Y. Aug. 15, 2008) .........................3, 4

*Ragin v. Harry Macklowe Real Estate Co.*,
 6 F.3d 898 (2d Cir. 1993) ................................................................................................. 8

*Schipper v. United States*,
 No. CV-94-4049(CPS), 1998 WL 786451 (E.D.N.Y. Sept. 15, 1998) ....................................... 9

*Thomas v. iStar Fin., Inc.*,
 508 F. Supp. 2d 252 (S.D.N.Y. 2007) ................................................................................ 3

*Thorsen v. Cty. of Nassau*,
 722 F. Supp. 2d 277 (E.D.N.Y. 2010) ................................................................................ 7

*Watson v. E.S. Sutton, Inc.*,
 2005 U.S. Dist. LEXIS 31578 (S.D.N.Y. Sept. 6, 2005) ............................................... 1, 3, 4

*Watson v. E.S. Sutton, Inc.*,
 No. 02 CIV. 2739 (KMW), 2005 WL 2170659 (S.D.N.Y. Sept. 6, 2005),
 *aff'd,* 225 F. App'x 3 (2d Cir. 2006) ................................................................................ 3

*Wharton v. Cty. of Nassau*,
 No. 10-CV-0265 JS AYS, 2015 WL 4611974 (E.D.N.Y. July 30, 2015) ................................ 7

*Zhao v. E. Harlem Laundromat, Inc.*,
 No. 07 CIV. 0201 RJS HBP, 2010 WL 4642459 (S.D.N.Y. Nov. 12, 2010) ........................... 8

**Statutes**

New York City Human Rights Law ........................................................................................ 3

**Other Authorities**

Fed. R. Civ. P. 50 and 59 ..................................................................................................... 1

Pursuant to Fed. R. Civ. P. 50 and 59, Defendant American Sugar Refining, Inc. ("ASR") respectfully submits this Reply Memorandum of Law in support of its motion for a new trial as to Plaintiff's damages or, alternatively, for a remittitur of damages.

## PRELIMINARY STATEMENT

Plaintiff's opposition to Defendant's motion for a new trial on damages or, alternatively, an order vacating the jury's award of punitive damages and remitting the award of compensatory damages from $1.7 million to $30,000, is essentially a compendium of reported decisions awarding more than $30,000 in compensatory damages. Plaintiff makes virtually no attempt to provide the Court with decisions that involve facts similar to the facts in this case. Instead, Plaintiff focuses almost exclusively on cases that award compensatory damages between $200,000 and $1 million without any regard to the egregious nature of the evidence in those cases as contrasted with this case. Even the cherry-picked cases relied on by Plaintiff confirm that the jury's verdict in this case is grossly excessive and cannot stand.

## POINT I

## THE PUNITIVE DAMAGES AWARD SHOULD BE VACATED

Plaintiff misrepresents Defendant's motion papers in claiming that they "essentially concede that if punitive damages are warranted, they are appropriately set at the statutory cap." To the contrary, Defendant argued that punitive damages should <u>not</u> be awarded to Plaintiff at all because there was no evidence that ASR acted in bad faith or with malice,[1] and that if any are ultimately awarded, they should be far less than the statutory cap.

---

[1] Cases cited by Plaintiff in the Opposition included clear bad faith and malice. *See Luciano v. Olsten*, 110 F. 3d 210 (2d Cir. 1997) (punitive damages awarded where statistical evidence was presented of wage discrepancies between men and women in upper level management at the company, where the company ignored gender-based wage discrepancies and did not have a policy of investigating terminations to make sure they were nondiscriminatory); *Watson v. E.S. Sutton, Inc.*, 2005 U.S. Dist. LEXIS 31578 (S.D.N.Y. Sept. 6, 2005) (punitive damages awarded where evidence at trial showed defendant's conduct was "reprehensible" due to "systematic"

1

### a. Plaintiff Failed to Identify Any Evidence That Supports an Award of Punitive Damages

The facts set forth by Plaintiff on Page 14 of the Opposition are misleading. Plaintiff alleges Defendant rejected her grievance in May 2012, which Defendant contended did not include reference to sexual harassment by Smith, without "any further ado." This is not supported by the testimony. Jandovitz and McBean both met with Plaintiff following the May 2012 grievance, which only referenced overtime, and Plaintiff was satisfied with the explanations she received. Furthermore, Plaintiff characterizes the Copeland investigation as a "sham" because Copeland did not talk to the "witnesses" she wanted her to talk to, who also never came forward until trial. Despite Plaintiff's characterization, the investigation was not a "sham." It was initiated immediately upon Plaintiff's complaint of sexual harassment in August 2012, was performed by a neutral Human Resources representative from another location, continued over a number of months and included interviews of nine employees. Plaintiff's dissatisfaction with the investigation does not render it a "sham," particularly in light of Plaintiff's admitted refusal to identify the one and only witness she claimed at the time to have heard any statements made by Smith. Therefore, Plaintiff has not demonstrated that she is entitled to an award of punitive damages in this matter.

