UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROSANNA MAYO-COLEMAN,

                     Plaintiff,

vs.                                     Civil Action No. 14-cv-0079 (PAC)

AMERICAN SUGARS HOLDING, INC. and
ROBERT JANDOVITZ,

                     Defendants.

REPLY MEMORANDUM IN SUPPORT OF
PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS

Dated: Rhinebeck, New York
          September 14, 2018

                                            Nathaniel K. Charny
                                            Charny & Wheeler
                                            9 West Market Street
                                            Rhinebeck, New York 12572
                                            Tel. 845-876-7500
                                            ncharny@charnywheeler.com

                                            Megan Goddard
                                            Goddard Law PLLC
                                            39 Broadway, Suite 1540
                                            New York, New York  10006
                                            Tel. 646-504-8363
                                            megan@goddardlawnyc.com

                                            Gabrielle Vinci
                                            Nesenoff & Miltenberg LLP
                                            363 7th Avenue, 5th Floor
                                            New York, New York  10001
                                            Tel. 212-736-4500
                                            gvinci@nmllplaw.com

                                            Attorneys for Plaintiff Rosanna Mayo-Coleman

TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION .................................................................................................................1

POINT I
THE REQUESTED HOURLY RATES ARE APPROPRIATE .......................................1

POINT II
THE HOURS EXPENDED ARE REASONABLE................................................................3

    A.  Plaintiff was Entitled to Three Trial Attorneys..............................................3

    B.  The Goldstein Declaration Exhibits.................................................................4

        1.  Introduction...............................................................................................4

        2.  Exhibit A -- The Alleged Vague Entries............................................4

        3.  Exhibit B -- The Alleged Block Billing..............................................6

        4.  Exhibit C -- The Alleged Duplicate Entries........................................7

        5.  Exhibit D -- The Alleged "Excessive and Unnecessary" Entries.......7

    C.  The Claims Were Intertwined...........................................................................8

POINT III
THE DISBURSEMENTS ARE LEGITIMATE.................................................................10

CONCLUSION.....................................................................................................................11

## TABLE OF AUTHORITIES

Abrahamson v. Bd. of Educ., 374 F.3d 66 (2d Cir. 2004) ............................................................... 9

Aiello v. Town of Brookhaven,
No. 94-CV-2622 (FB) (WDW), 2005 WL 1397202 (E.D.N.Y. June 13, 2005) ........................... 6

Bridges v. Eastman Kodak Co.,
No. 91 Civ. 7985 (RLC), 1996 WL 47304 (S.D.N.Y. Feb. 6, 1996) ............................................ 4

Burr by Burr v. Sobol, 748 F. Supp. 97 (S.D.N.Y. 1990) ............................................................... 5

Carco Group, Inc. v. Maconachy, No. CV 05–6038 (ARL), 2011 WL 6012426
(E.D.N.Y. Dec. 1, 2011), rev'd in part on other grounds, 718 F.3d 72 (2d Cir. 2013) ................ 10

Delph v. Dr. Pepper Bottling Co., 130 F.3d 349 (8th Cir. 1997) .................................................... 3

Hensley v. Eckerhart, 461 U.S. 424, 103 S.Ct. 1933 (1983) ...................................................... 5, 9

HTV Industries, Inc. v. Agarwal, 317 F.Supp.3d 707 (S.D.N.Y. 2018) ......................................... 7

Koster v. TWA, 181 F. 3d 24 (1st Cir. 1999) .................................................................................. 3

Lenihan v. New York, 640 F. Supp. 822 (S.D.N.Y. 1986) .............................................................. 3

McDonald ex rel. Prendergast v. Pension Plan of the NYSA–ILA Pension Trust Fund,
450 F.3d 91 (2d Cir. 2006) ............................................................................................................. 2

Miele v. New York State Teamsters Conf. Pension & Ret. Fund,
831 F.2d 407 (2d Cir. 1987) ........................................................................................................... 1

Myers v. Board of Education of the Batavia City School District,
No. 13-CV-342S, 2016 WL 4642920 (W.D.N.Y. Sept. 7, 2016) ................................................... 7