### b. Comparable Cases Demonstrate that any Award of Punitive Damages, if Upheld, Must be Remitted to $30,000

The third prong of **BMW of North America, Inc. v. Gore**, 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996), requires the Court to look at "the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." To begin with, contrary to Plaintiff's suggestion, the mere fact that the statutory cap is $300,000

---

failure to take seriously women's complaints of sexual misconduct). There was no evidence of similar systematic shortcomings at ASR presented here.

does not mandate that the Court accept that maximum as the punitive damages award. For example, in *Thomas v. iStar Fin., Inc.*, 508 F. Supp. 2d 252 (S.D.N.Y. 2007), while this Court recognized the "guidance" provided by the federal cap, the Court nonetheless reduced a $1.6 million punitive damages award to $190,000. *Id.* at 263.

Indeed, this Court has reduced punitive damages awards to the range between $30,000 and $100,000 many times, even when the awarded amount far surpassed the statutory cap. *See Munson v. Diamond*, No. 15CV00425DABBCM, 2017 WL 4863096, at *9 (S.D.N.Y. June 1, 2017), *report and recommendation adopted*, No. 15 CIV. 425 (DAB), 2017 WL 4862789 (S.D.N.Y. Oct. 26, 2017) (reducing punitive damages from $450,000 to $30,000 in case where supervisor made comments such as "You've got a hot ass," "You're so f[-----]g hot," "Is your p[---]y waxed," and "Let's go f[--]k. I have the biggest c[--]k you've ever seen. Is your p[---]y small or is it fat") (collecting cases); *MacMillan v. Millennium Broadway Hotel*, 873 F. Supp. 2d 546, 569 (S.D.N.Y. 2012) (reducing punitive damages award from $1 million to $100,000); *Parrish v. Sollecito*, 280 F. Supp. 2d 145, 164 (S.D.N.Y. 2003) (reducing punitive damages award from $500,000 to $50,000 "on due process grounds").

Furthermore, Plaintiff's cited cases are simply inapposite. In trying to defend a plainly excessive punitive damages award, Plaintiff overwhelmingly cites cases construing the New York City Human Rights Law, which has *no* statutory cap for punitive damages, but has no relevance in this case. *See Watson v. E.S. Sutton, Inc.*, No. 02 CIV. 2739 (KMW), 2005 WL 2170659, at *19 (S.D.N.Y. Sept. 6, 2005), *aff'd,* 225 F. App'x 3 (2d Cir. 2006); *Quinby v. WestLB AG*, No. 04 CIV.7406 WHP, 2008 WL 3826695, at *5 (S.D.N.Y. Aug. 15, 2008); *Greenbaum v. Handelsbanken*, 67 F. Supp. 2d 228, 263 (S.D.N.Y. 1999). Furthermore, this Court in *Watson v. E.S. Sutton, Inc.*, ruled that decisions under the NYCHRL are not properly

"comparable" to decisions under Title VII and the NYSHRL for purposes of a punitive damages assessment. *Id.* at *19 ("Many of the cases cited by [defendant] are not truly comparable, as they arise under a different statute."). Therefore, if any punitive damages are awarded, they should be remitted to $30,000.

## POINT II

**PLAINTIFF FAILS TO DEMONSTRATE THAT SHE IS ENTITLED TO COMPENSATORY DAMAGES IN EXCESS OF $30,000**

Plaintiff argues that the $1.7 million compensatory damages award should stand, but if the Court considers remittitur, the award should not be reduced to less than $1.5 million. In support of that claim, however, Plaintiff relies on cases that are completely inapposite to this case.[2] Indeed, most cases cited by Plaintiff do not even involve sexual harassment. Moreover, none of the cases cited by Plaintiff support her claim that she is entitled to $1.5 million in compensatory damages.

### a. The Cases Cited By Plaintiff Prove That The Jury's Award is Excessive

The cases cited by Plaintiff demonstrate that the jury's award must be remitted. Most remarkably, Plaintiff's cases almost universally award almost $1 million *less* than Plaintiff's requested damages. Furthermore, in addition to citing non-binding and unpersuasive state court decisions, even where Plaintiff cites cases dealing with employment discrimination, the proffered cases discuss far more egregious and non-comparable facts.

For example, in *Moncriffe v. Classique Interiors & Design Inc.*, No. CV 09-0986 ETB, 2011 WL 2224880 (E.D.N.Y. June 2, 2011), plaintiff filed a complaint against defendant's owner alleging discrimination on the basis of her sex in violation of Title VII and the NYSHRL.