Ramos v. Lamm, 632 F. Supp. 376 (D. Colo. 1986) ...................................................................... 3

Spence v. Ellis, No. 07-CV-5249 (TCP) (ARL),
2012 WL 7660124 (E.D.N.Y. Dec. 19, 2012)) .............................................................................. 6

Tatum v. City of New York, No. 06-cv-4290 (PGG) (GWG),
2010 WL 334975 (S.D.N.Y. Jan. 28, 2010) ................................................................................... 9

Williamsburg Fair Hous. Comm. v. Ross-RodneyHous. Corp.,
599 F. Supp. 509 (S.D.N.Y. 1984) .............................................................................................. 4

Zimmerman v. Portfolio Recovery Assocs., LLC, 09 Civ. 4602 (PGG),
2013 U.S. Dist. LEXIS 174182, at *33-34 (S.D.N.Y. Dec. 11, 2013) ........................................... 5

INTRODUCTION

Plaintiff Rosanna Mayo-Coleman submits this reply memorandum in further support of her application for attorneys' fees and costs and in response to Defendant's papers in opposition. There is a Charny Supplemental Declaration submitted as well.

As set forth below, Plaintiff agrees with certain of the items pointed out by Defendant and Plaintiff has additionally discovered a few additional errors. The corrections are memorialized in Exhibit 1 to the Charny Supplemental Declaration with strike-outs and are discussed below. In addition, the time spent in preparing these reply papers are added to the existing billing. The additional time spent is set out in the time records submitted as Exhibit 2 to the Charny Supplemental Declaration.

In all other regards it is submitted that Plaintiff's application should be granted as requested.

POINT I

THE REQUESTED HOURLY RATES ARE APPROPRIATE

Defendant objects to all the hourly rates proposed insisting that the maximum hourly rate to be applied is $350 per hour. Defendant asks that the Court impose this rate for Charny, a 23+ year labor and employment litigator and the same for Goddard, who is the architect of this successful litigation.

As set forth in Plaintiff's moving memorandum, the requested hourly rates ($500 and $450) are consistent with precedent and consistent with the skills and experience of each of the counsel presented. More importantly, the Court is asked "to apply its 'own knowledge' of rates charged in the community in assessing the reasonableness of the rates sought." Miele v. New York State Teamsters Conf. Pension & Ret. Fund, 831 F.2d 407, 409 (2d Cir. 1987); see also

1

<u>McDonald ex rel. Prendergast v. Pension Plan of the NYSA–ILA Pension Trust Fund</u>, 450 F.3d 91, 96–7 (2d Cir. 2006).  Not only does precedent support the hourly rates proposed by Plaintiff, Plaintiff proposes that these rates are the appropriate hourly rates for Charny, Goddard and Vinci, respectively based on the Court's own knowledge of rates charged.

Additionally, the Court should reject Defendant's argument that Charny's rate should be billed at $350 because of "the nature of Charny's involvement in the case."  <u>See</u> Def. Memo., p. 6.  This is inapposite.  Here, Charny not only did the opening and closing arguments, he examined and cross-examined key witnesses, including the direct examination (and defending cross) of Plaintiff and shouldered all responsibility regarding the examination of both expert witnesses.  It is appropriate that given his familiarity with trial proceedings, Charny has also had responsibility for post-trial motions.  Charny's decades of experience were brought to the table in all these essential capacities.

Similarly, the Court should reject Defendant's argument that Goddard should be set at the lowest possible hourly rate because, according to Defendant, Goddard "abdicated her role as lead counsel at trial." Def. Memo., p. 7.  Defendant is arguing with success.  Goddard remained, and continues to remain, throughout these proceedings, whether discovery, pretrial motion practice, or trial, lead counsel for Plaintiff.  Goddard's management of which person was assigned to which role at trial was strategic, and here, strategic decision-making that obviously was wise.

Finally, notwithstanding the argument otherwise, it is established that paralegals in this District are billed at $125.  Plaintiff's Memo., p. 8.