---

[2] Additionally, Plaintiff engages in the absurd exercise of converting all damages awards in prior cases, dating back to 1988, to "2018 dollars." *Id.* at 20. However, Plaintiff cites no case for the proposition that the Court should inflate prior damages awards when reviewing comparable cases, and, indeed, doing so misstates the damages holding of prior cases.

*Id.* at *1. Plaintiff alleged the company's owner exposed his penis to her, made comments about her sexual practices and genitalia, and came up behind her and grabbed her breasts with both hands. *Id.* When plaintiff resisted these advances her paychecks began to bounce. *Id.* Furthermore, defendant locked plaintiff in the building after the other employees left and physically tried to force her to have sex with him. *Id.* Defendant also forcibly touched plaintiff's vaginal area and rubbed his penis against her buttocks. *Id.* at *2.

In addition to the conduct being far more egregious, the proven *effect* of that conduct exceeded Plaintiff's testimony here. In *Moncriffe*, plaintiff was diagnosed with post-traumatic stress disorder and began to take medication as a result of defendant's conduct, and the treatment and medication continued through the time of trial. *Id.* Even with those facts, including an attempted sexual assault at the workplace, the court only awarded $500,000 in emotional distress damages.

*Katt v. City of New York*, 151 F. Supp. 2d 313 (S.D.N.Y. 2001), serves as another clear example that, even where Plaintiff cites to cases from this Court dealing with workplace harassment, Plaintiff relies on cases with plainly distinguishable and more egregious facts. In *Katt*, plaintiff alleged she was subjected to a sexually hostile work environment and was discriminatorily terminated from her job based on her disability. *Id.* at 318. Plaintiff in *Katt* was subjected to repeated instances of "physical touching," including a supervisor spraying plaintiff with a "water pistol" and stating in front of other employees that "he hopes to wet plaintiff's nipples to 'have them show through.'" *Id.* at 321. Additionally, the supervisor "sat on her lap" for a "few minutes" to the point where the plaintiff "felt as is her legs were breaking." *Id.* at 322. Her supervisor also "approached her from behind and touched the back of her neck with his tongue." *Id.* She was also subjected to questions from her supervisor, such as whether

5

she was a "moaner or a screamer," whether she had "ever had toe sex," what type of underwear she was wearing, and other inappropriate questions about her personal and sex life. *Id.* at 321.

In addition, plaintiff testified, as was corroborated by her doctor, that she suffered from severe headaches, intestinal disorders, diarrhea, respiratory allergies and infections, vomited on her way to work, had insomnia, nightmares, and she could no longer have intimate sexual relationships. *Id.* at 350. Plaintiff's expert evaluated her on three separate occasions and diagnosed her with PTSD and concluded she was "permanent[ly]" in a state of being "nonfunctional, barely functioning" as a result of the harassment. *Id.* at 324. Even on these extraordinary facts, plaintiff received an award of only $400,000 in compensatory damages. *Id.* at 327.

Plaintiff's remaining cases are similarly uninformative since they discuss unrelated causes of action, many are entirely outside the context of employment discrimination or harassment, they are grounded in significantly more egregious facts, and often result in substantial remittitur. *See, e.g., Osorio v. Source Enterprises, Inc.*, No. 05 CIV. 10029 (JSR), 2007 WL 683985, at *5 (S.D.N.Y. Mar. 2, 2007) (defendants not liable on discrimination claim, and court opined that $4 million in damages for retaliatory termination from "preeminent" magazine was a "very full verdict" which required the court to hold that "punitive damages were no longer available"); *Henry and Cathleen Zeno, on behalf of their minor son, A.Z. v. Pine Plains Central School District*, 2010 WL 1212987 (S.D.N.Y. 2010) (jury award and not a court's ruling, and further is not an employment case and rather an education case where a student was called "n----r" and subjected to "verbal and physical harassment"); *Brady v. Wal-Mart Stores, Inc.*, 455 F. Supp. 2d 157, 198 (E.D.N.Y. 2006), *aff'd,* 531 F.3d 127 (2d Cir. 2008) (in disability discrimination case, court identified emotional distress as "significant" and nonetheless reduced

compensatory award from $2.5 million to $600,000) *Hughes v. Patrolmen's Benev. Ass'n of City of New York, Inc.*, 850 F.2d 876 (2d Cir. 1988) (not an employment discrimination case, and instead dealt with intentional infliction of emotional distress based on a "campaign of harassment" by the Policeman's Benevolent Association against a police officer); *Olsen v. Cty. of Nassau*, 615 F. Supp. 2d 35, 47 (E.D.N.Y. 2009) (plaintiff's emotional distress was "significant," and plaintiff was in "weekly" treatment with a psychologist and was "still undergoing treatment as of the time of the trial"); *Thorsen v. Cty. of Nassau*, 722 F. Supp. 2d 277, 294 (E.D.N.Y. 2010) (not a Title VII case and rather dealing with retaliation based on political belief, and court held that plaintiff had severe rather than garden variety emotional distress, and court still reduced the award by $1 million).