POINT II

THE HOURS EXPENDED ARE REASONABLE

A.   Plaintiff was Entitled to Three Trial Attorneys

The vast weight of Defendant's opposition to the instant fee/cost application is the argument that Plaintiff was not entitled to three trial attorneys. This is not only remarkably hypocritical, it is contrary to prevailing precedent.

First, the Court is reminded that Defendant had three attorneys always present -- two of whom are quite senior partners (Attorney Kelly (J.D. in 1971) and Attorney Goldstein (J.D. in 1989)). Even the third attorney who was always present (Attorney Faherty) has sixteen years since law school graduation (J.D. in 2002). Defendant cannot be heard to complain that Plaintiff overstaffed the case with the same number of trial counsel they chose to employ. Koster v. TWA, 181 F. 3d 24, 37 (1st Cir. 1999) ("The fact that there were three lawyers on one side and two on the other side, I don't find disproportionate."); Lenihan v. New York, 640 F. Supp. 822, 825 (S.D.N.Y. 1986) (if defendants "warranted the presence" of multiple attorneys, plaintiff is entitled to same); Ramos v. Lamm, 632 F. Supp. 376, 383 (D. Colo. 1986) ("Although many attorneys represented plaintiffs in this case, I am persuaded by the evidence that these attorneys worked on different aspects of the case and made special efforts to coordinate their work to avoid any duplication. The same sort of division of labor was employed by defense counsel.").

Second, the record reflects that each of Plaintiff's three trial counsel (Charny, Goddard and Vinci) had distinct tasks, distinct witnesses and distinct legal/motion arguments for which they were responsible. It is likely that this method of managing the trial work is the reason that Plaintiff's litigation team secured for Plaintiff a remarkable, arguably historic, verdict. See Delph v. Dr. Pepper Bottling Co., 130 F.3d 349, 358-59 (8th Cir. 1997); Williamsburg Fair

3

Hous. Comm. v. Ross-RodneyHous. Corp., 599 F. Supp. 509, 518 (S.D.N.Y. 1984) ("each attorney made a distinct contribution by his presence or participation").  This is especially so in light of the low success rate for employment discrimination plaintiffs in the Southern and Eastern Districts of New York.  See www.vberger-mediator.com/mediation/employment-discrimination-trials.html (noting that plaintiffs prevail in about one-third of claims brought under Title VII and other employment discrimination laws, with even fewer securing punitive damages of any consequence).

Given the work product during trial, and the successful result, Plaintiff's lead counsel cannot be faulted for bringing in experienced trial counsel and cannot be faulted for distributing tasks among the three counsel -- especially given that this is the same setup chosen by the Defendant in its unsuccessful efforts to defend these claims.

B.   The Goldstein Declaration Exhibits

   1.   Introduction

Defendant submits four copies of the time records on which Defendant has highlighted alleged offensive entries.  Four categories of allegedly offensive entries are provided:  (i) vague; (ii) block billing; (iii) duplicative; and (iv) "excessive and unnecessary."  Goldstein Decl. pp 1-2.  With the exception of two items -- out of hundreds highlighted -- Defendant offers no further explanation as to the basis of their objections except to highlight the entries.  As such there is some guess work involved in defending same.

   2.   Exhibit A -- The Alleged Vague Entries

Judge Carter's oft-cited 1996 attorneys' fees decision Bridges v. Eastman Kodak Co., No. 91 Civ. 7985 (RLC), 1996 WL 47304, at *4–5 (S.D.N.Y. Feb. 6, 1996), cogently describes the

4

difficulty of raising and sustaining an argument that time keeping entries are vague.  Judge Carter explains:

> Plaintiffs need not describe in meticulous detail the particularities of every task . . . As the United States Supreme Court has noted, "[p]laintiff's counsel, of course, is not required to record in great detail how each minute of his time was expended . . . Rather than looking at the big picture to see if the total time expended for each portion of this case was reasonable, defendant looks at each individual entry, and even individual parts of entries, in an attempt to determine if each one is itself reasonable.  Courts have recognized that this is an unrealistic approach and should be discouraged.  Although some of plaintiff's time records could have been better kept -- a fact not surprising given the volume of time records for a case of this size -- overall they are sufficiently detailed to allow the court to assess the reasonableness of the time spent.