Therefore, under any analysis, the $1.7 million award of compensatory damages is untenable and must be reduced dramatically. As demonstrated at pp. 22-25 of Defendant's Memo, based on the clear law of this Circuit from cases involving similar claims of emotional distress, Plaintiff is not entitled to damages in excess of $30,000 for her garden-variety emotional distress.

    **b.**    **The Compensatory Damages Award is Grossly Excessive Even If the Court Determines that Plaintiff Has "Significant" Emotional Distress**

Even if this Court determines that Plaintiff's claims constitute "significant" emotional distress as a matter of law (which it should not), Plaintiff would *still* not be entitled to more than $100,000 in compensatory damages. *See Wharton v. Cty. of Nassau*, No. 10-CV-0265 JS AYS, 2015 WL 4611974, at *11 (E.D.N.Y. July 30, 2015) ("The middle of the spectrum consists of 'significant' ($50,000 up to $100,000) and 'substantial' emotional distress claims ($100,000). These claims differ from garden-variety claims in that they are based on more substantial harm or more offensive conduct, are sometimes supported by medical testimony or

evidence, evidence of treatment by a healthcare professional and/or medication, and testimony from other, corroborating witnesses.") *quoting Rainone v. Potter*, 388 F. Supp. 2d 120, 122 (E.D.N.Y. 2005). *See also Zhao v. E. Harlem Laundromat, Inc.*, No. 07 CIV. 0201 RJS HBP, 2010 WL 4642459, at *4 (S.D.N.Y. Nov. 12, 2010) (same). Therefore, even if this Court determines that Plaintiff's proved she suffered from "significant" emotional distress, Plaintiff's compensatory damages award must be substantially reduced.

## POINT III

### THE COMPENSATORY DAMAGES AWARD MUST BE REDUCED BASED ON THE JURY'S INFLATION OF THE AWARD BASED ON PLAINTIFF'S CHILDHOOD SEXUAL ASSAULT

Finally, the compensatory award for emotional distress should be reduced because the jury improperly relied on Plaintiff's prior sexual assault and distress from the assault to inflate Plaintiff's emotional distress damages. Tr. 189: 25 – 190:13. The Court, at jury instructions, informed the jury that, even in relation to emotional distress damages, the defendant "takes the plaintiff as he finds her." Tr. 828: 14. The Court then went on to note that, "[s]ome of us are, for example, more susceptible to stress than others." Tr. 828: 15-16. Explaining further, the Court stated that:

> In this case you have heard testimony from Ms. Mayo-Coleman concerning the impact she claims the actions of Mr. Smith had on her. *The extent of her emotional distress depends*, at least in part, on your assessment of the credibility of her claims of emotional distress.

Tr. 828: 18-22 (emphasis added). This instruction undoubtedly led the jury to consider Plaintiff's prior assault, yielding a substantially inflated damages award, and should be reconsidered in light of that award.

The Second Circuit is clear that "the 'eggshell skull' doctrine has been applied only in cases where the plaintiff suffered physical injuries." *Ragin v. Harry Macklowe Real Estate Co.*,

6 F.3d 898, 908 (2d Cir. 1993) (affirming award of $2,500 per person in civil rights housing discrimination case). *See also Carter v. United States*, 760 F. Supp. 2d 281, 283 (E.D.N.Y. 2011) ("the effect of **Ragin** is that a 'plaintiff cannot recover for emotional distress that a reasonable person would not have suffered….'") (citation omitted); *Schipper v. United States*, No. CV-94-4049(CPS), 1998 WL 786451, at *11 (E.D.N.Y. Sept. 15, 1998) ("plaintiff cannot recover for emotional distress that a reasonable person would not have suffered, but can recover for the physiological symptoms that she experienced because of her heightened emotional sensitivity.") *citing Ragin v. Harry Macklowe*, 5 F. 3d at 908.

Therefore, here, where Plaintiff recovered solely for emotional distress damages, the Court should reduce the compensatory award because of the jury's improper inflation of Plaintiff's damages based on her sexual assault as a child.

## **CONCLUSION**

For the foregoing reasons, Defendant respectfully requests that the Court grant this motion by either ordering a new trial to determine Plaintiff's damages, if any, or remit the jury's award of compensatory damages to less than $30,000 and vacating the award of punitive damages, together with such other relief as the Court deems just and proper.

Dated: New York, New York
April 20, 2018

Respectfully submitted,
EPSTEIN BECKER & GREEN, P.C.


By: */s/ Kenneth J. Kelly*
Kenneth J. Kelly, Esq.
Robert Goldstein, Esq.
Carol J. Faherty, Esq.


250 Park Avenue
New York, New York 10177-0077
Telephone: (212) 351-4500
Attorneys for Defendant