Bridges, 1996 WL 47304, at *5 (quoting and citing Hensley v. Eckerhart, 461 U.S. 424, 103 S.Ct. 1933 (1983); Burr by Burr v. Sobol, 748 F. Supp. 97, 100 (S.D.N.Y. 1990)).

The above holds for the present case as well.  While Defendant may be correct that Plaintiff's counsel occasionally provide vague descriptions of their work and may occasionally merge more than one task into some of their time entries, "the time records overall [] afford the Court sufficient opportunities to evaluate the reasonableness of each task and the time expended on it."  Id.; see also Zimmerman v. Portfolio Recovery Assocs., LLC, 09 Civ. 4602 (PGG), 2013 U.S. Dist. LEXIS 174182, at *33-34 (S.D.N.Y. Dec. 11, 2013) ("It is not necessary to know the exact number of minutes spent nor the precise activity to which each hour was devoted  nor  the specific  attainments  of  each  attorney . . . Rather,  courts  must  look  'at  the  big picture.' . . .  The court is not required to assess each entry in isolation; rather, it may use its knowledge of the case and the demands that the issues posed by the case placed on the attorneys . . .").

In any case, Defendant is overly quite enthusiastic in their highlighting, challenging entries that are explicit and not vague such as:  "Draft complaint, meeting with client" (p. 1),

5

"Telephone conference with client, retaliation issues" (p. 4), "Prepare for discovery meeting with client" (p. 4), "Meeting with client, discovery" (p. 5), "Prep client for deposition" (p. 5), "Prepare for and attend deficiency conference" (p. 5), "Prepare for deposition of Bob Jandovitz" (p. 7), "Prep plaintiff for direct and cross" (Charny Time, p. 2), "Work on proposed jury charges" (Charny Time, p. 2), "Work on proposed voir dire" (Charny Time, p. 3), "Prepare witness list" (Charny Time, p. 3), "Prepare Gaffney direct" (Charny Time, p. 3), "Work on brief in opposition to Defendants post trial motion" (Charny Time, p. 3).  Most of the highlighted entries are not vague, they are obvious in how the billed time was spent.

Similarly, to the extent there are entries in Exhibit A that lack a subject matter, nearly all are easily discernable from the previous entry.  See, for example, p. 9 (First entry: "Review defendants' letter in opposition to our application to extend discovery;" and Second Entry: "Email corr with opp counsel.").

### 3.      Exhibit B -- The Alleged Block Billing

In Goldstein Declaration Exhibit B, Defendant highlights those entries they contend are block-billed and as such should be discounted.  It is submitted that on their face these entries are more than sufficiently detailed to allow the Court to "to determine whether, and/or the extent to which the work done by plaintiffs attorneys is duplicative or unnecessary," Spence v. Ellis, No. 07-CV-5249 (TCP) (ARL). 2012 WL 7660124, at *7 (E.D.N.Y. Dec. 19, 2012)), which is the only basis that warrants a finding of block billing.

The time records, even to the extent they list multiple entries for each date, show what these attorneys were doing and why.  Moreover, it is only when there is "a substantial amount of block billing" that any reduction is warranted.  Cf. Aiello v. Town of Brookhaven, No. 94-CV-2622 (FB) (WDW), 2005 WL 1397202, at *3 (E.D.N.Y. June 13, 2005).  That is not the case

here. To the extent there is any actually-problematic block billing it is a nominal portion of the overall time entries.

4.     Exhibit C -- The Alleged Duplicate Entries

Defendant is correct in pointing out certain duplicate entries that should have been deleted before submission. Counsel apologizes to the Court and counsel for not catching these errors prior to submission. These entries are marked with strike-through in Exhibit 1 to the Charny Supplemental Declaration.

It is submitted that the remaining entries highlighted are not duplicate entries and Defendant offers no explanation as to why these entries are highlighted in Exhibit C.

5.     Exhibit D -- The Alleged "Excessive and Unnecessary" Entries

With only two exceptions discussed below, Defendant offers no explanation as to why it believes that the entries highlighted in Exhibit D are "excessive and unnecessary." Hence, the Court and counsel are left to guess since in most instances the concern is not apparent.

For example, on page 3 of the Goddard Time, Defendants challenge time spent by the paralegal communicating with counsel and chambers regarding a court conference. Yet, this is precisely the type of work that is billed, and which here is properly billed by a paralegal. Cf. HTV Industries, Inc. v. Agarwal, 317 F.Supp.3d 707, 721 (S.D.N.Y. 2018).

And on page 5 of the Goddard Time, Defendants are presumably complaining about two attorneys attending depositions. Yet, Defendants had two attorneys attending this very same deposition. See Charny Supp. Decl., Ex. 4; Myers v. Board of Education of the Batavia City School District, No. 13-CV-342S, 2016 WL 4642920, at *4 (W.D.N.Y. Sept. 7, 2016).

Except as discussed below, the remaining entries which are highlighted on Exhibit D are either duplicate entries, which are being withdrawn by Plaintiff's counsel, or they lack any

7

explanation as to the problem with the entry. To the extent the Court infers that the argument being made is that too much time was spent, the facts show otherwise. Hence, it took 9.3 hours to write a motion to compel (p. 7); and it took in the neighborhood of 50 hours to draft the summary judgment opposition brief (pp. 10-11). It is submitted that these entries, as well as the remaining highlighted entries in Exhibit D are neither excessive or unnecessary.

Defendant does address with specificity two things: (i) that it took Goddard 39.8 hours to draft, confer with the Plaintiff, finalize and file the amended complaint, see Def. Memo., p. 15; and (ii) that Charny had one day with a total in excess of 24 hours, see Def. Memo., p. 11.

Regarding Goddard's work on the amended complaint (filed at ECF 30), the Court is asked to note that the amended complaint prepared by Goddard after extensive conference with Plaintiff is a comprehensive accounting of the facts and claims. As such, the notion of 39.8 hours spent in conference with the client, drafting, and correcting this thirty-page document is appropriate. Note, additionally, that Goddard's work on the amended complaint served far more purposes than just drafting the document, it provided the foundational fact-knowledge Goddard needed to litigate the case.

Regarding Charny's "impossible" 24-hour day (February 25, 2018), this is caused by a duplicate entry for which counsel apologizes. See Charny Supp. Decl. ¶ 6. That duplicate entry has been marked with strike through on Charny Supplemental Declaration Exhibit 1.

C.      The Claims Were Intertwined

Defendant argues that a discount is warranted because of time spent on unsuccessful claims. As laid out in Plaintiff's moving memorandum at pages 4-5, all of the evidence at issue comprised evidence used to prove the surviving hostile work environment claims. Pl. Memo., pp. 4-5. Oddly, Defendant completely ignores this argument in its opposition papers and instead

8

simply states the alternative as a matter of jurisprudential reality, repeatedly referencing that the "fire watch" assignment issues, the cleaning is women's work facts and the loss of "overtime" opportunities were irrelevant to the successful claims.  As the Court is aware, this is completely fabricated.  Instead, Fire Watch, cleaning duties and lost overtime were key components of Plaintiff's hostile work environment claim.

And in any case, as a matter of law there is sufficient connection such that no deduction is warranted.  "[I]n awarding attorneys' fees, 'the most critical factor is the degree of success obtained.'" Patterson v. Balsamico, 440 F.3d 104, 123 (2d Cir. 2006).  "The District Court may, in its discretion, 'attempt to identify specific hours that should be eliminated, or it may simply reduce the [requested] award to account for the limited success.'" Abrahamson v. Bd. of Educ., 374 F.3d 66, 79 (2d Cir. 2004).  "Work on ultimately unsuccessful claims is compensable as long as those claims are not 'wholly unrelated' to the claims plaintiff succeeded on at trial." Tatum v. City of New York, No. 06-cv-4290 (PGG) (GWG), 2010 WL 334975, at *3 (S.D.N.Y. Jan. 28, 2010).

The Supreme Court explains:

> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters.

Hensley v. Eckerhart, 461 U.S. 424, 435 (1983) (emphasis added) ("Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis.  Such a lawsuit cannot be viewed as a series of discrete claims.

9

Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation").

POINT III

THE DISBURSEMENTS ARE LEGITIMATE

First, Plaintiff's agree to withdraw their request for reimbursement of disbursements regarding Michelin Lord. These items are struck through on Exhibit 1 to the Charny Supplemental Declaration.

The remaining complaints are not valid.

The Courtroom Connect technology was used by Plaintiff's counsel to ensure secure and steady internet access during the trial, allowing for unfettered access to legal research and other internet-based access (such as research during jury selection). Given that Courtroom Connect aided in the Plaintiff's presentation of its case, it is compensable. Carco Group, Inc. v. Maconachy, No. CV 05–6038(ARL), 2011 WL 6012426, at *11 (E.D.N.Y. Dec. 1, 2011), rev'd in part on other grounds, 718 F.3d 72 (2d Cir. 2013).

Without any legal support, Defendant contends that Plaintiff is obligated to have a retainer agreement with her expert witness Dr. Robert Goldstein. As a matter of fact, there never was a retainer agreement between counsel or Plaintiff and Dr. Goldstein. Charny Supp. Decl., ¶ 7. Any and all paperwork regarding Dr. Goldstein has been submitted. Id. And any "evaluation" of Dr. Goldstein's work on this case is more than satisfied by his compelling testimony during Plaintiff's case in chief, and his equally compelling testimony eviscerating Defendant's expert witness. This was money well spent, as is evident from the record.

Finally, regarding the Westlaw charges, note first that Plaintiff has one disbursement identified as Westlaw which was misidentified, it was actually for a PACER charge. That entry

has been stricken in the revised charts submitted in Exhibit 1 of the Charny Supplemental Declaration.  The remainder Westlaw charges are consistent with those compensable charges given the retainer agreement between the parties.  See Pl. Memo., p. 9.  As requested by Defendants, submitted as Exhibit 3 to the Charny Supplemental Declaration are the actual Westlaw invoices for these charges.

## CONCLUSION

Plaintiff has corrected certain entries either pointed out by Defendant or discovered as made in error during the course of preparing this reply memorandum.  The revised billing and disbursement statements are submitted as Exhibit 1 to the Charny Supplemental Declaration.

The additional time spent preparing this reply memorandum, which is also compensable, is submitted as contemporaneous times records submitted as Exhibit 2 to the Charny Supplemental Declaration.

As corrected, and for the reasons set out in these motion papers, it is submitted that Plaintiff's application for attorneys' fees and costs be approved in the following amounts --

|  | Hours | | | | Rate | Total |
|---|---|---|---|---|---|---|
|  | Original | Revised | Supp. | Total | | |
| Charny | 247.1 | 235.1 | 9.6 | 244.7 | 500 | 122350 |
| Goddard | 399.6 | 370.6 | | 370.6 | 450 | 166770 |
| Vinci | 243.85 | 238.35 | | 238.35 | 350 | 83422.5 |
| Paralegal | 48.7 | 48.7 | | 48.7 | 125 | 6087.5 |
| Disbursements | 25685.38 | 24940.34 | | | | 24940.34 |
| | | | | | TOTAL | 403570.3 |

11

Dated: Rhinebeck, New York
September 14, 2018

                                              Respectfully submitted:

*/s/ Nathaniel K. Charny*
_____
Nathaniel K. Charny
Charny & Wheeler
9 West Market Street
Rhinebeck, New York 12572
Tel. 845-876-7500
ncharny@charnywheeler.com

Megan Goddard
Goddard Law PLLC
39 Broadway, Suite 1540
New York, New York  10006
Tel. 646-504-8363
megan@goddardlawnyc.com

Gabrielle Vinci
Nesenoff & Miltenberg LLP
363 7th Avenue, 5th Floor
New York, New York  10001
Tel. 212-736-4500
gvinci@nmllplaw.com

Attorneys for Plaintiff Rosanna Mayo-Coleman